UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

13 Cr 10149

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | VIOLATIONS: |
| | ) | |
| | ) | 18 U.S.C. § 1962(d) |
| v. | ) | RICO Conspiracy |
| | ) | |
| | ) | 18 U.S.C. § 1962(c) |
| | ) | Racketeering |
| | ) | |
| (1) EDWARD J. MACKENZIE, JR., | ) | 18 U.S.C. § 1349 |
| | ) | Mail Fraud Conspiracy |
| | ) | |
| | ) | 18 U.S.C. § 1956(h) |
| | ) | Money Laundering Conspiracy |
| | ) | |
| | ) | 18 U.S.C. § 1951 |
| | ) | Extortion |
| | ) | |
| | ) | 18 U.S.C. § 1343 |
| | ) | Wire Fraud |
| Defendant. | ) | |
| | ) | 18 U.S.C. § 2(a) |
| | ) | Aiding and Abetting |
| | ) | |
| | ) | 18 U.S.C. §§ 981, 982, |
| | ) | 963, 28 U.S.C. § 2461 |
| | ) | Criminal Forfeiture |

## INDICTMENT

THE UNITED STATES GRAND JURY in and for the District of Massachusetts charges that:

1

<u>COUNT ONE</u>
(Racketeering Conspiracy)

At all times relevant to this Indictment:

<u>THE ENTERPRISE</u>

1.    The Boston Society of the New Jerusalem was chartered in 1823 as one of the first Swedenborgian churches in Massachusetts.   The Boston Society of the New Jerusalem, Inc. (hereinafter, "BSNJ") was a charitable religious non-profit corporation established under the laws of the Commonwealth of Massachusetts which operated as a church.   BSNJ established Bostonview Corporation, Inc. (hereinafter, "BVC"), which does business in Massachusetts as a non-profit corporation, for the specific purpose of holding title to property located at 130-140 Bowdoin Street, Boston, Massachusetts.   The 130-140 Bowdoin Street property encompassed both the Boston Society of the New Jerusalem church and an approximately 18-story apartment building with approximately 145 residential rental units (hereinafter, "BVC Apartments").   These rental units generated net income of approximately $1.4 million per year.   Each year since in or about 2006, BVC has remitted its net income to BSNJ.

2.    BSNJ was run by a Board of Trustees, which was elected by the church members.   The Board of Trustees was responsible for decisions regarding BSNJ's finances, the collection and

2

distribution of all funds for the support of public worship or special programs, the maintenance of financial records, and the preparation of a budget. As of in or about 2003, BSNJ also had a "Director of Operations," who had responsibility and authority for changes to the physical plant of the church. BVC was run by a Board of Directors and was a wholly-owned subsidiary of BSNJ. BSNJ, together with its wholly-owned subsidiary, BVC, will be referred to herein as the "Church."

3.    The Church constituted an "enterprise" as defined by Title 18, United States Code, Section 1961(4), that is, an association in fact of entities (hereinafter, "the enterprise"). The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

4.    The Church is an exempt organization under Internal Revenue Code Section 501(c)(3) (hereinafter, "IRC Section 501(c)(3)"). Under the U.S. tax code, as an exempt organization, the Church is prohibited from engaging in activities that result in inurement of the Church's income or assets to insiders. The prohibition against inurement to

insiders is absolute; therefore, any amount of inurement to insiders is potentially grounds for loss of tax-exempt status.

### THE DEFENDANT

5. **EDWARD J. MACKENZIE, JR.,** 54, became a member of the Church in approximately September 2002; in 2003, **MACKENZIE** became the Church's "Director of Operations," a salaried position that was created especially for him and which he still holds.

6. **MACKENZIE** was an officer of BSNJ and a Director of BVC. In Massachusetts, officers and directors of non-profit corporations must act in good faith and exercise fiduciary duties of care and loyalty. Pursuant to Massachusetts General Law Chapter 180, Section 6C, a "director ... shall perform his duties as such ... in good faith and in a manner he reasonably believes to be in the best interest of the corporation, and with such care as an ordinarily prudent person in a like position with respect to a similar corporation ... would use under similar circumstances." A director may not improperly benefit from transactions with the corporation.

### THE RACKETEERING CONSPIRACY

7. From at least as early as in or before September 2002, and continuing through at least in or about December 2012, within the District of Massachusetts and elsewhere, **EDWARD J.**

4

**MACKENZIE, JR.,** defendant herein, and others known and unknown to the Grand Jury, being persons employed by and associated with the Church, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did unlawfully and knowingly conspire, confederate and agree to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity. The pattern of racketeering activity, as that term is defined by Title 18, United States Code, Sections 1961(1) and 1961(5), through which **MACKENZIE** and his co-conspirators agreed to conduct and participate directly and indirectly in the conduct of the affairs of the enterprise, consisted of multiple acts: (a) indictable under Title 18, United States Code, Section 1343 (wire fraud); (b) indictable under Title 18, United States Code, Section 1341 (mail fraud); (c) indictable under Title 18, United States Code, Section 1956 (money laundering); (d) indictable under Title 18, United States Code, Section 1951 (extortion); and (e) involving bribery, chargeable under Section 39 of Chapter 271 of the Massachusetts General Laws.

8. It was part of the conspiracy that **MACKENZIE** agreed that a conspirator would commit at least two acts of

racketeering activity in the conduct of the affairs of the enterprise.

## OBJECTS OF THE CONSPIRACY

9.    It was a goal of the conspiracy for **MACKENZIE** and his co-conspirators to become members of the enterprise and obtain power and influence within the enterprise so that **MACKENZIE** and his co-conspirators could defraud the Church of its considerable financial holdings and profit from transactions involving the Church.

