UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v. )<br><br>EDWARD J. MACKENZIE, JR.<br>Defendant. ) | Crim. No. 13-CR-10149 |

## DEFENDANT'S MOTION TO DISMISS FOR PROSECUTORIAL MISCONDUCT

NOW COMES the Defendant, Edward MacKenzie, Jr. ("Mr. MacKenzie"), by and through his Attorney, who moves this Honorable Court to dismiss the indictment due to gross misconduct by the government in its intentional review of substantial information that is protected by the attorney-client privilege, which is located within materials seized pursuant to the search warrant, as well as the government's subsequent purposeful deception as to the implementation of a "taint team" review of such privileged information.

As more fully described in the accompanying memorandum of law, the government's ongoing intrusion into the communications between Mr. MacKenzie and his attorneys violates Mr. MacKenzie's fundamental right to a fair trial, his due process rights under the 5th Amendment, and his right to the effective assistance of counsel under the 6th Amendment. Interference of this magnitude with the Attorney-Client relationship so disrupts the balance implicit in the adversarial process, that Mr. MacKenzie's ability to put on his defense has been irreparably compromised.

In support of his motion, Mr. MacKenzie states that:

1) Mr. MacKenzie was employed from 2003-2013 as the Director of Operations for the church organization known as the Boston Society for the New Jerusalem (BSNJ) and its associated subsidiary residential apartment corporation known as Bostonview Corporation (BVC).

[1]

2) During the time that Mr. MacKenzie was employed in that capacity, there were several civil law suits involving BSNJ and Mr. MacKenzie, for which legal counsel was retained.

3) There is a substantial overlap between the conduct that was the subject matter of the civil lawsuits and the conduct at issue in the instant indictment against Mr. MacKenzie.

4) In the course of those civil lawsuits, Mr. MacKenzie conferred with legal counsel by means of electronic communications which are protected by the attorney-client privilege.

5) Records and copies of the privileged electronic communications were contained on several computers associated with BSNJ and Mr. MacKenzie.

6) On May 2, 2013, while the Grand Jury investigation was ongoing, government agents executed a search warrant for property owned by BSNJ and Mr. MacKenzie.

7) During that search, the government seized several computers which held the substantive contents of privileged communications between Mr. MacKenzie and his legal counsel.

8) Attorneys for Mr. MacKenzie and for BSNJ timely notified the government, by letter to AUSA Zachary Hafer within one week of the search, of the presence of privileged attorney-client communications within property the government had seized and the names of the specific attorneys involved in those communications.

9) AUSA Hafer replied and gave assurances to Mr. MacKenzie's legal counsel that a "taint team" would be utilized to review the seized information for privileged information, which would then be screened out and removed from any remaining information reviewed by the investigating agents and prosecutors.

10) On May 21, 2013, approximately three weeks after the search of BSNJ's property, the instant indictment against Mr. MacKenzie was handed down.

11) Mr. MacKenzie's attorneys thereafter renewed their objections to the government's continuing possession of materials and communications that are protected by the attorney-client privilege, which privileged communications are necessary for Mr. MacKenzie's right to the effective assistance of counsel to be meaningful.

12) In response to continuing repeated inquiries made by Mr. MacKenzie's attorneys into the government's review of privileged information, AUSA Hafer made successive intentional misrepresentations to the attorneys that a "taint team" was being implemented and that no privileged information had been reviewed.

13) After well over one year of being in possession of the privileged attorney-client communications, and as of the date of submitting the present motion, the government has yet to implement a "taint team" or return any protected communications or data.

14) The government's investigative team, to include AUSA Hafer, have intentionally deceived Mr. MacKenzie's attorneys as to the government's review of the protected information in its custody and control.

15) The government has violated the attorney-client privilege by intentionally deceiving defense counsel and reviewing the privileged information in an effort to impermissibly uncover Mr. MacKenzie's defense strategy.

16) The government's violation of the attorney-client privilege has had an ongoing chilling effect on Mr. MacKenzie's communications with defense counsel, so as to deprive him of a meaningful opportunity to confer with counsel and provide for his defense.

17) Mr. MacKenzie's ability to prepare his defense has been irreparably harmed.

