UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v.                                            )<br><br>EDWARD J. MACKENZIE, JR.        )<br>Defendant.                               )<br> | Crim. No. 13-CR-10149 |

## DEFENDANT'S MOTION TO DISMISS FOR PROSECUTORIAL MISCONDUCT

NOW COMES the Defendant, Edward MacKenzie, Jr. ("Mr. MacKenzie"), by and through his Attorney, who moves this Honorable Court to dismiss the indictment due to gross misconduct by the government in its intentional review of substantial information that is protected by the attorney-client privilege, which is located within materials seized pursuant to the search warrant, as well as the government's subsequent purposeful deception as to the implementation of a "taint team" review of such privileged information.

As more fully described in the accompanying memorandum of law, the government's ongoing intrusion into the communications between Mr. MacKenzie and his attorneys violates Mr. MacKenzie's fundamental right to a fair trial, his due process rights under the 5th Amendment, and his right to the effective assistance of counsel under the 6th Amendment. Interference of this magnitude with the Attorney-Client relationship so disrupts the balance implicit in the adversarial process, that Mr. MacKenzie's ability to put on his defense has been irreparably compromised.

In support of his motion, Mr. MacKenzie states that:

1) Mr. MacKenzie was employed from 2003-2013 as the Director of Operations for the church organization known as the Boston Society for the New Jerusalem (BSNJ) and its associated subsidiary residential apartment corporation known as Bostonview Corporation (BVC).

2) During the time that Mr. MacKenzie was employed in that capacity, there were several civil law suits involving BSNJ and Mr. MacKenzie, for which legal counsel was retained.

3) There is a substantial overlap between the conduct that was the subject matter of the civil lawsuits and the conduct at issue in the instant indictment against Mr. MacKenzie.

4) In the course of those civil lawsuits, Mr. MacKenzie conferred with legal counsel by means of electronic communications which are protected by the attorney-client privilege.

5) Records and copies of the privileged electronic communications were contained on several computers associated with BSNJ and Mr. MacKenzie.

6) On May 2, 2013, while the Grand Jury investigation was ongoing, government agents executed a search warrant for property owned by BSNJ and Mr. MacKenzie.

7) During that search, the government seized several computers which held the substantive contents of privileged communications between Mr. MacKenzie and his legal counsel.

8) Attorneys for Mr. MacKenzie and for BSNJ timely notified the government, by letter to AUSA Zachary Hafer within one week of the search, of the presence of privileged attorney-client communications within property the government had seized and the names of the specific attorneys involved in those communications.

9) AUSA Hafer replied and gave assurances to Mr. MacKenzie's legal counsel that a "taint team" would be utilized to review the seized information for privileged information, which would then be screened out and removed from any remaining information reviewed by the investigating agents and prosecutors.

10) On May 21, 2013, approximately three weeks after the search of BSNJ's property, the instant indictment against Mr. MacKenzie was handed down.

16) The government's violation of the attorney-client privilege has had an
    ongoing chilling effect on Mr. MacKenzie's communications with defense
    counsel, so as to deprive him of a meaningful opportunity to confer with
    counsel and provide for his defense.

17) Mr. MacKenzie's ability to prepare his defense has been irreparably harmed.

The indelible taint of the government's misconduct so pervades the proceedings that it
rises to the level of a denial of Mr. MacKenzie's right to the effective assistance of
counsel, which right is guaranteed by the 6th Amendment to the U.S. Constitution, and
thereby amounts to a denial of his 5th Amendment right to a fair trial and Due Process as
well. There is but one available remedy that is capable of curing the constitutional
defects at issue here. Such defects require a dismissal of the indictment.

[3]

WHEREFORE, Mr. MacKenzie respectfully requests that this Court dismiss the indictment against him.

