1                      UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
2

3

4     UNITED STATES OF AMERICA,          )
                                         )
5                      Plaintiff,        )  Criminal Action
                                         )
6                                        )  No. 13-10149-FDS
      vs.                                )
7                                        )
      EDWARD J. MacKENZIE, JR.,          )
8                      Defendant.        )

9

10    BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV

11

12                           SENTENCING

13

14

15            John Joseph Moakley United States Courthouse
                           Courtroom No. 2
16                         One Courthouse Way
                           Boston, MA 02210
17

18                          March 6, 2015
                              2:00 p.m.
19

20

21

22

23                         Valerie A. O'Hara
                         Official Court Reporter
24       John Joseph Moakley United States Courthouse
                      One Courthouse Way, Room 3204
25                         Boston, MA 02210
                      E-mail: vaohara@gmail.com

APPEARANCES:

For The United States:

    United States Attorney's Office, by ZACHARY R. HAFER, ASSISTANT UNITED STATES ATTORNEY, and DUSTIN CHAO, ASSISTANT UNITED STATES ATTORNEY, 1 Courthouse Way, Suite 9200, Boston, Massachusetts  02110

For the Defendant:

    Dhar Law LLP, by ROBERT M. GRIFFIN, ESQ., 1600 Providence Highway, Walpole, Massachusetts 02110.

<u>PROCEEDINGS</u>

1

2          THE CLERK:  All rise.  Thank you.  You may be seated.

3     Court is now in session in the matter of United States vs.

4     Edward J. McKenzie, Jr., Criminal Matter Number 13-10149.

5          Counsel, will you please identify yourself for the

6     record.

7          MR. HAFER:  Good afternoon, your Honor, for the

8     United States, Assistant U.S. Attorney Zach Hafer and Dustin

9     Chao.

02:03PM 10          THE COURT:  Good afternoon.

11          MR. GRIFFIN:  Good afternoon, your Honor,

12     Robert Griffin on behalf of Mr. MacKenzie.

13          THE COURT:  Good afternoon.  This is the sentencing of

14     Edward MacKenzie, Jr.  I have received and read the presentence

15     report as revised through December 23rd, the defendant's

16     sentencing memorandum filed March 5th with various attachments,

17     the government's sentencing memorandum filed February 27th with

18     various attachments.  The defendant's sentencing memorandum

19     included letters from supporters.

02:03PM 20          To my knowledge, no other materials have been

21     submitted to the Court.  Is there anything else I should have

22     seen that I have not, Mr. Hafer?

23          MR. HAFER:  No, your Honor.

24          THE COURT:  Mr. Griffin?

25          MR. GRIFFIN:  No, your Honor.

1          THE COURT:  Mr. Griffin, I know you've had a chance to

2     review the pre-sentence report.  Have you gone over it with

3     Mr. MacKenzie?

4          MR. GRIFFIN:  I have, your Honor, at length.

5          THE COURT:  Is that correct, Mr. MacKenzie?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Mr. Hafer, are there any victims present

8     who wish to participate in this proceeding?

9          MR. HAFER:  Your Honor, I'm not aware of any.

02:04PM 10     Obviously, it's a victim case, and our victim witness

11     coordinator has contacted various victims, who I know a number

12     of them are present, but I've not, at least, been given any

13     notice of any folks who want to make statements.

14          THE COURT:  All right.  Let me turn then to the

15     objections in the PSR.  There are a number of them.  One of

16     them involved a typographical error that I think was corrected.

17     There's an objection as to the inclusion of paragraph 79

18     through 86, which defendant contends does not rise to the level

19     of obstruction of justice.  Do you want to be heard on that,

02:04PM 20     Mr. Griffin?

21          MR. GRIFFIN:  Your Honor, my objection was the

22     inclusion in the pre-sentence report.  The pre-sentence report,

23     the probation has determined that it did not rise to the level

24     of obstruction of justice.  Obviously, I concur with that

25     determination, your Honor.  I just objected to the inclusion

1   that it simply did not rise to that level, it shouldn't be

2   included in the order.

3           THE COURT:  All right.  I'm going to overrule that

4   objection.  As I think you're aware, there's really no

5   limitation or hardly any limitation on the information that can

6   be provided to the Court for purposes of sentencing, and I

7   think that's appropriately part of the record.

8           The next objection is to the application of the

9   guidelines.  In substance, I think defendant contends that

02:05PM 10   there are four or so adjustments that defendant contends more

11   or less overlap and lead to an unfair or improper increase.