10.  Once **MACKENZIE** and his co-conspirators were in positions of authority within the enterprise, they carried out a scheme to defraud the Church and to obtain money and property from the Church by means of false and fraudulent pretenses, representations and promises, to enrich themselves and others at the expense of the Church, and to personally enrich themselves by soliciting and accepting bribes and kickbacks from vendors doing business with the Church.

## MANNER AND MEANS OF THE CONSPIRACY

It was a part of the conspiracy that:

11.  **MACKENZIE** and co-conspirator Thomas J. KENNEDY (another new Church member) knew that the Church had only a small number of voting members, many of whom were elderly. **MACKENZIE** became a full voting member of the Church in or about

September 2002.   Shortly after joining the Church, **MACKENZIE** and

KENNEDY devised a plan to gain control of the Church so that

they could defraud the Church of its considerable financial

holdings and profit from transactions involving the Church.

12. Accordingly, **MACKENZIE** and KENNEDY devised a scheme to
gain control of the Church by, among other things:

> a. Inducing the then-Reverend to endorse **MACKENZIE** and
> KENNEDY's plan to take control of the Church by
> promising, and subsequently granting, him
> substantial remuneration and autonomy within the
> Church; and

> b. Recruiting and using friends and family, some of
> whom had no interest in, or awareness of, the Church
> and its teachings, to become members, and creating
> phony membership applications for other new Church
> "members" who had no idea they had "applied" for
> membership in order to establish a voting majority
> to elect themselves into positions of authority
> within the Church.

13. At the annual Church members meeting in or about May

2003, **MACKENZIE** and KENNEDY assembled a sufficient voting bloc

to take control of the Church.   Once in control, in or about

2003, **MACKENZIE**, KENNEDY, and their co-conspirators began moving

to consolidate and fortify their power, including, but not

limited to, the following:   (a) removing certain incumbent

Trustees and Church officials who were perceived as obstacles;

(b) seceding from the General Convention and other umbrella and

parent organizations of the Swedenborgian Church in order to

7

obtain greater autonomy; (c) amending the Church's by-laws to give **MACKENZIE** and KENNEDY greater authority and control; and (d) creating the salaried position of "Director of Operations" for the Church - a position for which **MACKENZIE** was hired in 2003 and continued to hold as of May 2013 - and giving the "Director of Operations" authority for changes to the physical plant of the Church.

14. In addition to consolidating their power within the Church, once in control, **MACKENZIE** and his co-conspirators, in violation of their fiduciary obligations and the Church's IRC Section 501(c)(3) status, began voting to provide themselves and their associates with substantial financial benefits, including, but not limited to: (a) the purchase of at least four new vehicles for, among others, **MACKENZIE**, KENNEDY, and a relative of **MACKENZIE**; (b) cash awards for **MACKENZIE's** family members; (c) a $50,000 "loan" to **MACKENZIE** to pay his personal legal bills; and (d) tuition grants to family members of KENNEDY.

15. On or about December 12, 2003, the Church entered into a five-year employment agreement with **MACKENZIE** to be the Church's "Director of Operations," a position that had not previously existed. The agreement provided **MACKENZIE** with a starting salary of $100,000, annual salary increases in accordance with the Consumer Price Index, performance bonuses, a

retirement plan, health insurance, and four weeks of paid vacation (plus 11 paid holidays). In September 2006, the Board of Trustees agreed to renew **MACKENZIE's** employment agreement for another five years effective December 2008, and continuing through December 2013. In 2012, **MACKENZIE's** salary and compensation as the Church's "Director of Operations" was approximately $200,000.

16. Once in power, **MACKENZIE** began to systematically loot the Church of its considerable financial assets through a combination of fraud, deceit, extortion, theft, and bribery. Moreover, **MACKENZIE** intimidated and threatened individuals who were employed by and did work at the Church by in part, among other things, providing them with signed copies of his 2003 autobiography, *Street Soldier: My Life as an Enforcer for Whitey Bulger and the Boston Irish Mob* (hereinafter, "*Street Soldier*"). In *Street Soldier*, **MACKENZIE** admitted to a lengthy criminal history, including burglary, robbery, armed assault, and narcotics trafficking.

All in violation of Title 18, United States Code, Section 1962(d).

<u>COUNT TWO</u>
(Racketeering)

17.  Paragraphs 1-6 and 9-16 are restated herein and incorporated by reference.

18.  From at least in or before September 2002 and continuing through at least in or about December 2012, in the District of Massachusetts and elsewhere, **EDWARD J. MACKENZIE, JR.,** defendant herein, together with others, known and unknown to the Grand Jury, being persons employed by and associated with the Church, did unlawfully and knowingly conduct and participate, directly and indirectly, in the conduct of the affairs of the Church, an enterprise which was engaged in, and the activities of which affected, interstate and foreign commerce, through the pattern of racketeering activity particularly described below in paragraphs 19 through 56.

<u>RACKETEERING ACT NUMBER ONE</u>
(Space Propulsion Wire Fraud)

19.  In or about Spring of 2004, **MACKENZIE** and **KENNEDY** knowingly caused the Church to invest $200,000 of Church money in a Florida corporation, Space Propulsion Systems, Inc. (hereinafter, "Space Propulsion"). **MACKENZIE** and **KENNEDY** caused the Church to invest $200,000 in Space Propulsion by fraudulently misrepresenting that the $200,000 was an investment, when it was primarily a means for **MACKENZIE** and

KENNEDY to enrich themselves at the Church's expense. In fact, **MACKENZIE** and KENNEDY had an agreement with Space Propulsion that the Church's investment was conditional on an immediate $80,000 kickback to **MACKENZIE** and KENNEDY, which **MACKENZIE** and KENNEDY concealed from the Church.