The indelible taint of the government's misconduct so pervades the proceedings that it rises to the level of a denial of Mr. MacKenzie's right to the effective assistance of counsel, which right is guaranteed by the 6th Amendment to the U.S. Constitution, and thereby amounts to a denial of his 5th Amendment right to a fair trial and Due Process as well. There is but one available remedy that is capable of curing the constitutional defects at issue here. Such defects require a dismissal of the indictment.

WHEREFORE, Mr. MacKenzie respectfully requests that this Court dismiss the indictment against him.

Respectfully Submitted:
EDWARD MACKENZIE
By and through his Attorney:


*/s/ Robert M. Griffin*
Robert M. Griffin, BBO No. 553893
rgriffin@dharlawllp.com

Two Atlantic Avenue, 4th Floor
Boston, Massachusetts 02110
Office: 617.880.6155
Mobile: 508.922.9794
Fax: 617.880.6160


## CERTIFICATE OF SERVICE

I, Robert M. Griffin, hereby certify that a true and accurate copy of this document, and all supporting documents, if any, have been delivered upon all parties registered with CM/ECF in this matter on July 10, 2014.

*/s/ Robert M. Griffin*
Robert M. Griffin

[4]

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )  )  v. )  )  EDWARD J. MACKENZIE, JR. )  Defendant. )  )  )  ) | Crim. No. 13-CR-10149 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR PROSECUTORIAL MISCONDUCT

The Defendant, Edward J. MacKenzie, Jr., submits this memorandum of law in support of his Motion to Dismiss for Prosecutorial Misconduct. This motion arises from the Government's misconduct in the review of material communications between Mr. MacKenzie and his attorneys, which communications are protected by the attorney-client privilege. As more fully set forth below, the government's ongoing intrusion into the communications between Mr. MacKenzie and his attorneys violates Mr. MacKenzie's fundamental right to a fair trial, his due process rights under the 5th Amendment, and his right to the effective assistance of counsel under the 6th Amendment. Without the relief requested, Mr. MacKenzie's constitutional Due Process rights will continue to be subjected to unfettered transgression by the Government.

## BACKGROUND

Mr. MacKenzie was employed from 2003-2013 as the Director of Operations for a church organization known as the Boston Society for the New Jerusalem (hereinafter "BSNJ") and its associated subsidiary residential apartment corporation known as Bostonview Corporation (hereinafter "BVC'). As part of Mr. MacKenzie's duties as the Director of Operations, he was tasked with overseeing BVC's efforts to maintain and repair the physical structure of residential apartment building, as well as directing

numerous projects that the BSNJ church organization undertook. During the time that Mr. MacKenzie was employed in that capacity, there were several civil law suits involving BSNJ, BVC, and Mr. MacKenzie, for which legal counsel was retained for both Mr. MacKenzie, BSNJ, and BVC. Those civil suits involved the same conduct and the same incidents for which Mr. MacKenzie is presently under indictment.

While the civil law suits were pending, Mr. MacKenzie was under investigation by the Grand Jury for the same conduct upon which the civil suits were based. On May 2, 2013, agents from the FBI and IRS executed a search warrant on Mr. MacKenzie's home and his workplace. During the period of time leading up to the execution of the search warrant, Mr. MacKenzie had extensive privileged communication with his attorneys regarding the actions which served as the predicate for his indictment, in preparation for those civil suits. Pursuant to the search warrant, the agents seized computers and electronic storage media from both Mr. MacKenzie's home and workplace. The computers and electronic storage media contained records of the substance of numerous e-mail exchanges subject to the privilege, as well as substantive documents comprising attorney work product.

As the search warrant was still being executed, attorneys for both the church and for Mr. MacKenzie arrived to inform the agents who were seizing the computers that there was privileged material located on the computers and storage media the agents were in the process of seizing. Within days of the search warrant, Mr. MacKenzie's attorneys sent numerous letters to AUSA Hafer and the agents of the FBI and the IRS to notify them of the existence of the privileged communications, as well as to request the return of that material. Those letters also contained a list of attorneys with whom privileged communications located in the seized property were associated. AUSA Hafer replied and gave assurances to Mr. MacKenzie's legal counsel that a "taint team" would be utilized to review the seized information for privileged information, which would then be screened out and removed from any remaining information reviewed by the investigating agents and prosecutors.