Respectfully Submitted:
EDWARD MACKENZIE
By and through his Attorney:

*/s/ Robert M. Griffin*
Robert M. Griffin, BBO No. 553893
rgriffin@dharlawllp.com



Two Atlantic Avenue, 4th Floor
Boston, Massachusetts 02110
Office: 617.880.6155
Mobile: 508.922.9794
Fax: 617.880.6160

## CERTIFICATE OF SERVICE

I, Robert M. Griffin, hereby certify that a true and accurate copy of this document, and all supporting documents, if any, have been delivered upon all parties registered with CM/ECF in this matter on July 10, 2014.

*/s/ Robert M. Griffin*
Robert M. Griffin

[4]

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Crim. No. 13-CR-10149 |
| EDWARD J. MACKENZIE, JR. | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR PROSECUTORIAL MISCONDUCT

The Defendant, Edward J. MacKenzie, Jr., submits this memorandum of law in support of his Motion to Dismiss for Prosecutorial Misconduct. This motion arises from the Government's misconduct in the review of material communications between Mr. MacKenzie and his attorneys, which communications are protected by the attorney-client privilege. As more fully set forth below, the government's ongoing intrusion into the communications between Mr. MacKenzie and his attorneys violates Mr. MacKenzie's fundamental right to a fair trial, his due process rights under the 5th Amendment, and his right to the effective assistance of counsel under the 6th Amendment. Without the relief requested, Mr. MacKenzie's constitutional Due Process rights will continue to be subjected to unfettered transgression by the Government.

## BACKGROUND

Mr. MacKenzie was employed from 2003-2013 as the Director of Operations for a church organization known as the Boston Society for the New Jerusalem (hereinafter "BSNJ") and its associated subsidiary residential apartment corporation known as Bostonview Corporation (hereinafter "BVC'). As part of Mr. MacKenzie's duties as the Director of Operations, he was tasked with overseeing BVC's efforts to maintain and repair the physical structure of residential apartment building, as well as directing

[5]

numerous projects that the BSNJ church organization undertook. During the time that Mr. MacKenzie was employed in that capacity, there were several civil law suits involving BSNJ, BVC, and Mr. MacKenzie, for which legal counsel was retained for both Mr. MacKenzie, BSNJ, and BVC. Those civil suits involved the same conduct and the same incidents for which Mr. MacKenzie is presently under indictment.

While the civil law suits were pending, Mr. MacKenzie was under investigation by the Grand Jury for the same conduct upon which the civil suits were based. On May 2, 2013, agents from the FBI and IRS executed a search warrant on Mr. MacKenzie's home and his workplace. During the period of time leading up to the execution of the search warrant, Mr. MacKenzie had extensive privileged communication with his attorneys regarding the actions which served as the predicate for his indictment, in preparation for those civil suits. Pursuant to the search warrant, the agents seized computers and electronic storage media from both Mr. MacKenzie's home and workplace. The computers and electronic storage media contained records of the substance of numerous e-mail exchanges subject to the privilege, as well as substantive documents comprising attorney work product.

As the search warrant was still being executed, attorneys for both the church and for Mr. MacKenzie arrived to inform the agents who were seizing the computers that there was privileged material located on the computers and storage media the agents were in the process of seizing. Within days of the search warrant, Mr. MacKenzie's attorneys sent numerous letters to AUSA Hafer and the agents of the FBI and the IRS to notify them of the existence of the privileged communications, as well as to request the return of that material. Those letters also contained a list of attorneys with whom privileged communications located in the seized property were associated.

## **ARGUMENT**

## I.     THE GOVERNMENT'S CONTINUING FAILURE TO SEEK JUDICIAL APPROVAL OF ITS REVIEW OF THE SEIZED FILES VIOLATES THE FOURTH AMENDMENT

When an investigating agency seizes electronic storage media containing an entire compilation of material pursuant to a search warrant, the ensuing search through such a bulk of information must be limited in its scope so as to uncover only that information for which the investigator has probable cause to search through. If the rule were otherwise, it would be akin to an investigator who wished to search inside someone's house being able to avoid any constitutional particularity requirement by listing the entire house as the item to seized, without any limitation as to what may be seized from within the house. Further, the long-term seizure of the hypothetical house above would certainly violate the Constitution if the search and seizure of the house were an ongoing process while an investigator continually told the people that lived in the house that the police inside were not going through any private or unrelated materials, while not being subject to

[7]

independent oversight. Such a statement from the investigator would seem duplicitous, at best.