12   Mr. Griffin, I'll let you frame the argument.

13           MR. GRIFFIN:  As I've noted in the objection, the

14   defendant's position, your Honor, is that the multiple

15   enhancements all encompass the same behavior by Mr. MacKenzie,

16   and for lack of a better term, I consider it to be piling on,

17   so to speak, in calculating Mr. MacKenzie's guideline range, so

18   for those reasons, your Honor, I would object to all of those.

19           I believe that certainly at least one of those

02:06PM 20   enhancements is appropriate, and I believe one of those

21   enhancements would cover all of the behavior that's contained,

22   that he's pled guilty to within the indictments, your Honor.

23           THE COURT:  All right.  I'm going to overrule that

24   objection as well.  The way the guidelines work, for better or

25   for worse, there often is substantial overlap and duplication.

1  This comes up in virtually all cases involving the combination

2  of guns and drugs, but I think the same principles apply here

3  in which you can have, for example, a sophisticated means

4  enhancement and an abuse of position of enhancement of trust,

5  and to some extent they do overlap but it's an appropriate

6  calculation under the guidelines, so I'm going to overrule that

7  objection.

8      The third objection or set of objections is to

9  paragraphs 109 through 118 involving what defendants say are

02:07PM 10  partial contents of conversations with his daughters and

11  David Stark.  Mr. Griffin, do you want to be heard on that?

12      MR. GRIFFIN:  Again, your Honor, I don't want to be

13  repetitive, but the objection is that the snippets that were

14  included were partial snippets of conversations that

15  Mr. MacKenzie had while he was incarcerated at Wyatt that were

16  recorded, and he knew he was being recorded, and my suggestions

17  to the Court is that hearing just those snippets of the

18  conversations and those quotes can very easily be taken out of

19  context, misconstrued and lead to improper conclusions as to

02:08PM 20  the meaning and the intent of the conversations and the words

21  that were spoken, your Honor.

22      THE COURT:  All right.  Again, I'm going to overrule

23  that objection.  Again, I think the information is properly

24  included in the pre-sentence report for what it's worth, and

25  then finally defendant objects to a one-point application in

1    its criminal history calculation.  Defendant contends that the

2    sentence in question is outside the 10-year time frame for

3    prior offenses.

4         Mr. Griffin, do you want to be heard on that?

5         MR. GRIFFIN:  Not on that particular one, your Honor,

6    but I would like to note, your Honor, that as to paragraph 125

7    in the pre-sentence report where the defendant was charged with

8    larceny over $250 in Boston Municipal Court, a jury of 6.

9         THE COURT:  Yes.

02:09PM 10         MR. GRIFFIN:  That matter indicates that it was

11   dismissed on November 3rd of 1993.  In reviewing the

12   indictment, Mr. MacKenzie's first alleged criminal -- first

13   criminal act that he has pled to, the Space Propulsion Act

14   Racketeering Account Number 1 took place in the spring of 2004,

15   and I would suggest that that takes that -- that would take

16   that particular offense, which he received one point for out of

17   the 10 years, and that that should not be applied.

18        THE COURT:  Mr. Hafer, do you want to respond?  I

19   think paragraph 125 involves a continuance without a finding.

02:09PM 20        MR. HAFER:  Just factually, your Honor, the conspiracy

21   which he has pled guilty to is alleged to have begun in

22   September of 2002.  The Space Propulsion wire fraud is the

23   first racketeering act if conspiracy is alleged, which he's

24   admitted to, is alleged to have begun gun in September of '02,

25   so we would agree with the response of the probation office.  I

1    was aware he was objecting to 124.  I don't know that I was

2    aware he was objecting to 125.  To the extent that the

3    objection is that it's outside of the 10-year window, it's not

4    based on the indictment to which he's pled guilty.

5         THE COURT:  All right.  I'm going to overrule that

6    objection as well.  Again, I think the calculation by probation

7    as set forth in their response is correct, so I think that

8    takes care of all the objections to the PSR.  Let me turn then

9    to the guideline calculations, which is my starting point.

02:10PM 10         The base offense level is 7, there's a 14-level

11   enhancement based on the amount of the loss, a two-level

12   enhancement because the offense involves sophisticated means, a

13   two-level enhancement due to a representation that he was

14   acting on behalf of a religious organization, a two-level

15   enhancement for abuse of position of trust, and a four-level

16   enhancement for being an organizer or leader of a criminal

17   activity.  That all adds up to Level 31.  There is a

18   three-level reduction for acceptance of responsibility on

19   government motion, Mr. Hafer?

02:11PM 20         MR. HAFER:  Yes, your Honor, we do make the motion for

21   the third point.