20. From at least in or about Spring 2004, to at least on or about June 8, 2004, **MACKENZIE** and others, known and unknown to the Grand Jury, devised and intended to devise the above-described scheme and artifice to defraud the Church, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

21. On or about each of the dates set forth below, in Boston, in the District of Massachusetts, in Jacksonville, in the Middle District of Florida, and elsewhere, **EDWARD J. MACKENZIE, JR.,** defendant herein, aided and abetted by others, known and unknown to the Grand Jury, for the purpose of executing the scheme and artifice described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below, any one of which alone constitutes the commission of Racketeering Act

11

Number One, in violation of Title 18, United States Code, Sections 1343 and 2(a):

|    | DATE         | DESCRIPTION                          |
|----|--------------|--------------------------------------|
| 1A | June 4, 2004 | $200,000 wire MA to FL               |
| 1B | June 7, 2004 | $40,000 wire FL to MA (KENNEDY)      |
| 1C | June 8, 2004 | $40,000 wire FL to MA (**MACKENZIE**)|

### RACKETEERING ACT NUMBER TWO
(College Tuition Mail Fraud)

22. The Church has long had a tuition grant program in which the Church provided scholarships and tuition grants to the families of Church members. Between approximately Winter 2005 and August 2008, **MACKENZIE** fraudulently caused the Church to pay approximately $108,980 in tuition payments to Boston College and Quinnipiac University on behalf of the children of an executive at the property management company that managed the BVC Apartments (hereinafter, "Tuition Recipient #1"). It was part of the scheme that **MACKENZIE** falsely misrepresented to Tuition Recipient #1 that the Church had expanded its tuition reimbursement program to non-Church members, when in fact the Church had not done so. **MACKENZIE** then encouraged Tuition Recipient #1 to apply to the Church's tuition program. In return for using his influence to cause the Church to improperly pay $108,980 in tuition payments on behalf of Tuition Recipient

#1, **MACKENZIE** solicited and accepted from Tuition Recipient #1 approximately $20,000 in cash kickbacks.

23. From at least as early as in or about March 2005, through in or about August 2008, in the District of Massachusetts, the District of Connecticut, and elsewhere, **EDWARD J. MACKENZIE, JR.,** defendant herein, aided and abetted by others, known and unknown to the Grand Jury, devised and intended to devise the above-described scheme and artifice to defraud and obtain money and property by materially false and fraudulent pretenses, representations, and promises.

24. On or about the dates listed below, in the District of Massachusetts, the District of Connecticut, and elsewhere, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations and promises, **MACKENZIE** knowingly caused to be placed in a post office and authorized depository for mail matter a matter and thing to be sent and delivered by the Postal Service, any one of which mailings alone constitutes the commission of Racketeering Act Number Two, in violation of Title 18, United States Code, Sections 1341 and 2(a):

| DATE | CHURCH CHECK MAILING |
|------|----------------------|
| 2A  January 1, 2006 | $15,000 to BC (ck. # 2897) |

13

```
2B    August 3, 2006      $15,000 to BC (ck. # 3359)
2C    January 4, 2007     $15,000 to BC (ck. # 3701)
2D    June 14, 2007       $15,000 to BC (ck. # 4064)
2E    January 4, 2008     $15,000 to BC (ck. # 4497)
2F    July 10, 2008       $15,000 to QU (ck. # 6323)
2G    August 14, 2008     $18,980 to BC (ck. # 6362)
```

**TOTAL**                 **$108,980**

### RACKETEERING ACT NUMBER THREE
(Check Stealing Mail Fraud)

25.  Between in or about April 2006 and in or about June 2008, **MACKENZIE** and KENNEDY came into physical possession of seven checks made payable to either BSNJ or BVC.  **MACKENZIE** and KENNEDY then devised a scheme to steal the checks from the Church.  It was part of the scheme that, in order to steal the checks, **MACKENZIE** and KENNEDY created a phony trust, "BVC Trust."  **MACKENZIE** and KENNEDY used, among other things, the creation of BVC Trust to open two sham Sovereign Bank accounts in the names of BSNJ and BVC.  When **MACKENZIE** and KENNEDY opened the two sham Sovereign Bank accounts, they provided the bank with addresses over which **MACKENZIE** and KENNEDY had exclusive dominion and control.  This allowed **MACKENZIE** and KENNEDY to conceal the scheme to defraud from the Church by maintaining control over the bank statements and financial records for the two sham Sovereign Bank accounts.  Once the sham Sovereign Bank accounts were opened, it was part of the scheme that **MACKENZIE** and KENNEDY fraudulently deposited seven checks payable to the

14

Church, totaling approximately $168,169.74, into the sham Sovereign Bank accounts. After the seven checks were deposited, **MACKENZIE** and KENNEDY, through a series of financial transactions that were designed at least in part to conceal the fraud, shared the proceeds.

26. From at least on or about April 26, 2006, until at least on or about June 20, 2008, at Boston, Canton, and elsewhere in the District of Massachusetts, **EDWARD J. MACKENZIE, JR.,** defendant herein, aided and abetted by others, known and unknown to the Grand Jury, devised and intended to devise the above-described scheme and artifice to defraud and obtain money and property by materially false and fraudulent pretenses, representations, and promises.

27. For the purpose of executing and attempting to execute the above-described scheme and artifice to defraud and obtain money and property by materially false and fraudulent pretenses, representations, and promises, **MACKENZIE** and KENNEDY knowingly caused to be placed in a post office and authorized depository for mail matter a matter and thing to be sent and delivered by the Postal Service, to wit: bank statements and other financial documents between 2006 and 2008 for the sham Sovereign Bank accounts, in violation of Title 18, United States Code, Sections 1341 and 2(a).