Counsel for Mr. MacKenzie and the church repeatedly reached out to AUSA Hafer for several months in various attempts to recoup the privileged attorney-client

communications. AUSA Hafer made repeated representations to the attorneys that no privileged information had been reviewed by investigating agents and that a "taint team" had already been implemented to safeguard the privileged information from any review by investigators. In a letter dated October 11, 2013, as late as a full six (6) months after the government's seizure of the privileged materials, AUSA Hafer persisted in representing to defense counsel that a "taint team" was being used and no investigating agent had viewed protected materials.

As of the date of filing the present Motion to Dismiss, more than a full year after the privileged attorney-client communications were seized, none of those materials have been returned to defense counsel or produced in any way. Even more astounding, AUSA Hafer continues to deny that any of the privileged material in the possession of the government has been reviewed. Nor has any application to any judge been filed to seek approval for a permissible method of review of the privileged files. The government has yet to demonstrate that a "taint team" was ever convened or utilized in any manner.

## ARGUMENT

### I.   THE GOVERNMENT'S CONTINUING FAILURE TO SEEK JUDICIAL APPROVAL OF ITS REVIEW OF THE SEIZED FILES VIOLATES THE FOURTH AMENDMENT

When an investigating agency seizes electronic storage media containing an entire compilation of material pursuant to a search warrant, the ensuing search through such a bulk of information must be limited in its scope so as to uncover only that information for which the investigator has probable cause to search through. If the rule were otherwise, it would be akin to an investigator who wished to search inside someone's house being able to avoid any constitutional particularity requirement by listing the entire house as the item to seized, without any limitation as to what may be seized from within the house. Further, the long-term seizure of the hypothetical house above would certainly violate the Constitution if the search and seizure of the house were an ongoing process while an investigator continually told the people that lived in the house that the police inside were not going through any private or unrelated materials, while not being subject to

independent oversight. Such a statement from the investigator would seem duplicitous, at best.

The 2008 Ninth Circuit case *U.S. v. Comprehensive Drug Testing, Inc.* illustrates several aspects of the constitutional principles involved. *U.S. v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085 (9th Cir. 2008). In that case, the government obtained a search warrant for the drug testing records of ten professional baseball players who they were investigating for steroid use. The computer records of Comprehensive Drug Testing, Inc. were seized, including thousands of confidential, privileged drug testing records of other baseball players and other sports players. The prosecutors attempted to claim that once all of the computer data had been seized, the thousands of non-warrant drug testing records were in plain view, and thus were validly accessible by the government.

The Ninth Circuit disagreed, saying that when a search warrant authorizes a search based on probable cause which is limited to very specific records contained in a large pool of data, special procedures and protocols must be followed. If the protocol is not followed by the government, then it implicates either the exclusionary rule as to the non-warranted data searched, or a return of all data impermissibly seized and retained, under Fed. Rule Crim. Pro. 41(g). The 9th Circuit enumerated a five part protocol (here, using the "taint team" method):

> **1.** Magistrates should insist that the government waive reliance upon the plain view doctrine in digital evidence cases.
> **2.** Segregation and redaction must be either done by specialized personnel or an independent third party.
> If the segregation is to be done by government computer personnel, it must agree in the warrant application that the computer personnel will not disclose to the investigators any information other than that which is the target of the warrant.
> **3.** Warrants and subpoenas must disclose the actual risks of destruction of information as well as prior efforts to seize that information in other judicial fora.
> ***4. The government's search protocol must be designed to uncover only the information for which it has probable cause, and only that information may be examined by the case agents.***
> **5.** The government must destroy or, if the recipient may

lawfully possess it, return non-responsive data, keeping the issuing magistrate informed about when it has done so and what it has kept. *U.S. v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085 (9th Cir. 2008).