The 2008 Ninth Circuit case *U.S. v. Comprehensive Drug Testing, Inc.* illustrates several aspects of the constitutional principles involved. *U.S. v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085 (9th Cir. 2008). In that case, the government obtained a search warrant for the drug testing records of ten professional baseball players who they were investigating for steroid use. The computer records of Comprehensive Drug Testing, Inc. were seized, including thousands of confidential, privileged drug testing records of other baseball players and other sports players. The prosecutors attempted to claim that once all of the computer data had been seized, the thousands of non-warrant drug testing records were in plain view, and thus were validly accessible by the government.

The Ninth Circuit disagreed, saying that when a search warrant authorizes a search based on probable cause which is limited to very specific records contained in a large pool of data, special procedures and protocols must be followed. If the protocol is not followed by the government, then it implicates either the exclusionary rule as to the non-warranted data searched, or a return of all data impermissibly seized and retained, under Fed. Rule Crim. Pro. 41(g). The 9th Circuit enumerated a five part protocol (here, using the "taint team" method):

> **1.** Magistrates should insist that the government waive reliance upon the plain view doctrine in digital evidence cases.
> **2.** Segregation and redaction must be either done by specialized personnel or an independent third party.
> If the segregation is to be done by government computer personnel, it must agree in the warrant application that the computer personnel will not disclose to the investigators any information other than that which is the target of the warrant.
> **3.** Warrants and subpoenas must disclose the actual risks of destruction of information as well as prior efforts to seize that information in other judicial fora.
> ***4. The government's search protocol must be designed to uncover only the information for which it has probable cause, and only that information may be examined by the case agents.***
> **5.** The government must destroy or, if the recipient may

> lawfully possess it, return non-responsive data, keeping the issuing magistrate informed about when it has done so and what it has kept. *U.S. v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085 (9th Cir. 2008).

A similar result can be found in the 2013 Second Circuit case of *US v. Galpin*, Docket No. 11–4808–cr., (2nd Cir., decided June 25, 2013). In *Galpin*, the defendant was being investigated for possession of child pornography and its dissemination over the internet. When investigators searched his home pursuant to a search warrant, they seized all of his computer files and viewed them in their entirety. The court said that in a search of the defendant's entire computer for evidence of child pornography, the investigator couldn't simply go through every file on the computer in order to ascertain the file's relation to child porn.       Instead, the search warrant must be very narrowly interpreted to allow access only to data searched in a limited way, for relevant evidence only. Otherwise, any incriminating data which was outside the scope of the authorized search should be excluded. *Galpin, id.*

## II.    DEFENDANT'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL HAS BEEN DENIED BY THE GOVERNMENT'S VIOLATION OF THE ATTORNEY-CLIENT PRIVILEGE

A rebuttable presumption exists that the prosecution violated the attorney-client privilege when the government seizes privileged information from amongst other legitimately seized information. When the government chooses to take matters into its own hands rather than using the more traditional alternatives of submitting disputed documents for *in camera* review by a neutral and detached magistrate or by court-appointed special masters, it bears the burden to rebut the presumption that tainted material was provided to the prosecution team. *see, e.g., United States v. Zolin,* 491 U.S. 554, 570-71 (1989); *In re Grand Jury Proceedings,* 867 F.2d 539, 540 (9th Cir. 1989); *In re Impounded Case,* 840 F.2d 196, 202 (3rd Cir.1988); *In re Berkley and Company,* 629 F.2d 548, 550 (8th Cir.1980); *United States v. Osborn,* 561 F.2d 1334, 1338-39 (9th Cir.1977); *In re Subpoena Addressed to Murphy,* 560 F.2d 326, 331 (8th Cir.1977); *Hartford Assocs. v. United States,* 792 F.Supp. 358, 367 (D.N.J.1992).