22         THE COURT:  That motion is allowed.  That brings us to

23   a final adjusted offense level of 28, his criminal history

24   score is 6, his criminal history category is III.  That

25   produces a guideline range of 97 to 121 months, a supervised

1    release range of one to three years, a fine range of $12,500 to

2    $500,000.  The restitution amount does not appear to be

3    disputed.  It's $754,569.74 and a special assessment of $100 on

4    each count for a total of $1,300 is mandatory.

5           Is there any further correction or objection to that

6    calculation not previously raised?  Mr. Hafer.

7           MR. HAFER:  No, your Honor.

8           THE COURT:  Mr. Griffin.

9           MR. GRIFFIN:  No further objections, your Honor.

02:12PM 10           THE COURT:  All right.  With that then as our starting

11    point, I will hear from the government as to its

12    recommendation.  Mr. Hafer.

13           MR. HAFER:  Yes, your Honor.  As you know, we are

14    recommending in this case a sentence of 144 months, which we

15    believe is the minimum sentence sufficient, your Honor, in

16    light of the crimes to which MacKenzie has pled and the life of

17    crime he has led.

18           At the outset, your Honor, I just do want to note two

19    First Circuit cases, recent cases in the last four to six cases

02:12PM 20    of which we became aware since we filed our memo since we are

21    asking for an upward departure.  I just draw the Court's

22    attention to a case that the First Circuit decided at the end

23    of January, *U.S. v. Santiago-Serrano*.  That's a case in which

24    the government recommended a sentence of between 168 and 210

25    months, and the District Court Judge imposed a sentence of 360

1    months, and the First Circuit recently affirmed that sentence

2    finding it was not substantively unreasonable.

3         Then a couple weeks ago in mid-February in the case of

4    *U.S. v. Diaz Bermudez*, a drug and gun case, the government

5    recommended a sentence of 60 months, and the Judge ultimately

6    sentenced the defendant to 108 months, 48 months or

7    approximately 80 percent higher than the government's

8    recommendation, and a few weeks ago the First Circuit affirmed

9    and found that sentence was not substantively unreasonable.

02:13PM 10         Your Honor, the crimes in this case took place over

11   more than a decade.  This is not some hand-to-hand drug buy or

12   felon in possession case in which defendants are routinely

13   sentenced to stiff sentences for crimes that at least

14   temporally are very, very short, this is a case in which the

15   defendant, who as you know now is a life-long con man and

16   violent felon devised a complex scheme to infiltrate and then

17   commandeer a wealthy Boston church, and he did so, your Honor,

18   for the sole purpose of lining his own pockets, and the

19   lewding, which was sophisticated and extensive and which I'll

02:14PM 20   get to in more detail a moment was considerable.

21        It took place over almost 11 years, and we strongly

22   believe at the outset, your Honor, that your sentence needs to

23   reflect the fact that this is not a one-day crime, a one-hour

24   crime or a one-week crime but an 11-year crime, and who were

25   the victims of this crime?  It was a church, a church, a church

1   with an extensive history of providing for the sick, the

2   downtrodden and the needy, and instead of receiving charity

3   from the church, what happened to the millions of dollars that

4   would have gone to the needy and the homeless, it went to

5   Foxwoods, Luxor, Mandalay Bay, $90,000 Cadillacs, Lexuses,

6   luxury boxes at the garden and things, your Honor, like drug

7   rehabilitation treatment for a girl who was 15 ears old at the

8   time the defendant started dating her and got her hooked on

9   Oxycontin.

02:15PM 10         In fact, your Honor, this crime not only took place

11   over 11 years, it not only involved vulnerable victims,

12   deprived of many acts of kindness and charity, it was

13   sophisticated, and it was so sophisticated that one of the most

14   prestigious firms in Boston, Todd & Weld, who represented this

15   church for 10 years didn't even know it was going on for almost

16   10 years while they were representing the church and during the

17   entire racketeering conspiracy in this case.

18         How was this crime sophisticated?  It was

19   sophisticated in two ways:  In the traditional white collar

02:16PM 20   sense in that MacKenzie was able to amass votes, critical votes

21   to take over a board, was able to change the by-laws of the

22   corporation for his own benefit, was able to secede from the

23   general convention of the Swedenborgian church, the typical,

24   sophisticated white collar frauds, but it was also

25   sophisticated, your Honor, in that it relied on MacKenzie's

1  well-earned reputation for violence, and this is how it worked,

2  to con the good people of the Swedenborgian church, MacKenzie

3  presented himself as a redeemed mob enforcer, someone who

4  sought salvation for the prior bad deeds of his life, and as

5  unfortunately the folks in this church learned the hard way,

6  nothing could have been further from the truth because lest

7  anyone cross MacKenzie during these 11 years or challenge his

8  authority, he was at the ready with an autographed copy of his

9  book, *Street Soldier* and the threat don't make me come out of

02:17PM 10  retirement, and that's where we now morph, your Honor, into the

11  3553(a)(1) factors and the history and characteristics of this

12  defendant.