## RACKETEERING ACT NUMBER FOUR
(Money Laundering Conspiracy)

28.  In approximately April 2006, **MACKENZIE** created a sham trust, "Fillabuster Catering Trust" (hereinafter, "FCT") based on a purposeful variation of the name of "Fill-A-Buster Restaurant," which had been located next to the Church for over 30 years.  It was part of the conspiracy that in creating FCT, **MACKENZIE** falsely misrepresented on various documents that an ex-girlfriend of his was the "trustee" of FCT, and a signature purporting to be that of his ex-girlfriend appears on FCT-related documents.  **MACKENZIE's** ex-girlfriend, however, had never heard of FCT and was not familiar with the term "trustee," nor had she ever signed any document on behalf of FCT.  Once the FCT was established, **MACKENZIE** used the falsified FCT documents to open a bank account in the name of FCT, for which **MACKENZIE** had sole signatory authority.  Once the FCT bank account was established, **MACKENZIE** used the account to conceal from the Church his affiliation with FCT, conceal the proceeds of Racketeering Acts Numbers Three, Eight, Fifteen, and Sixteen, and conceal from the Internal Revenue Service more than approximately $316,000 in income that he was paid by the Church through FCT.

16

29.   From at least in or before April 2006 and continuing through at least in or about December 2012, in the District of Massachusetts and elsewhere, **EDWARD J. MACKENZIE, JR.,** defendant herein, and others, known and unknown to the Grand Jury, knowing that the property involved in financial transactions represented the proceeds of some form of unlawful activity, did knowingly conspire, confederate, and agree to conduct financial transactions, affecting interstate and foreign commerce, which in fact involved the proceeds of mail fraud, in violation of Title 18, United States Code, Section 1341, and commercial bribery, in violation of Section 39 of Chapter 271 of the Massachusetts General Laws, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of mail fraud, all in violation of Title 18, United States Code, Section 1341, and commercial bribery, in violation of Section 39 of Chapter 271 of the Massachusetts General Laws, in violation of Title 18, United States Code, Sections 1956(h) and 1956(a)(1)(B)(i).

<u>RACKETEERING ACT NUMBER FIVE</u>
(Plumber #1 Commercial Bribery)

30.   In or about Summer 2006, the Church hired a large commercial plumbing company (hereinafter, "CPC") to replace the

piping in the BVC Apartments.   **MACKENZIE** also caused the Church to hire "Plumber #1," a one-employee plumbing operation, to "oversee" CPC despite the fact that Plumber #1's hiring was unnecessary to complete the pipe replacement job.   Between July 2006 and October 2007, the Church paid Plumber #1 approximately $123,808 to "oversee" the pipe replacement job.   During that same period, in return for using his influence within the Church to help Plumber #1 maintain and obtain work from the Church, **MACKENZIE** solicited and accepted thousands of dollars in cash kickbacks from Plumber #1.

31.   From at least in or about Summer 2006, until at least in or about October 2007, in the District of Massachusetts, in relation to transactions and matters concerning the business affairs of an employer, principal, and beneficiary, to wit, the Church, and as an agent and fiduciary of the Church, **EDWARD J. MACKENZIE, JR.,** defendant herein, solicited, accepted, and agreed to accept payments from Plumber #1, who was not an employee, principal, and beneficiary of the Church, upon an agreement and understanding that such payments would influence **MACKENZIE's** conduct, in violation of Section 39 of Chapter 271 of the Massachusetts General Laws.

18

<u>RACKETEERING ACT NUMBER SIX</u>
(Floorer #1 Commercial Bribery)

32.   Between 2006 and 2011, "Floorer #1" was the owner of a greater Boston discount carpet and flooring company who was paid approximately $356,000 by the Church for numerous carpet and flooring-related jobs.   During that same period, in return for using his influence within the Church to help Floorer #1 obtain and maintain flooring-related work at the Church, **MACKENZIE** knowingly caused Floorer #1 to inflate his bids for work at the Church by soliciting and accepting approximately $116,650 in cash kickbacks from Floorer #1.

33.   From at least in or about September 2006, until at least in or about December 2011, in the District of Massachusetts, in relation to transactions and matters concerning the business affairs of an employer, principal, and beneficiary, to wit, the Church, and as an agent and fiduciary of the Church, **EDWARD J. MACKENZIE, JR.,** defendant herein, solicited, accepted, and agreed to accept payments from Floorer #1, who was not an employee, principal, and beneficiary of the Church, upon an agreement or understanding that such payments would influence **MACKENZIE'S** conduct, in violation of Section 39 of Chapter 271 of the Massachusetts General Laws.

19

RACKETEERING ACT NUMBER SEVEN
(Aquarium Owner Commercial Bribery)

34. Between 2005 and 2011, "Aquarium Owner," the owner of a greater Boston fish and aquarium retail store, billed the Church, on average, approximately $25,000 - $30,000 per year for aquarium services and associated maintenance. In approximately March 2007, **MACKENZIE** fraudulently caused the Church to pay for a high-end aquarium installed at **MACKENZIE's** residence in Weymouth, Massachusetts by Aquarium Owner. From the time the aquarium was installed at **MACKENZIE's** residence in 2007, through in or about 2011, in return for using his influence within the Church to help Aquarium Owner obtain and maintain aquarium-related work at the Church, **MACKENZIE** knowingly caused Aquarium Owner to inflate his bids for work at the Church by soliciting and accepting from Aquarium Owner approximately $3,000 per year in concealed bribes and kickbacks that consisted of the maintenance and replacement work performed on the aquarium installed in **MACKENZIE's** residence (for which Aquarium Owner never charged **MACKENZIE**).