A similar result can be found in the 2013 Second Circuit case of *US v. Galpin*, Docket No. 11–4808–cr., (2nd Cir., decided June 25, 2013). In *Galpin*, the defendant was being investigated for possession of child pornography and its dissemination over the internet. When investigators searched his home pursuant to a search warrant, they seized all of his computer files and viewed them in their entirety. The court said that in a search of the defendant's entire computer for evidence of child pornography, the investigator couldn't simply go through every file on the computer in order to ascertain the file's relation to child porn. Instead, the search warrant must be very narrowly interpreted to allow access only to data searched in a limited way, for relevant evidence only. Otherwise, any incriminating data which was outside the scope of the authorized search should be excluded. *Galpin, id.*

As applied to the case at bar, in spite of making explicit representations to the contrary, neither AUSA Hafer, the FBI, nor the agents of the IRS ever sought judicial approval of their search methodology or used a lawful method of reviewing any protected or privileged documents. What those investigators did do was to affirmatively engage in false and deceptive tactics while conducting an exploratory rummaging through Mr. MacKenzie's electronic files. The government's egregious violations are magnified by the fact that the attorneys for Mr. MacKenzie and the church immediately notified the investigators of the protected status of the seized information. The government's response to this notice was to continue on with its intentional violation of Mr. MacKenzie's rights under the Constitution.

## II.   DEFENDANT'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL HAS BEEN DENIED BY THE GOVERNMENT'S VIOLATION OF THE ATTORNEY-CLIENT PRIVILEGE

A rebuttable presumption exists that the prosecution violated the attorney-client privilege when the government seizes privileged information from amongst other legitimately seized information.   When the government chooses to take matters into its own hands rather than using the more traditional alternatives of submitting disputed documents for *in camera* review by a neutral and detached magistrate or by court-appointed special masters, it bears the burden to rebut the presumption that tainted material was provided to the prosecution team. *see, e.g., United States v. Zolin,* 491 U.S. 554, 570-71 (1989); *In re Grand Jury Proceedings,* 867 F.2d 539, 540 (9th Cir. 1989); *In re Impounded Case,* 840 F.2d 196, 202 (3rd Cir.1988); *In re Berkley and Company,* 629 F.2d 548, 550 (8th Cir.1980); *United States v. Osborn,* 561 F.2d 1334, 1338-39 (9th Cir.1977); *In re Subpoena Addressed to Murphy,* 560 F.2d 326, 331 (8th Cir.1977); *Hartford Assocs. v. United States,* 792 F.Supp. 358, 367 (D.N.J.1992).

In the First Circuit case of *U.S. v. Mastroianni,* the court analyzed whether the presumption of a violation of the attorney-client privilege and the Sixth Amendment was appropriate when the government obtains access to material that includes some component which is privileged. *U.S. v. Mastroianni,*749 F.2d 900 (1984).   The *Mastroianni* court analyzed various circuits' treatment of the attorney-client privilege being violated by a government seizure.   It said:

> "The Third Circuit and the District of Columbia Circuit have held that disclosure of defense information by itself creates a sufficient showing of prejudice. *See Briggs v. Goodwin,*698 F.2d 486, 494-495 (D.C. Cir. 1983); *U.S. v. Levy,* 577 F.2d 200 (3d Cir. 1978).   The focus of these cases is on the proof of transmission of any information of even the slightest potential strategic value.   In *U.S. v. Levy,* the Third Circuit declared that 'w[e] think that the inquiry into prejudice must stop at the point where attorney-client confidences are actually disclosed to the government enforcement agencies responsible for investigating and prosecuting the case.'" *Mastroianni, Id.* at 907.

In *Mastroianni*, the court concluded that it would be unreasonable to require a defendant to show how the government has utilized the access to the protected information to the defendant's detriment. The court said:

> "It would be virtually impossible for an appellant or a court to sort out how any particular piece of information in the possession of the prosecution was consciously or subconsciously factored into each of those decisions. Mere possession by the prosecution of otherwise confidential knowledge about the defense's strategy or position is sufficient in itself to establish detriment to the criminal defendant.   Such information is inherently detrimental,...unfairly advantage[s] the prosecution, and threatens to subvert the adversary system of criminal justice." *Mastroianni*, at 907, quoting *Briggs v. Goodwin*, 698 F.2d 486, 494-95 (D.C. Cir. 1983), *Weatherford v. Bursey*, 429 U.S. 545 (1977).