In the First Circuit case of *U.S. v. Mastroianni,* the court analyzed whether the presumption of a violation of the attorney-client privilege and the Sixth Amendment was appropriate when the government obtains access to material that includes some component which is privileged. *U.S. v. Mastroianni,*749 F.2d 900 (1984).   The *Mastroianni* court analyzed various circuits' treatment of the attorney-client privilege being violated by a government seizure.  It said:

> "The Third Circuit and the District of Columbia Circuit have held that disclosure of defense information by itself creates a sufficient showing of prejudice. *See Briggs v. Goodwin,*698 F.2d 486, 494-495 (D.C. Cir. 1983); *U.S. v. Levy,* 577 F.2d 200 (3d Cir. 1978).   The focus of these cases is on the proof of transmission of any information of even the slightest potential strategic value.  In *U.S. v. Levy,* the Third Circuit declared that 'w[e] think that the inquiry into prejudice must stop at the point where attorney-client confidences are actually disclosed to the government enforcement agencies responsible for investigating and prosecuting the case.'" *Mastroianni, Id.* at 907.

[10]

In *Mastroianni*, the court concluded that it would be unreasonable to require a defendant to show how the government has utilized the access to the protected information to the defendant's detriment. The court said:

> "It would be virtually impossible for an appellant or a court to sort out how any particular piece of information in the possession of the prosecution was consciously or subconsciously factored into each of those decisions. Mere possession by the prosecution of otherwise confidential knowledge about the defense's strategy or position is sufficient in itself to establish detriment to the criminal defendant. Such information is inherently detrimental,...unfairly advantage[s] the prosecution, and threatens to subvert the adversary system of criminal justice." *Mastroianni*, at 907, quoting *Briggs v. Goodwin*, 698 F.2d 486, 494-95 (D.C. Cir. 1983), *Weatherford v. Bursey*, 429 U.S. 545 (1977).

In *Mastroianni*, the court created a burden shifting analysis to be applied in the First Circuit. Upon a showing that confidential or protected information is in the possession of the investigators or the prosecution, the burden then shifts to the government. "Upon such proof, the burden shifts to the government to show that there has been and there will be no prejudice to the defendants as a result of these communications." *Mastroianni*, at 908. The court went on to describe its rationale for the shifting burden. "The burden on the government is high because to require anything less would be to condone intrusions into a defendant's protected attorney-client communications." *Id.* at 908. The First Circuit has more recently reaffirmed that principle in *U.S. v. DeCologero*. *U.S. v. DeCologero*, 530 F.3d 36 (1st Cir.2008). In *DeCologero*, the court utilized the burden shifting analysis announced in *Mastroianni* to determine whether or not the substance of protected communications was in the hands of the government, and if it was, then the burden would shift to the government. *DeCologero, id.*

The crux of an analysis of the Sixth Amendment violation like the one here, is the breakdown of the integrity of the adversarial system of justice that occurs when the prosecution has pierced the defendant's protected communications with his attorney in preparation for a defense. When the defendant's ability to confer openly and truthfully with his counsel has been compromised, then the mere fact that the defendant has counsel

is rendered meaningless because his attorney cannot advise the defendant regarding the case.

In the present case, Mr. MacKenzie's defense strategy, his entire playbook, has been open to the prosecution. As such, the entire trial process has been corrupted and has had a chilling effect on Mr. MacKenzie's ability to confer with defense counsel, even now.

## III. THE BAD FAITH VIOLATION THE DEFENDANT'S SIXTH AMENDMENT RIGHTS BY THE GOVERNMENT REQUIRES DISMISSAL OF THE INDICTMENT

As such, there is an indelible stain on his future trial. The implications of the violation of a defendant's Sixth Amendment right to the effective assistance of counsel are different than those at issue for a violation of the Fourth Amendment. When the effective assistance of counsel has been denied, then no amount of excludable evidence can cure the fault. The taint of a Sixth Amendment violation permeates the entire trial process, and thus requires a dismissal of the case in order to give meaning to the constitutional principles at issue.