13      It's a defendant that as we said in our memorandum has

14  been conning, manipulating and victimizing the vulnerable for

15  his entire life.  These crimes are spelled out, these prior

16  crimes in some detail in the PSR, in our sentencing memo, but

17  they're also described by MacKenzie himself in *Street Solider*:

18      Crimes like pouring scolding hot coffee on a victim

19  and then threatening him with a beating if he testified against

02:17PM 20  MacKenzie.  The result of that case, dismissed.

21      Crimes like a prior federal drug conviction in the

22  significant South Boston narcotics conspiracy of the early

23  '90s, a crime for which MacKenzie ultimately received a

24  sentence of probation, crimes like a multi-hundred thousand

25  dollar swindle of an unsuspecting elderly woman, no jail time.

1          Crimes like threatening to chain your ex-wife's ankles

2     to a cinder block and throw her off a bridge if she testified

3     honestly in a workman's comp. case, case dismissed.

4          Crimes like biting off and swallowing someone's

5     finger, vicious attacks on unsuspecting and innocent gay men,

6     attacks, I might add, your Honor, that according to his own

7     book, he enjoyed, no jail.

8          And then there's this case for which Mr. MacKenzie has

9     been incarcerated since May of 2013, and as set forth in our

02:18PM 10    memorandum and in the pre-sentence report, during that time,

11    he's proved not only that he is a risk to recidivate, but he's

12    already recidivated:

13          Insurance fraud, witness tampering, witness

14    intimidation, lying to the Quincy District Court, attempting to

15    lie to pretrial in this case, and what do all those cases have

16    in common?  Not only is he continuing to commit crimes in jail,

17    but with those, he used his own daughter to facilitate the

18    crimes, and that, amazingly, isn't even the worst of it.

19          As set forth in the pre-sentence report since he's

02:19PM 20    been incarcerated on this case, MacKenzie has encouraged his

21    own daughter to have sex with what he described is a nasty

22    inmate and to have sex with his girlfriend so she wouldn't

23    sleep with other men while he was incarcerated.  Is there

24    anything worse?

25          Finally, your Honor, I just want to say a few words

1    about the defendant's sentencing memorandum which we received

2    last night at midnight and in which he asks you to downwardly

3    depart and sentence him to 48 months, which we don't view as a

4    serious recommendation, but, nonetheless, telling in many ways.

5           It's as if, in fact, your Honor, he's trying one final

6    con.  He submits for you sentencing letters, which as you now

7    know from the pre-sentence report, many of which he edited

8    himself to prevent you from hearing things that the people that

9    were writing letters for him actually said, things like the

02:20PM 10   young -- well, at the time young girl who started off her

11   letter by referring to the fact that she met MacKenzie when she

12   was 14 and they started dating, and he sent her back that

13   letter and scratched that off and said I don't think the Judge

14   needs to hear that, he might not understand, even though you

15   are old enough.

16          Things like Mr. Diehnel, Amos Diehnel, who submitted a

17   letter last night who initially in his letter talked about

18   MacKenzie's book, *Street Solider,* and how much he enjoyed it

19   and that he was a violent felon, and then Mr. MacKenzie got

02:20PM 20   ahold of that, edited that out and said, you know, the Judge

21   doesn't need to hear that.

22          Things in the sentencing memo that we read last night,

23   your Honor, like the defendant disowning *Street Solider,* saying

24   it was his author, it was his author and not him, but to be

25   clear, your Honor, we have no evidence, and no one in the grand

1  jury in this case testified that MacKenzie put any such

2  disclaimer on that book when he used it to facilitate the years

3  and years of crimes he committed at the church, and in a final

4  act of chutz·pah, MacKenzie attaches to his sentencing

5  memorandum for your review and asks you to rely on certificates

6  of commendation for his leadership of this church at the

7  height, at the pinnacle of the racketeering conspiracy,

8  certificates from the various political figures, from the state

9  house, from the state senate talking about his good work at the

02:21PM 10  church and his good deeds in 2006 while he's lining his own

11  pockets and robbing the church blind.