35. From at least in or about March 2007, until at least in or about December 2011, in the District of Massachusetts, in relation to transactions and matters concerning the business affairs of an employer, principal, and beneficiary, to wit, the

20

Church, and as an agent and fiduciary of the Church, **EDWARD J. MACKENZIE, JR.,** defendant herein, solicited, accepted, and agreed to accept things of value, to wit, an aquarium installed at his residence and related maintenance service and parts/accessories, from Aquarium Owner, who was not an employee, principal, and beneficiary of the Church, upon an agreement or understanding that such things of value would influence **MACKENZIE**'s conduct, in violation of Section 39 of Chapter 271 of the Massachusetts General Laws.

<u>RACKETEERING ACT NUMBER EIGHT</u>
(Carpenter #1 Commercial Bribery)

36.  Carpenter #1 is a self-employed carpenter who has run his own commercial and residential general contracting company in greater Boston for more than twenty years.  Between approximately Summer 2007 and December 2007, in return for using his influence within the Church to help Carpenter #1 obtain and maintain general contracting work at the Church, **MACKENZIE** knowingly caused Carpenter #1 to inflate his bid for work at the Church by soliciting and accepting approximately $24,000 in kickbacks from Carpenter #1, some of which **MACKENZIE** directed be in the form of checks payable to Fillabuster Catering, which **MACKENZIE** caused to be deposited into the FCT account.

21

37. From at least in or about August 2007, until at least in or about December 2007, in the District of Massachusetts, in relation to transactions and matters concerning the business affairs of an employer, principal, and beneficiary, to wit, the Church, and as an agent and fiduciary of the Church, **EDWARD J. MACKENZIE, JR.**, defendant herein, solicited, accepted, and agreed to accept payments from Carpenter #1, who was not an employee, principal, and beneficiary of the Church, upon an agreement or understanding that such payments would influence **MACKENZIE's** conduct, in violation of Section 39 of Chapter 271 of the Massachusetts General Laws.

RACKETEERING ACT NUMBER NINE
(Carpenter #2 Commercial Bribery)

38. Carpenter #2 is a self-employed carpenter who has run his own general contracting company in greater Boston for more than two decades. Between approximately May 2007 and December 2010, Carpenter #2 was paid approximately $96,345 by the Church. In return for using his influence within the Church to help Carpenter #2 obtain and maintain general contracting work at the Church, **MACKENZIE** solicited and accepted cash and in-kind kickbacks from Carpenter #2, to wit, at least approximately $20,500 in cash as well as carpentry work that was paid for by

the Church but was performed by Carpenter #2 at the residences of **MACKENZIE** and a family member of **MACKENZIE**.

39.  From at least in or about May 2007, until at least in or about December 2010, in the District of Massachusetts, in relation to transactions and matters concerning the business affairs of an employer, principal, and beneficiary, to wit, the Church, and as an agent and fiduciary of the Church, **EDWARD J. MACKENZIE, JR.,** defendant herein, solicited, accepted, and agreed to accept payments from Carpenter #2, who was not an employee, principal, and beneficiary of the Church, upon an agreement or understanding that such payments would influence **MACKENZIE's** conduct, in violation of Section 39 of Chapter 271 of the Massachusetts General Laws.

## RACKETEERING ACT NUMBER TEN
(Carpenter #2 Extortion)

40.  Not later than 2009, **MACKENZIE** gave Carpenter #2 a signed copy of *Street Soldier*.  In or about December 2010, in connection with a job at the Church, when Carpenter #2 initially attempted to provide **MACKENZIE** with only a $3,000 (instead of the previously agreed-upon $6,000) cash kickback, **MACKENZIE** swore at Carpenter #2, banged on the hood of Carpenter #2's car, and put Carpenter #2 in fear for his physical safety.  At that point, Carpenter #2 gave **MACKENZIE** an additional $3,000 in cash.

41.   From in or about at least 2009 and continuing until in
or about December 2010, within the District of Massachusetts,
**EDWARD J. MACKENZIE, JR.,** defendant herein, did obstruct, delay,
and affect commerce and the movement of articles and commodities
in commerce by extortion, as those terms are defined in Title
18, United States Code, section 1951, that is, **MACKENZIE**
obtained property, to wit, United States currency, from
Carpenter #2 with Carpenter #2's consent, which consent was
induced by the wrongful use of actual and threatened force,
violence, and fear, in violation of Title 18, United States
Code, Section 1951.

RACKETEERING ACT NUMBER ELEVEN
(Boiler Replacement Wire Fraud)

42.   In approximately December 2010, after being advised
that **MACKENZIE** required a kickback of approximately 10% on all
work done at the Church, the owner of CPC inflated the bid he
submitted to the Church for a boiler replacement job to account
for the 10% kickback to **MACKENZIE**.   In return for using his
influence within the Church to help CPC obtain and maintain the
boiler replacement job, **MACKENZIE** knowingly caused CPC to
inflate its bid for work at the Church by soliciting and
accepting an approximately $27,400 cash kickback from the owner
of CPC.