In *Mastroianni*, the court created a burden shifting analysis to be applied in the First Circuit. Upon a showing that confidential or protected information is in the possession of the investigators or the prosecution, the burden then shifts to the government. "Upon such proof, the burden shifts to the government to show that there has been and there will be no prejudice to the defendants as a result of these communications." *Mastroianni*, at 908.  The court went on to describe its rationale for the shifting burden. "The burden on the government is high because to require anything less would be to condone intrusions into a defendant's protected attorney-client communications." *Id.* at 908.  The First Circuit has more recently reaffirmed that principle in *U.S. v. DeCologero. U.S. v. DeCologero,* 530 F.3d 36 (1st Cir.2008).  In *DeCologero*, the court utilized the burden shifting analysis announced in *Mastroianni* to determine whether or not the substance of protected communications was in the hands of the government, and if it was, then the burden would shift to the government. *DeCologero, id.*

The crux of an analysis of the Sixth Amendment violation like the one here, is the breakdown of the integrity of the adversarial system of justice that occurs when the prosecution has pierced the defendant's protected communications with his attorney in preparation for a defense.  When the defendant's ability to confer openly and truthfully with his counsel has been compromised, then the mere fact that the defendant has counsel

is rendered meaningless because his attorney cannot advise the defendant regarding the case.

In the present case, Mr. MacKenzie's defense strategy, his entire playbook, has been open to the prosecution. As such, the entire trial process has been corrupted and has had a chilling effect on Mr. MacKenzie's ability to confer with defense counsel, even now.

### III. THE BAD FAITH VIOLATION THE DEFENDANT'S SIXTH AMENDMENT RIGHTS BY THE GOVERNMENT REQUIRES DISMISSAL OF THE INDICTMENT

The proceedings against Mr. Mackenzie have been fundamentally corrupted by the government's bad faith intrusion into privileged attorney-client communications in preparation for his defense. What may have been originally a plausible mistake on the part of the government, has been transformed into a bad faith scheme by the prosecution's recurring misrepresentations to Mr. MacKenzie's attorneys regarding the privileged information. As such, there is an indelible stain on his future trial. The implications of the violation of a defendant's Sixth Amendment right to the effective assistance of counsel are different than those at issue for a violation of the Fourth Amendment. When the effective assistance of counsel has been denied, then no amount of excludable evidence can cure the fault. The taint of a Sixth Amendment violation permeates the entire trial process, and thus requires a dismissal of the case in order to give meaning to the constitutional principles at issue.

The Court has the authority to fashion a remedy that addresses the specific harm in any case before it. In addition to its power under Rule 16(d) to "fashion an order that it deems just under the circumstances", it has long been recognized that the federal court has the inherent power to control and supervise its own proceedings. *U.S. v. Hasting*, 461 U.S. 199, 505 (1983). In *Hasting*, the court said:

> "Guided by considerations of justice, and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress. The purposes underlying use of the supervisory powers are threefold: to implement a remedy for a violation of recognized rights, *Rea v. U.S.*, 350 U.S. 214 (1956); to preserve

judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, *Elkins v. U.S.,* 364 U.S. 206, 222 (1960); and finally, as a remedy designed to deter illegal conduct, *U.S. v. Payner,* 447 U.S. 727, 735-36 (1980).

In this case, the only measure that is capable of rectifying the violation of Mr. MacKenzie's rights is a dismissal of the indictment against him.

## **CONCLUSION**

For all of the reasons above, Mr. MacKenzie respectfully requests that this Court grant the relief requested and order a dismissal of this case.

Dated: July 10, 2014

Respectfully Submitted:
EDWARD MACKENZIE
By and through his Attorney:


*/s/ Robert M. Griffin*
Robert M. Griffin, BBO No. 553893
rgriffin@dharlawllp.com

DHAR LAW llp

Two Atlantic Avenue, 4th Floor
Boston, Massachusetts 02110
Office: 617.880.6155
Mobile: 508.922.9794
Fax: 617.880.6160