The Court has the authority to fashion a remedy that addresses the specific harm in any case before it. In addition to its power under Rule 16(d) to "fashion an order that it deems just under the circumstances", it has long been recognized that the federal court has the inherent power to control and supervise its own proceedings. *U.S. v. Hasting*, 461 U.S. 199, 505 (1983). In *Hasting*, the court said:

> "Guided by considerations of justice, and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress. The purposes underlying use of the supervisory powers are threefold: to implement a remedy for a violation of recognized rights, *Rea v. U.S.*, 350 U.S. 214 (1956); to preserve

[12]

judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, *Elkins v. U.S.,* 364 U.S. 206, 222 (1960); and finally, as a remedy designed to deter illegal conduct, *U.S. v. Payner,* 447 U.S. 727, 735-36 (1980).

In this case, the only measure that is capable of rectifying the violation of Mr. MacKenzie's rights is a dismissal of the indictment against him.

## CONCLUSION

For all of the reasons above, Mr. MacKenzie respectfully requests that this Court grant the relief requested and order a dismissal of this case.

Dated: <u>July 10, 2014</u>

                                        Respectfully Submitted:
                                        EDWARD MACKENZIE
                                        By and through his Attorney:


                                        <u>/s/ Robert M. Griffin</u>
                                        Robert M. Griffin, BBO No. 553893
                                        rgriffin@dharlawllp.com

                                        DHARLAW llp

                                        Two Atlantic Avenue, 4th Floor
                                        Boston, Massachusetts 02110
                                        Office: 617.880.6155
                                        Mobile: 508.922.9794
                                        Fax: 617.880.6160

[13]

# EXHIBIT

# A

# TODD&WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

Carole C. Cooke
E-mail: ccooke@toddweld.com

May 7, 2013

Cynthia Deitle
Christa Corr
Federal Bureau of Investigation
One Center Plaza, Suite 600
Boston, MA 02108

Mike Monahan
Sandra Lemanski
Internal Revenue Service
JFK Federal Building
15 New Sudbury St.
Boston, MA 02203

Re:  In the Matter of the Search of The Boston Society of the New Jerusalem Church,
     The Bonstonview Apartments Management Office, and The Bostonview
     Apartments Basement Fire Alarm Room; U.S. District Court for the District of
     Massachusetts, Nos. 13-MJ-2168, 13-MJ-2169, and 13-MJ-2172

Dear Ms. Deitle, Ms. Corr, Mr. Monahan and Ms. Lemanski:

This office represents the Boston Society of the New Jerusalem, Inc. ("the Church") and
Bostonview Corporation ("Bostonview") in connection with the above-referenced matters. As
you know, both institutions are cooperating fully with your investigations and look forward to
being of assistance to you.

On May 2, 2013, when the FBI and IRS executed search warrants at the premises of the
Church and Bostonview, the agents seized a substantial number of documents and other items,
including computers and cell phones. In addition to seizing an Apple desktop computer from
the Church's offices, the agents took 15 different images from the Church's computers, a
thumbdrive, and images of two computers from the Bostonview Apartments office.

Reserving all rights with respect to the legality of the search and seizures, we write at
this time to notify you that the materials that you seized undoubtedly contain many privileged
attorney-client communications. The Church and Bostonview have been involved in litigation
over the last several years, and it is highly likely that privileged communications between them
and their counsel, Todd & Weld, LLP as well as other firms, are included in the items seized.

With respect to the paper documents seized: Item 2 on the Church's inventory is
described as "Execute Committee Folder containing attorney letters." It is extremely likely that
this item contains attorney-client privileged communications. Other items on the inventories
that likely include attorney-client privileged communications include Items 5, 20 and 42 on the
Church's Inventory ("Emails"), Items 5, 26, 27, 43, 47, 49, 51, and 52 on the Church's
inventory ("Misc Docs"), and Item 1 on the Bostonview inventory ("documents in file folders").
With respect to the computer and computer images seized, all are likely to contain attorney-
client privileged communications. We understand that the server and other drives may contain

TODD&WELD LLP

folders labeled with attorneys' names into which privileged communications were saved. There may also be other folders and locations on the server and drives which contain privileged attorney-client communications.