12          In conclusion, your Honor, and as we said in our memo,

13  after far too many years of preying on society's most

14  vulnerable members, it's time to hold Edward MacKenzie

15  accountable.  Justice is required in this case, your Honor,

16  it's required for the church, it's required for the homeless

17  and the needy, who were deprived services because of this

18  crime.  It's required for all his victims over the years,

19  including Jane Doe, the poor 15 year-old girl who he got hooked

02:22PM 20  on OxyContin.

21          There are no words for this behavior, and there is no

22  sentencing too harsh.  Fairness requires at least what the

23  government is seeking here.  The public is not safe if

24  MacKenzie is on the street, and deterrence is not served by a

25  guideline sentence.  3553(a) is not satisfied by any sentence

1    less than 144 months, and justice is not served for any of

2    MacKenzie's victims by any sentence less than 144 months.

3    Thank you, your Honor.

4              THE COURT:  Thank you, Mr. Hafer.  Mr. Griffin.

5              MR. GRIFFIN:  Your Honor, Mr. MacKenzie stands before

6    the Court having pled guilty to various offenses.  He's 57

7    years of age.  As I noted in my memorandum, Mr. MacKenzie was

8    abandoned at the age of four by his parents.  He was brought up

9    in a hostile, abusive and neglective foster care system.

02:23PM 10         Mr. MacKenzie is what he is, your Honor, I'm not here

11   to tell you that Mr. MacKenzie did not, was not complicit in

12   this conspiracy.  He was complicit in it, he was involved in

13   it, however, your Honor, the government makes a significant

14   issue of the book that Mr. MacKenzie is the author of.

15             The book details acts that happened a lifetime ago.

16   They were over 30 years old.  Your Honor, the book says what it

17   says.  I'm not issuing any disclaimer in the sentencing

18   memorandum, however, the book was written by someone else.

19   Mr. MacKenzie did sell the rights to it.

02:24PM 20         The book was written in conjunction with him.  I am

21   not suggesting to the Court that that wasn't the case, however,

22   Mr. MacKenzie had no authority over the final product.  Some of

23   the instances that are detailed in that book are true, some are

24   not true.

25             Mr. MacKenzie has, in spite of the government's

1   characterization of his behavior, Mr. MacKenzie has worked to

2   the best of his ability to turn his life into a productive

3   life.  As you noted from one of the attachments, he's earned a

4   Bachelor of Arts degree from the University of Massachusetts.

5   He has done significant work.  In spite of what he has done in

6   his criminal life, he has done significant works in attempts to

7   help other disadvantaged youths.

8        As far as his involvement with the church, your Honor,

9   the government makes the point that Todd & Weld didn't know

02:25PM 10   anything about what was going on there, but the truth is the

11   facts are, your Honor, that at every board meeting --

12   Mr. MacKenzie was not a board member.  At every board meeting,

13   there was an attorney from Todd & Weld at that board meeting.

14   There was an attorney from Todd & Weld that drafted every

15   change to every bylaw.  There was an attorney that advised the

16   church regarding the changes in these bylaws, so Todd & Weld

17   was aware of what was going on.

18        The attorney general of the Commonwealth did an

19   intensive investigation of the church in 2004 and entered into

02:26PM 20   a consent decree with the church regarding their oversight of

21   nonprofit organizations within the Commonwealth long before

22   anything that Mr. MacKenzie is alleged to have done.

23        Your Honor, there are a number of people that are

24   involved in this conspiracy.  Mr. MacKenzie is the only one

25   charged.  Every single contractor, every plumber, every

1    carpenter, every floor installer, the boiler fire persons, they

2    all willingly paid Mr. MacKenzie gratuities and kickbacks to

3    get the jobs.  Nobody else has been charged.  Mr. Kennedy was

4    also a driving force, at least as culpable as Mr. MacKenzie and

5    never charged in this conspiracy.

6         Your Honor, as I said, Mr. MacKenzie is 57 years of

7    age.  I would suggest that a 48-month incarceration is going to

8    bring him into his '60s upon his release.  He at that point in

9    time, I would suggest, poses no threat to the public.  His

02:27PM 10   career is over at that point in time, your Honor, and I would

11   suggest to the Court that the interests of justice would be met

12   by a sentence in the range of 48 months.

13        I would ask the Court to consider imposing such a

14   sentence and depart downward from the guideline range as

15   requested by my sentencing and other issues raised in my

16   sentencing memorandum, your Honor.

17        THE COURT:  Thank you, Mr. Griffin.  Any brief

18   response, Mr. Hafer?

19        MR. HAFER:  Not really.  This is a factual matter,

02:28PM 20   your Honor, Mr. Kennedy was charged, Mr. Kennedy did plead

21   guilty.  It's not in this indictment, but we never comment,

22   obviously, on ongoing investigations, but he was in fact

23   charged and pled guilty.