24

43.   From at least in or about December 2010, to at least on or about October/November 2011, **MACKENZIE** devised and intended to devise the above-described scheme and artifice to defraud the Church, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

44.   On or about each of the dates set forth below, in the District of Massachusetts and elsewhere, **EDWARD J. MACKENZIE, JR.,** defendant herein, aided and abetted by others, known and unknown to the Grand Jury, for the purpose of executing the scheme and artifice described above, caused to be transmitted by means of wire communication in interstate commerce the writings, signals and sounds described below, any one of which alone constitutes the commission of Racketeering Act Number Eleven, in violation of Title 18, United States Code, Sections 1343 and 2(a):

DESCRIPTION

11A   12/20/2010 a.m. E-mail from CPC to BVC
11B   12/20/2010 p.m. E-mail from CPC to BVC

### RACKETEERING ACT NUMBER TWELVE
(Boiler Replacement Commercial Bribery)

45.  Paragraph 42 is restated herein and incorporated by reference.

46.  From at least in or about December 2010, to at least on or about October/November 2011, in the District of Massachusetts, in relation to transactions and matters concerning the business affairs of an employer, principal, and beneficiary, to wit, the Church, and as an agent and fiduciary of the Church, **EDWARD J. MACKENZIE, JR.,** defendant herein, solicited, accepted, and agreed to accept payments from the owner of CPC and the owner's associate, who were not employees, principals, and beneficiaries of the Church, upon an agreement or understanding that such payments would influence **MACKENZIE's** conduct, in violation of Section 39 of Chapter 271 of the Massachusetts General Laws.

### RACKETEERING ACT NUMBER THIRTEEN
(Booster Pump Wire Fraud)

47.  In or about 2011, after being advised again that **MACKENZIE** required a kickback of approximately 10% on all work done at the Church, the owner of CPC inflated the bid he submitted to the Church for a booster pump job to account for the 10% kickback to **MACKENZIE**.  In return for using his influence within the Church to help CPC obtain and maintain the

26

booster pump job, **MACKENZIE** knowingly caused CPC to inflate its bid for work at the Church by soliciting and accepting an approximately $9,400 cash kickback from the owner of CPC.

48.   From at least in or about July 2011, to at least on or about August 2011, **MACKENZIE** devised and intended to devise the above-described scheme and artifice to defraud the Church, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

49.   On or about each of the dates set forth below, in the District of Massachusetts and elsewhere, **EDWARD J. MACKENZIE, JR.,** defendant herein, aided and abetted by others, known and unknown to the Grand Jury, for the purpose of executing the scheme and artifice described above, caused to be transmitted by means of wire communication in interstate commerce the writings, signals and sounds described below, any one of which alone constitutes the commission of Racketeering Act Number Thirteen, in violation of Title 18, United States Code, Sections 1343 and 2(a):

DESCRIPTION

```
13A  7/12/2011 E-mail from CPC to Church
13B  8/4/2011  E-mail from CPC to Church
13C  8/4/2011  E-mail from CPC to MACKENZIE
13D  8/10/2011 E-mail from Church to CPC
13E  8/10/2011 E-mail from CPC to Church
```

RACKETEERING ACT NUMBER FOURTEEN
(Booster Pump Commercial Bribery)

50. Paragraph 47 is restated herein and incorporated by reference.

51. From at least in or about July 2011, until at least in or about August 2011, in the District of Massachusetts, in relation to transactions and matters concerning the business affairs of an employer, principal, and beneficiary, to wit, the Church, and as an agent and fiduciary of the Church, **EDWARD J. MACKENZIE, JR.,** defendant herein, solicited, accepted, and agreed to accept payments from the owner of CPC and the owner's associate, who were not employees, principals, and beneficiaries of the Church, upon an agreement or understanding that such payments would influence **MACKENZIE**'s conduct, in violation of Section 39 of Chapter 271 of the Massachusetts General Laws.

RACKETEERING ACT NUMBER FIFTEEN
(Painter #1 Wire Fraud)

52. In or about 2009, **MACKENZIE** asked Painter #1, a long-time friend of his, to submit a bid for painting work at the Church, despite the fact that Painter #1 had little or no previous painting experience. Between approximately May 2009 and October 2009, Painter #1's company was paid approximately $127,129 by the Church, including payment for painting work that Painter #1 never performed but for which the Church, at

28

**MACKENZIE's** direction, was billed. In return for using his influence within the Church to help Painter #1 obtain and maintain the painting work at the Church, **MACKENZIE** knowingly caused Painter #1 to inflate her bids for work at the Church by soliciting and accepting at least approximately $24,000 in kickbacks from Painter #1 and Painter #1's associates, a portion of which **MACKENZIE** deposited into the FCT account.

53. From at least in or about May 2009, to at least in or about October 2009, **MACKENZIE** devised and intended to devise the above-described scheme and artifice to defraud the Church, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

54. On or about the date set forth below, in the District of Massachusetts and elsewhere, **EDWARD J. MACKENZIE, JR.,** defendant herein, aided and abetted by others, known and unknown to the Grand Jury, for the purpose of executing the scheme and artifice described above, caused to be transmitted by means of wire communication in interstate commerce the following writing, signal and sound, in violation of Title 18, United States Code, Sections 1343 and 2(a):

DESCRIPTION

9/1/2009 E-mail from **MACKENZIE** to Painter #1

29

## RACKETEERING ACT NUMBER SIXTEEN
### (Painter #1 Commercial Bribery)

55. Paragraph 52 is restated herein and incorporated by reference.

56. From at least in or about May 2009, until at least in or about October 2009, in the District of Massachusetts, in relation to transactions and matters concerning the business affairs of an employer, principal, and beneficiary, to wit, the Church, and as an agent and fiduciary of the Church, **EDWARD J. MACKENZIE, JR.,** defendant herein, solicited, accepted, and agreed to accept payments from Painter #1 and Painter #1's associates, who were not employees, principals, and beneficiaries of the Church, upon an agreement or understanding that such payments would influence **MACKENZIE's** conduct, in violation of Section 39 of Chapter 271 of the Massachusetts General Laws.

All in violation of Title 18, United States Code, Sections 1962(c).