Therefore, we specifically request that you do not access, read or use in any manner any privileged attorney-client communications that you may have seized. We request that you specifically search for and identify all such materials, sequester them, and not access them. The names of the following are some of the attorneys who have provided legal services to the Church and/or Bostonview dating back to 2002: Nicholas Carter, Carole Cooke, and other attorneys of Todd & Weld, LLP; Scott Harshbarger, Amy Crafts, Alison Langlais and other attorneys of Proskauer Rose LLP; Edward V. Colbert, III of Looney & Grossman LLP; Kurt S. Kusiak; Richard McCarthy, Nicholas Rosenberg and other attorneys of Edwards Wildman LLP (formerly Edward Angell Palmer Dodge LLP).

With respect to the Apple computer that you seized, we request to know when you will finish imaging it and return it to the Church. It is the computer used by the Chair of the Church's trustees, and its absence is disruptive to the Church's operations.

If you have any questions or would like to discuss, please call me or Nicholas Carter.

Sincerely,

*Carole C Cooke*

Carole C. Cooke

CCC:jc
cc:   Michael Bancewicz, Chair, Board of Trustees, Boston Society of the New Jerusalem, Inc.
      Joseph O'Connor, President, Bostonview Corporation
      Nicholas B. Carter, Esq.

# TODD&WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

Nicholas B. Carter
E-mail: ncarter@toddweld.com

May 9, 2013

BY EMAIL
AND FIRST CLASS MAIL

Zachary R. Hafer
U.S. Attorney's Office
John Joseph Moakley Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02110

Re:    In the Matter of the Search of The Boston Society of the New Jerusalem Church,
       The Bostonview Apartments Management Office, and The Bostonview Apartments
       Basement Fire Alarm Room; U.S. District Court for the District of Massachusetts,
       Nos. 13-MJ-2168, 13-MJ-2169 and 13-MJ-2172

Dear Assistant U.S. Attorney Hafer:

Enclosed please find a letter that my office sent to the FBI and IRS agents who were involved in executing the search warrants at the Boston Society of the New Jerusalem, Inc. and Bostonview Corporation on May 2, 2013. We should have sent the letter to you, and in the future my office will direct all communications regarding this matter to you and your colleagues at the U.S. Attorney's Office. I would appreciate it if you would respond to the letter. Thank you.

Very truly yours,

Nicholas B. Carter

NBC/mjm
Enclosure

# TODD&WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

Carole C. Cooke
E-mail: ccooke@toddweld.com

May 21, 2013

BY EMAIL
AND FIRST CLASS MAIL

Zachary R. Hafer, Esq.
U.S. Attorney's Office
John Joseph Moakley Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02110

Re:   In the Matter of the Search of The Boston Society of the New Jerusalem Church,
      The Bostonview Apartments Management Office, and The Bostonview Apartments
      Basement Fire Alarm Room; U.S. District Court for the District of Massachusetts,
      Nos. 13-MJ-2168, 13-MJ-2169 and 13-MJ-2172

Dear Assistant U.S. Attorney Hafer:

We spoke on May 13, 2013 concerning the attorney-client privilege concerns we raised,
in a letter dated May 9, 2013 on behalf of our clients, the Boston Society of the New Jerusalem,
Inc. and Bostonview Corporation.  In that letter we explained that many of the items seized by
the FBI and IRS on May 2, 2013 were likely to contain attorney-client privileged
communications, and we provided you with the names of those attorneys whom we were able to
identify as having represented our clients in the past several years.  You asked for more
information concerning the relationship between The Boston Society of the New Jerusalem, Inc.
and Bostonview Corporation, as well as the dates the attorneys represented one or both of these
entities, and the specific entities they represented.  I write now to provide you with that
information.