24        THE COURT:  Mr. MacKenzie, do you wish to address the

25   Court before I impose sentence?

1          THE DEFENDANT:  Yes, your Honor.  I'm not going to

2    stand here and try to profess my innocence, your Honor, I'm

3    guilty.  I took kickbacks, sir.  All my life, I've been known

4    as a giver.  I don't live in a mansion, I don't drive these

5    expensive cars.  I had a four-, five-year old car.

6          I just -- I can't believe the mistakes, the poor

7    choices that I made doing this.  I'm so very, very sorry to the

8    Court, to your Honor, to everybody here, my grandchildren.  I

9    have two daughters that I got custody of in 1998 and I've been

02:28PM 10    raising.  Their mother died in 2012, and they've been

11    struggling with heroin addiction problems.  They are 20 and 21,

12    and I'm all they have, and when I got indicted, I had them into

13    a two-week program, and they were getting out in two weeks, and

14    they come out, and now they're homeless because of me and my

15    poor choices and my actions.

16          If the Massachusetts General Hospital called today and

17    said one of my kids was involved in an accident and I had to

18    get there to give my heart for a heart transplant, it would be

19    my last day on earth, your Honor, that's how much I love and

02:29PM 20    care about my children.

21          I'm not going to address these jailhouse conversations

22    about what was said.  I think it was taken out of context.

23    People that grow up in my neighborhood, we think differently,

24    and we talk differently, your Honor, and we joke differently

25    than other people may view it.  I'm very sorry it was taken in

1   the wrong way, but as I said before, I would die, I would give

2   my life for any one of my children, and there's not one person

3   that doesn't know me that knows what a great father I am and

4   how much I've always been there, and I'm absolutely heartbroken

5   that I have my two young daughters right now that have nothing

6   and are bouncing around from kids' houses to friends' houses

7   hoping for their father to come home.

8          I'm really, really, really sorry, your Honor, and I

9   know when this ordeal is over, which was brought on by myself,

02:30PM 10  I'll go out and get a full-time job, I'll do whatever it takes,

11  and I'll repay whatever money I owe to anybody, and I'll do

12  whatever I have to do.

13         I'm just sorry, your Honor, I'm just sorry for my

14  family, what I did and what I did to this Court and everybody

15  to have to go through this.  I just stand before you to give my

16  justice.  I'm so sorry.

17         THE COURT:  Thank you, Mr. MacKenzie.  I am very much

18  aware that any person that I sentence is a human being, and I

19  always try to see, if I can, not only what the person has done

02:31PM 20  that's bad but what, if anything, is either good in their life

21  or might be an excuse or a mitigating factor, whether the

22  defendant or the person is remorseful, whether the person could

23  be rehabilitated and make a positive contribution to society.

24         I'm struggling here under the circumstances to find a

25  mitigating or redeeming qualities in Mr. MacKenzie.  He's I

think obviously intelligent, although he has not used his

intelligence for productive purposes as near as I can tell.  He

appears to love his children, although even that is in doubt.

Certainly there's evidence that he was attempting to involve

his children in either criminal acts or acts that are

unpleasant or disreputable.

He is perhaps remorseful, but I can't say that I

accept that in its entirety, and I think the bottom line here

is he's an adult man, he's not a child, he's not a teenager,

he's not a headstrong young man.  He hasn't committed a crime

of passion or a momentary lapse in judgment.  He has engaged in

a multi-year, decade-long episode of criminal activity that was

complex and sophisticated and driven as near as I can tell

entirely by greed.

We all make choices in life.  We have to live with the

consequences of those choices, and Mr. MacKenzie has made his

choices here and will have to live with the consequences of

those choices.

Sentencing is a difficult process.  There are multiple

purposes.  They overlap, and sometimes they act at cross

purposes.  Often what's best for the defendant is not what's

best for the victim, and it's not what is best for the public.

Sometimes the aspect of sentencing that's retributive, that's

about punishment overwhelms the other considerations of

sentencing.

1       Sometimes given the crime, the defendant, all the

2   circumstances, it becomes the dominant consideration, and I

3   think this is one of those cases.  Again, his history is what

4   it is.  He is a life-long con man.  There is certainly reason

5   to believe he has an extensive history of violence, even if it

6   is for the most part in the past.  He wrote this book, I

7   haven't read it, only the excerpts that the government has

8   submitted, but either it's true or it's not and reinforces the

9   fact that the defendant is someone who lies and deceives people

02:34PM 10   on a regular basis.