COUNT THREE
(College Tuition Mail Fraud Conspiracy)

57.  As set forth above in paragraph 22, which is restated herein and incorporated by reference, from at least in or about March 2005, through at least in or about August 2008, in the District of Massachusetts, the District of Connecticut, and elsewhere, **EDWARD J. MACKENZIE, JR.,** defendant herein, with the intent to defraud, combined, conspired, confederated, and agreed with other persons, known and unknown to the Grand Jury, to devise the above-described scheme and artifice to defraud and obtain money and property by materially false and fraudulent pretenses, representations, and promises.

58.  For the purpose of executing and attempting to execute the above-described scheme and artifice to defraud and obtain money and property by materially false and fraudulent pretenses, representations, and promises, **MACKENZIE** and others, known and unknown to the Grand Jury, knowingly caused to be placed in a post office and authorized depository for mail matter a matter and thing to be sent and delivered by the Postal Service, to wit: tuition payment checks from the Church to Boston College and Quinnipiac University.

All in violation of Title 18, United States Code, Section 1349.

31

COUNT FOUR
(Check Stealing Mail Fraud Conspiracy)

59. As set forth above in paragraph 25, which is restated herein and incorporated by reference, from at least on or about April 26, 2006, until at least on or about June 20, 2008, at Boston, Canton, and elsewhere in the District of Massachusetts, **EDWARD J. MACKENZIE, JR.,** defendant herein, with the intent to defraud, combined, conspired, confederated, and agreed with other persons, known and unknown to the Grand Jury, to devise the above-described scheme and artifice to defraud and obtain money and property by materially false and fraudulent pretenses, representations, and promises.

60. For the purpose of executing and attempting to execute the above-described scheme and artifice to defraud and obtain money and property by materially false and fraudulent pretenses, representations, and promises, **MACKENZIE** and others, known and unknown to the Grand Jury, knowingly caused to be placed in a post office and authorized depository for mail matter a matter and thing to be sent and delivered by the Postal Service, to wit: bank statements and other financial documents between 2006 and 2008 for the sham Sovereign Bank accounts.

All in violation of Title 18, United States Code, Section 1349.

32

COUNT FIVE
(Money Laundering Conspiracy)

61. As set forth above in paragraph 28, which is restated herein and incorporated by reference, from at least in or before April 2006 and continuing through at least in or about December 2012, within the District of Massachusetts and elsewhere, **EDWARD J. MACKENZIE, JR.,** defendant herein, and others known and unknown to the Grand Jury, knowing that the property involved in financial transactions represented the proceeds of some form of unlawful activity, did knowingly conspire, confederate, and agree to conduct financial transactions, affecting interstate and foreign commerce, which in fact involved the proceeds of mail fraud, in violation of Title 18, United States Code, Section 1341, and commercial bribery, in violation of Section 39 of Chapter 271 of the Massachusetts General Laws, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of mail fraud, all in violation of Title 18, United States Code, Section 1341, and commercial bribery, in violation of Section 39 of Chapter 271 of the Massachusetts General Laws.

All in violation of Title 18, United States Code, Sections 1956(h) and 1956(a)(1)(B)(i).

33

## COUNT SIX
(Carpenter #2 Extortion)

62. As set forth above in paragraph 40, which is restated herein and incorporated by reference, from in or about at least 2009 and continuing until in or about December 2010, within the District of Massachusetts, **EDWARD J. MACKENZIE, JR.,** defendant herein, did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, section 1951, that is, **MACKENZIE** obtained property, to wit, United States currency, from Carpenter #2 with Carpenter #2's consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear.

All in violation of Title 18, United States Code, Section 1951.

34

## COUNTS SEVEN AND EIGHT
### (Boiler Replacement Job Wire Fraud)

63.  As set forth above in paragraph 42, which is restated herein and incorporated by reference, from at least in or about December 2010, to at least in or about October/November 2011, **MACKENZIE** devised and intended to devise the above-described scheme and artifice to defraud the Church, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

64.  On or about each of the dates set forth below, in the District of Massachusetts and elsewhere, **EDWARD J. MACKENZIE, JR.**, defendant herein, aided and abetted by others, known and unknown to the Grand Jury, for the purpose of executing the scheme and artifice described above, caused to be transmitted by means of wire communication in interstate commerce the writings, signals and sounds described below:

COUNT | DESCRIPTION
--- | ---
7 | 12/20/2010 a.m. E-mail from CPC to BVC
8 | 12/20/2010 p.m. E-mail from CPC to BVC

All in violation of Title 18, United States Code, Sections 1343 and 2(a).

COUNTS NINE THROUGH THIRTEEN
(Booster Pump Job Wire Fraud)

65.  As set forth above in paragraph 47, which is restated
herein and incorporated by reference, from at least in or about
July 2011, to at least in or about August 2011, **MACKENZIE**
devised and intended to devise the above-described scheme and
artifice to defraud the Church, and to obtain money and property
by means of materially false and fraudulent pretenses,
representations and promises.

66.  On or about each of the dates set forth below, in the
District of Massachusetts and elsewhere, **EDWARD J. MACKENZIE,
JR.**, defendant herein, aided and abetted by others, known and
unknown to the Grand Jury, for the purpose of executing the
scheme and artifice described above, caused to be transmitted by
means of wire communication in interstate commerce the writings,
signals and sounds described below:

| COUNT | DESCRIPTION |
|-------|-------------|
| 9  | 7/12/2011 E-mail from CPC to Church |
| 10 | 8/4/2011  E-mail from CPC to Church |
| 11 | 8/4/2011  E-mail from CPC to **MACKENZIE** |
| 12 | 8/10/2011 E-mail from Church to CPC |
| 13 | 8/10/2011 E-mail from CPC to Church |

All in violation of Title 18, United States Code, Sections
1343 and 2(a).