The Boston Society of the New Jerusalem, Inc., also known as Church on the Hill ("the
Church"), is an independent Swedenborgian church that has been in existence since 1818.  In
1963, the Church tore down its overly large crumbling 1844 cathedral and built in its place an
apartment building which housed a small sanctuary for the Church.  The Church formed
Bostonview Corporation ("Bostonview"), a Delaware corporation, to hold title to and manage the
income from the apartment building.  Bostonview, a tax-exempt corporation, is a wholly owned
subsidiary of the Church.

Todd & Weld, LLP has represented the Church and Bostonview since 2003 in various
legal matters.  Attorneys from Todd & Weld who have been involved over the years included
Howard Cooper, Nicholas Carter, Carole Cooke and others.  Todd & Weld, LLP is currently
representing the Church and Bostonview in connection with the above-referenced matter.

May 21, 2013
Page 2

TODD&WELD LLP

Scott Harshbarger (formerly of Murphy, Hesse, Toomey & Lehane, LLP), Amy Crafts, Alison Langlais and other attorneys of Proskauer Rose LLP began representing the Church and Bostonview in 2004 or 2005.

Edward V. Colbert, III of Looney & Grossman LLP has represented individuals and entities affiliated with the Church and Bostonview with whom there was a joint defense with the Church and Bostonview beginning in 2005;

Kurt S. Kusiak (and possibly others) of Sally & Fitch LLP represented the Church and Bostonview beginning in 2004;

Richard McCarthy, Nicholas Rosenberg and other attorneys of Edwards Wildman LLP (formerly Edward Angell Palmer Dodge LLP) represented the Church and Bostonview beginning in 2003.

In addition to the foregoing counsel whom we mentioned in our May 9, 2013 letter, it has come to our attention that two additional attorneys have provided legal representation to the Church and Bostonview during the past two or three years: Jeffrey Hurwit of Hurwit & Associates and George Warshaw of George Warshaw & Associates, P.C.

Although the Church and Bostonview are continuing to fully cooperate with the federal government in the above-referenced matter, they are not waiving their attorney-client privilege. Hence, we request that you implement the "taint" review that you described to us during our call. It is our understanding that you will segregate all seized items (whether paper or electronic) that we identified in our May 9, 2013 letter as likely containing attorney-client privileged documents, and then a team of attorneys who are not involved with this investigation will review the materials for privilege. You will also segregate and have the "taint team" review any additional items found during review of the other seized items when it appears to the reviewer that they may contain attorney-client privileged documents. When the taint team determines that a document is privileged, it will remove it and return it, and it will not make it available to those attorneys and agents who are involved in this investigation.

In terms of searching the electronic records that you have agreed to have segregated and reviewed by the taint team, you asked us to provide search terms and likely locations of privileged materials, if we were aware of them. We understand from our clients that there are folders or files on the computers bearing attorney names and they have saved communications from attorneys in these locations. There may also be confidential attorney-client communications elsewhere in the electronic records. Hence, we request that you search all electronic data for the following names:

Howard Cooper
Nicholas Carter
Carole Cooke
Todd & Weld, LLP
Scott Harshbarger
Murphy, Hesse, Toomey & Lehane, LLP

May 21, 2013
Page 3

**TODD&WELD** LLP

Amy Crafts
Alison Langlais
Proskauer Rose LLP
Edward V. Colbert, III
Looney & Grossman LLP
Kurt S. Kusiak
Sally & Fitch LLP
Richard McCarthy
Nicholas Rosenberg
Edwards Wildman LLP
Edward Angell Palmer Dodge LLP
Jeffrey M. Hurwit
Hurwit & Associates
George Warshaw
George Warshaw & Associates, P.C.

If you would like to discuss further or require any additional information, please contact me or Nicholas Carter. Thank you for your cooperation and assistance with this matter.