11       The victim here is a church.  Most of the church

12   governance consists of people who are elderly.  The crime was

13   huge and sophisticated.  He stole massive amounts of money from

14   a church, from a charity, and what do I have to balance against

15   all of that?  The answer is not very much.  He had a difficult

16   childhood.  I accept that.  Again, he's now 57.  He is

17   intelligent enough to have contributed to society, but at the

18   age of 57, he hasn't done that yet, and I don't really see much

19   prospect of him doing so in the future.

02:35PM 20       And so I think under the circumstances I think the

21   government has it about right.  Mr. Hafer said that no sentence

22   was too harsh.  I don't know whether that's true or not.  I'm

23   not going to higher than the government recommendation, but I

24   am going to accept it.  I think this is an unusual case where

25   an upward departure under the sentencing guidelines is

1    appropriate given his criminal history, the fact that his

2    criminal history does not appear to reflect or his criminal

3    history category does not appear to reflect the adequacy of his

4    criminal history, the nature and circumstances of the crime,

5    the nature and circumstances of the man, his life up to this

6    point, the victim.

7         The long and sorted history that Mr. MacKenzie has and

8    brings to court here today all suggest that a lengthy

9    punishment is really the only sensible option on the table, and

02:36PM 10  I'm going to adopt it.

11         I don't do that lightly.  I don't do that with

12   pleasure.  I never enjoy sentencing anyone to any lengthy term

13   of incarceration.  I understand that he has family and friends

14   who will be severely impacted by what I do, but, again, those

15   are consequences of choices that he made and that he himself

16   will have to live with and bear responsibility for.

17         With that, I'm going to formally state the sentence

18   I'm going to impose.  When I have finished formally stating it,

19   I'll give the attorneys a final opportunity to make any further

02:37PM 20  objections or corrections or additions to that sentence before

21   I finally impose it.

22         Mr. MacKenzie, would you please stand.  Pursuant to

23   the Sentencing Reform Act of 1984 and having considered the

24   sentencing factors set forth at 18 United States Code,

25   Section 3553(a), it is the judgment of the Court that the

1    Defendant Edward J. MacKenzie, Jr. is hereby committed to the

2    custody of the Bureau of Prisons to be imprisoned for a term of

3    144 months.  This term consists of terms of 144 months on each

4    count to be served concurrently.

5         Upon release from imprisonment, the defendant shall be

6    place on supervised release for a term of three years.  This

7    term consists of terms of each count such terms to run

8    concurrently.  Within 72 hours from release from the custody of

9    the Bureau of Prisons, the defendant shall report in person to

02:38PM 10    the district to which the defendant is released.

11        It is hereby ordered that the defendant shall make

12    restitution totaling $754,569.74 to the following entities or

13    persons in the amounts indicated:  To the Boston Society of the

14    New Jerusalem, Incorporated, $704,569.74; to Peter O'Connell,

15    $40,000; to Michael Perry, $10,000.

16        Any payment made that is not payment in full shall be

17    divided proportionately among the parties named.  The

18    restitution shall be paid by the defendant jointly and

19    severally with the defendant convicted in a related sealed

02:39PM 20    case.

21        Payment of the restitution shall begin immediately and

22    shall be made according to the requirements of the Federal

23    Bureau of Prisons' inmate financial responsibility program

24    while the defendant is incarcerated and according to a

25    Court-Ordered repayment schedule during the term of supervised

1    release.

2          All restitution payments shall be made to the Clerk,

3    United States District Court for transfer to the identified

4    victims.  The defendant shall notify the United States Attorney

5    for this district within 30 days of any change of mailing or

6    residence address that occurs while any portion of the

7    restitution remains unpaid.

8          The Court grants the United States motion for entry of

9    a preliminary order of forfeiture.  While under the probation

02:40PM 10   office's supervision, the defendant shall comply with the

11   following terms and conditions:

12         The defendant shall not commit another federal, state

13   or local crime and shall not illegally possess a controlled

14   substance.

15         The defendant shall refrain from any unlawful use of a

16   controlled substance.

17         The defendant shall submit to one drug test within 15

18   days of release from imprisonment and at least two periodic

19   drug tests thereafter not to exceed 104 tests per year as

02:40PM 20   directed by the probation office.

21         The defendant shall submit to the collection of a DNA

22   sample as directed by the probation office.

23         The defendant shall comply with the standard

24   conditions that have been adopted by the Court, which are set

25   forth at Section 5D1.3C of the Sentencing Guidelines and which

1    will be set forth in detail in the judgment.

2          The defendant is prohibited from possessing a firearm,

3    destructive device or other dangerous weapon.