36

COUNT FOURTEEN
(Painter #1 Wire Fraud)

67. As set forth above in paragraph 52, which is restated herein and incorporated by reference, from at least in or about May 2009, to at least on or about October 2009, **MACKENZIE** devised and intended to devise the above-described scheme and artifice to defraud the Church, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

68. On or about September 1, 2009, in the District of Massachusetts and elsewhere, defendant **EDWARD J. MACKENZIE, JR.**, defendant herein, aided and abetted by others, known and unknown to the Grand Jury, for the purpose of executing the scheme and artifice described above, caused to be transmitted by means of wire communication in interstate commerce the following writing, signal and sound, to wit, an e-mail from **MACKENZIE** to Painter #1.

All in violation of Title 18, United States Code, Sections 1343 and 2(a).

RACKETEERING FORFEITURE ALLEGATIONS
18 U.S.C. § 1963

The Grand Jury further charges that:

69. Upon conviction of one or more of the offenses in violation of 18 U.S.C. § 1962 as charged in Counts One and Two of this Indictment, **EDWARD J. MACKENZIE, JR.**, defendant herein, shall forfeit to the United States of America pursuant to 18 U.S.C. § 1963(a):

> a. all interests the defendant has acquired and maintained in violation of 18 U.S.C. § 1962, wherever located, and in whatever names held;
>
> b. all interests in, securities of, claims against, and properties and contractual rights of any kind affording a source of influence over, any enterprise which the defendant has established, operated, controlled, conducted, and participated in the conduct of, in violation of 18 U.S.C. § 1962; and
>
> c. all property constituting, and derived from, any proceeds which the defendant obtained, directly and indirectly, from racketeering activity and unlawful debt collection in violation of 18 U.S.C. § 1962.

70. The property to be forfeited includes, but is not limited to, the sum of approximately $1 million, which represents the proceeds of such violations.

71. If any of the property described in paragraph 69 hereof as being forfeitable pursuant to 18 U.S.C. § 1963, as a result of any act and omission of the defendant –

> a. cannot be located upon the exercise of due diligence;

38

b. has been transferred to, sold to, or deposited with a third party;

c. has been placed beyond the jurisdiction of this Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 18 U.S.C. § 1963(m), to seek forfeiture of any other property of the defendant up to the value of the property described in paragraph 69 above, including but not limited to the following:

- the real property located at 955 Pleasant Street, Unit 1, Weymouth Massachusetts, including all buildings and appurtenances thereon, more particularly described in a deed recorded at Book 24132, Page 189 at the Norfolk County Registry of Deeds.

All pursuant to Title 18, United States Code, Section 1963.

FRAUD AND EXTORTION FORFEITURE ALLEGATIONS
18 U.S.C. § 981 and 28 U.S.C. § 2461

The Grand Jury further charges that:

72.  Upon conviction of one or more of the offenses in violation of 18 U.S.C. §§ 1343, 1349 and 1951, as charged in Counts Three, Four, and Six through Fourteen of this Indictment, **EDWARD J. MACKENZIE, JR.**, defendant herein, shall forfeit to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such violations.

73.  If any of the property described in paragraph 72 hereof as being forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), as a result of any act and omission of the defendant –

> a. cannot be located upon the exercise of due diligence;
>
> b. has been transferred to, sold to, or deposited with a third party;
>
> c. has been placed beyond the jurisdiction of this Court;
>
> d. has been substantially diminished in value; or
>
> e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the

defendant up to the value of the property described in paragraph

72 above, including but not limited to the following:

- the real property located at 955 Pleasant Street, Unit 1, Weymouth Massachusetts, including all buildings and appurtenances thereon, more particularly described in a deed recorded at Book 24132, Page 189 at the Norfolk County Registry of Deeds.

All pursuant to Title 18, United States Code, Section 981

and Title 28, United States Code, Section 2461.

MONEY LAUNDERING FORFEITURE ALLEGATIONS
18 U.S.C. § 982

The Grand Jury further charges that:

74.  Upon  conviction  of  the  offense  in  violation  of  18
U.S.C. § 1956, as charged in Count Five of this Indictment,
**EDWARD J. MACKENZIE, JR.**, defendant herein, shall forfeit to the
United States of America pursuant to 18 U.S.C. § 982(a)(1), any
property, real or personal, involved in such offense, and any
property traceable to such property.

75.  If  any  of  the  property  described  in  paragraph  74
hereof as being forfeitable pursuant to 18 U.S.C. § 982(a)(1),
as a result of any act and omission of the defendant –

      a. cannot be  located  upon  the  exercise  of  due
         diligence;

      b. has been transferred to, sold to, or deposited with
         a third party;

      c. has  been  placed  beyond  the  jurisdiction  of  this
         Court;

      d. has been substantially diminished in value; or

      e. has been commingled with other property which cannot
         be divided without difficulty;

it is the intention of the United States, pursuant to 18 U.S.C.
§ 982(b), to seek forfeiture of any other property of the
defendant up to the value of the property described in paragraph
74 above, including but not limited to the following:

42

- the real property located at 955 Pleasant Street, Unit 1, Weymouth Massachusetts, including all buildings and appurtenances thereon, more particularly described in a deed recorded at Book 24132, Page 189 at the Norfolk County Registry of Deeds.

All pursuant to Title 18, United States Code, Section 982.

**A TRUE BILL**

Elizabeth Brenner

_____
FOREPERSON OF THE GRAND JURY

_____
ASSISTANT U.S. ATTORNEY

DISTRICT OF MASSACHUSETTS; May ____21____, 2013.


Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK

@ 1:07 PM

5/21/13

44