Very truly yours,

Carole C. Cooke

CCC/jc

cc:   Scott Harshbarger
      Amy Crafts
      Alison Langlais
      Edward V. Colbert, III
      Kurt S. Kusiak
      Richard McCarthy
      Nicholas Rosenberg
      Jeffrey M. Hurwit
      George Warshaw
      Nicholas B. Carter

May 21, 2013
Page 4

TODD&WELD LLP

bcc:    Michael Bancewicz (by email)
        Joseph O'Connor (by email)

# TODD&WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

Carole C. Cooke
E-mail: ccooke@toddweld.com

May 28, 2013

BY EMAIL
AND FIRST CLASS MAIL

Zachary R. Hafer, Esq.
U.S. Attorney's Office
John Joseph Moakley Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02110

Re:    In the Matter of the Search of The Boston Society of the New Jerusalem Church,
       The Bostonview Apartments Management Office, and The Bostonview Apartments
       Basement Fire Alarm Room; U.S. District Court for the District of Massachusetts,
       <u>Nos. 13-MJ-2168, 13-MJ-2169 and 13-MJ-2172</u>

Dear Assistant U.S. Attorney Hafer:

I write in furtherance of my letter dated May 21, 2013 concerning the attorney-client privilege concerns we raised on behalf of our clients, the Boston Society of the New Jerusalem, Inc. and Bostonview Corporation. In our May 21, 2013 letter, we informed you that Kurt S. Kusiak (and possibly others) of Sally & Fitch LLP represented the Church and Bostonview beginning in 2004. Another attorney from Sally & Fitch LLP who was involved in that representation was Carlos Maycotte. Please add his name to the list of "search terms" when reviewing for attorney-client privilege.

Thank you.

Very truly yours,

*Carole C Cooke*

Carole C. Cooke

CCC/jc

cc:    Kurt S. Kusiak
       Carlos Maycotte
       Nicholas B. Carter

May 28, 2013
Page 2

**TODD&WELD** LLP

bcc:   Michael Bancewicz (by email)
Joseph O'Connor (by email)



**U.S. Department of Justice**

*Carmen M. Ortiz*
*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

October 11, 2013

Carole C. Cooke, Esq.
Nicholas B. Carter, Esq.
Todd & Weld LLP
28 State Street
Boston, MA  02109

      Re:    United States v. Edward J. MacKenzie, Jr.
             <u>Criminal No. 13-CR-10149 (FDS)</u>

Dear Counsel:

    We write in response to your September 26, 2013 e-mail seeking certain items seized during the execution of federal search warrants at BSNJ and Bostonview.

# REDACTED

REDACTED

Regarding your request for privileged materials, we are not yet in a position to return such materials. Once our taint team has completed its review of those materials, we will let you know.

Please call the undersigned Assistant U.S. Attorney at (617) 748-3106 if you have any questions.

Very truly yours,

CARMEN M. ORTIZ
United States Attorney

By:

ZACHARY R. HAFER
DUSTIN CHAO
Assistant U.S. Attorneys

enclosures

2



**U.S. Department of Justice**

*Carmen M. Ortiz*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

March 26, 2014

<u>BY FIRST CLASS MAIL</u>
Robert M. Griffin, Esq.
DharLaw LLP
Two Atlantic Avenue, 4th Floor
Boston, MA 02110

      Re:    United States v. Edward J. MacKenzie, Jr.
            <u>Criminal No. 13-CR-10149 (FDS)</u>

Dear Mr. Griffin:

      As you know from our previous conversations, we have obtained certain non-privileged communications of your client since he has been in custody on this case. To that end, enclosed please find four CDs. Three of these CDs contain non-privileged, recorded telephone conversations of your client from the Wyatt Detention Center during the period May 22, 2013 to February 7, 2014. The fourth CD, comprising Bates Nos. U.S. v. MACKENZIE-3402 – 3631, contains non-privileged written communications of your client from the Wyatt Detention Center during the period December 5, 2013 to March 4, 2014.

      Please call us at (617) 748-3106 if you have any questions.

                        Very truly yours,

                        CARMEN M. ORTIZ
                        United States Attorney

            By:

                        ZACHARY R. HAFER
                        DUSTIN CHAO
                        Assistant U.S. Attorneys

enclosures