4          The defendant shall pay the balance of any restitution

5    owed according to a Court-ordered repayment schedule.

6          The defendant is prohibited from incurring new credit

7    charges or opening additional lines of credit without the

8    approval of the probation office while any financial

9    obligations remain outstanding.

02:41PM 10        The defendant is to provide the probation office

11    access to any requested financial information which may be

12    shared with the financial litigation unit of the U.S.

13    Attorney's Office, and it is further ordered that the defendant

14    shall pay to the United States a special assessment of $1,300,

15    which shall be due immediately.

16          You may be seated.

17          In terms of the formal reasons for the sentence, it is

18    an upward departure from a guideline sentence.  It is also a

19    nonguideline sentence imposed under Section 3553(a) and having

02:41PM 20    considered the factors set forth in that statute.

21          I'm imposing a term of supervised release of three

22    years in order to help the defendant adjust to a

23    noninstitutional lifestyle and to ensure adequate supervision.

24          I'm imposing no fine in light of the lengthy prison

25    term and the three-year period of supervised release.  The

1    combined sanction is significantly punitive, and no additional

2    sanction by means of a fine is required, and to the extent that

3    the defendant has any financial resources now or in the future,

4    those resources should go to pay restitution of the victim

5    rather than to be paid to the United States by way of a fine,

6    and the special assessment is of course mandatory.

7         Do counsel have any addition or correction or

8    objection to that sentence not previously raised?  Mr. Hafer.

9         MR. HAFER:  No, your Honor.

02:42PM 10    THE COURT:  Mr. Griffin.

11         MR. GRIFFIN:  Your Honor, I would ask the Court to

12    consider staying the order of restitution until he's released

13    from prison.

14         THE COURT:  I will not stay that order.  Again, the

15    amounts that prisoners contribute to things like restitution

16    tend to be almost nominal.  They are relatively small, but I

17    think it's an important part of the process, so I will not stay

18    that order.

19         Anything else, Mr. Griffin?

02:43PM 20    MR. GRIFFIN:  No.

21         THE COURT:  All right.  The sentence is hereby imposed

22    as stated.

23         Let me give Mr. MacKenzie his advice of rights.

24    Mr. MacKenzie, you can appeal your conviction if you believe

25    that your guilty plea was unlawful or involuntary or if there

1    was some other defect in the proceeding that has not been

2    waived.  You may have a right to appeal your sentence under

3    some circumstances, particularly if you think the sentence was

4    contrary to law.

5           If you're unable to pay the costs of appeal, you may

6    ask permission to have those costs waived and appeal without

7    pain.  You must file any notice of appeal within 14 days after

8    the entry of judgment, and if you request, the clerk will

9    immediately prepare and file a notice of appeal on your behalf.

02:43PM 10           Is there anything further, Mr. Hafer?

11           MR. HAFER:  No, your Honor.

12           THE COURT:  Mr. Griffin?

13           MR. GRIFFIN:  No, your Honor.

14           THE COURT:  All right.  Thank you.  We'll stand in

15    recess.

16           THE CLERK:  All rise.

17           THE DEFENDANT:  Your Honor --

18           THE COURT:  Let's stay on the record.  Mr. MacKenzie.

19    Why don't you consult with your counsel before you address me.

02:44PM 20           THE DEFENDANT:  I wanted to know if I could file a

21    notice of appeal on record and request an appeals attorney for

22    that, your Honor, please.

23           THE COURT:  In terms of requesting the appeals

24    attorney, that's at a different stage, but, Mr. Griffin, do you

25    want to handling the filing of a notice of appeal?

1          MR. GRIFFIN:  I will do so, your Honor, yes.

2          THE COURT:  Thank you.  We'll stand in recess.

3          (Whereupon, the hearing was adjourned at 2:44 p.m.)

4

5

6                    C E R T I F I C A T E

7    UNITED STATES DISTRICT COURT )

8    DISTRICT OF MASSACHUSETTS ) ss.

9    CITY OF BOSTON )

10

11         I do hereby certify that the foregoing transcript,

12   Pages 1 through 29 inclusive, was recorded by me

13   stenographically at the time and place aforesaid in Criminal

14   Action No. 13-10149-FDS, UNITED STATES OF AMERICA vs. EDWARD J.

15   MacKENZIE, JR. and thereafter by me reduced to typewriting and

16   is a true and accurate record of the proceedings.

17         Dated this 1st day of September, 2015.

18

19                    s/s Valerie A. O'Hara

20              _____

21              VALERIE A. O'HARA

22              OFFICIAL COURT REPORTER

23

24

25