**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

|  |  |  |
|---|---|---|
| **EDWARD J. MACKENZIE, JR.,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **Criminal Action No.** |
| **v.** | ) | **13-10149-FDS** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

_____)

**MEMORANDUM AND ORDER**
**ON PETITION FOR A WRIT OF HABEAS CORPUS**

**SAYLOR, J.**

This is a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255.

Petitioner Edward J. Mackenzie pleaded guilty on October 21, 2014, to RICO conspiracy in

violation of 18 U.S.C. § 1962(d), racketeering in violation of 18 U.S.C. § 1962(c), money

laundering conspiracy in violation of 18 U.S.C. § 1956(h) and 18 U.S.C. § 1956(a)(1)(B)(i), two

counts of mail fraud conspiracy in violation of 18 U.S.C. § 1349, and eight counts of wire fraud

in violation of 18 U.S.C. § 1343.  He was sentenced to a 144-month term of incarceration

followed by a three-year term of supervised release.

Petitioner has filed a motion to vacate, set aside, or correct his sentence pursuant to 28

U.S.C. § 2255, alleging ineffective assistance of counsel in violation of the Sixth Amendment

due to trial counsel's alleged (1) failure to fully investigate and object to the government's use of

certain intercepted jail communications; (2) failure to object to "double-counting" sentence

enhancements; (3) failure to object to enhancements for charges not present in the indictment;

and (4) failure to hold the government to its discovery obligations.  Petitioner also alleges due-process violations stemming from misapplied sentencing guidelines in light of inflation adjustments, an insufficient indictment that failed to identify a financial institution victimized by him, and the Court's reliance on a vulnerable victim as a factor in sentencing.  For the reasons set forth below, the motion will be denied.

## I.     Background

### A.     Factual Background

Because the conviction resulted from a guilty plea, the following facts are taken largely from the March 6, 2015 sentencing hearing and the Presentence Investigation Report ("PSR"), unless otherwise noted.  *See United States v. Connell*, 960 F.2d 191, 192-93 (1st Cir. 1992); *United States v. Garcia,* 954 F.2d 12, 14 (1st Cir. 1992).

The Boston Society of the New Jerusalem ("BSNJ") is a charitable religious non-profit corporation originally chartered as one of the first Swedenborgian churches in Massachusetts. (PSR at ¶ 8).  Beginning in late 2002 to early 2003, Mackenzie and his initial co-conspirator Thomas Kennedy conspired to take over the BSNJ.  (*Id.* at ¶ 10).  Mackenzie gained voting control of the church by recruiting friends and family and creating phony membership applications for "members" who were unaware they "applied" for membership.  (*Id.* at ¶ 11).  In May 2003, Mackenzie succeeded in taking over the BSNJ and began using his powers to enrich himself and other co-conspirators.  (*Id.* at ¶¶ 12-15).

Over the next few years, Mackenzie abused his power in a series of improper transactions.  For example, in 2004 he invested $200,000 of BSNJ money in a Florida corporation, Space Propulsion Systems, in exchange for an $80,000 kickback to himself and Kennedy.  (*Id.* at ¶ 16).  By 2014, shares of Space Propulsion Systems were worthless, causing

the church to lose virtually its entire investment. (*Id.* at ¶ 18). Mackenzie also accepted bribes totaling more than $20,000 to direct more than $108,000 in church scholarship money to an acquaintance. (*Id.* at ¶¶ 20-22). He engaged in a litany of other fraudulent transactions that cost the church, at minimum, hundreds of thousands of dollars.

On May 22, 2013, Mackenzie was arrested. (*Id.* at ¶ 1). On October 21, 2013, he pleaded guilty to thirteen counts of a fourteen-count indictment. (*Id.* at ¶ 2). Count One charged Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d); Count Two charged Racketeering in violation of 18 U.S.C. § 1962(c); Counts Three and Four charged Mail Fraud Conspiracy in violation of 18 U.S.C. § 1349; Count Five charged Money Laundering Conspiracy in violation of 18 U.S.C. § 1956(h) and 18 U.S.C. § 1956(a)(1)(B)(i); and Counts Seven through Fourteen charged Wire Fraud in violation of 18 U.S.C. § 1343. (*Id.*). Pursuant to a written plea agreement the government agreed to dismiss Count Six (Extortion). (*Id.* at ¶ 3).

### 1. PSR Objections

Prior to sentencing, Probation produced a presentence report to which Mackenzie's counsel made four objections. (*Id.* at 46).[1] First, counsel objected to the inclusion of paragraphs 79-86 of the PSR, which detailed Mackenzie's non-privileged communications to friends, acquaintances, and family while detained at the Wyatt Detention Facility. (*Id.* at 46). During those communications, Mackenzie encouraged others to lie in an attempt to facilitate his release from custody and to make modifications to character letters. (*Id.* at ¶ 79). For example, in a letter to his daughter dated May 30, 2014, Mackenzie wrote that her character letter was "awesome," but asked her to rewrite it and omit the fact that he "'hurt people' because the judge might not like that." (*Id.* at ¶ 85). He then proceeded to write an entire paragraph for his

---

[1] There were actually five objections, but one of the objections was grounded on a typographical error by Probation that it conceded to and corrected.

daughter to include in a letter to the Court about how caring he was. (*Id.*).

Mackenzie's counsel argued that because Probation concluded that the communications did not rise to the level of obstruction of justice, as defined in U.S.S.G. § 3C1.1, they were irrelevant to the presentence evaluation. (*Id.* at 46). At the sentencing hearing, the Court overruled the objection, finding that 18 U.S.C. § 3553(a) permits a near limitless scope to what a court may consider for purposes of sentencing, and that the communications were appropriately part of the record. (Sen. Tr. at 5).

Second, counsel objected to paragraphs 98-102 of the PSR, which created an overlap of multiple enhancements in the guidelines, leading to what he contended was an unfair or improper increase in the sentence range. (PSR at 46). Specifically, counsel objected that the increases applied pursuant to U.S.S.G. §§ 2B1.1(b)(10)(C), 2B1.1(b)(9)(A), 3B1.3, and 3B1.1(a) were cumulative because they encompassed the same behavior to which defendant pleaded guilty. (*Id.* at 46-47). For example, there was an overlap between a sophisticated-means enhancement and an adjustment for the role in the offense as the leader or organizer of criminal activity. (*Id.* at ¶¶ 98-102; Sen. Tr. at 5-6). Counsel argued that the enhancement provided in § 2B1.1(b)(10)(C)— the sophisticated means enhancement—was the appropriate enhancement. (PSR at 46). The Court overruled the objection, concluding that Probation's calculation was appropriate. (Sen. Tr. at 5-6).

Third, counsel objected to paragraphs 109-118 of the PSR, which included examples of behavior not part of the relevant offense that Probation nevertheless believed ought to be considered during sentencing. (PSR at 47). Probation contended that these were non-privileged conversations during Mackenzie's detention where he sought money and asked individuals to lie on his behalf. (*Id.* at ¶ 109). For example, Mackenzie asked his daughters to lie to the Quincy

District Court by telling the court that he was having gallbladder surgery and could not make an appearance, rather than admit he was in federal detention. (*Id.* at ¶¶ 114-15). Counsel contended that these were partial excerpts taken out of context and could be misleading. (*Id.* at 47). This Court overruled the objection, finding that the information was properly included. (Sen. Tr. at 6-7).

Fourth, counsel objected to paragraph 124, a one-point application in Mackenzie's criminal history calculation. (PSR at 47). Counsel argued that Mackenzie was charged in 1990 with conspiracy to distribute cocaine and use of a communications facility to further a drug transaction, pleaded guilty in 1992, and served a term of probation. He contended that pursuant to U.S.S.G. § 4A1.2(e)(3), that sentence was outside of the 10-year time frame of applicable prior offenses and should have been excluded from defendant's criminal history calculation. (*Id.*). At the sentencing hearing, the court overruled the objection, finding that Probation's calculation was correct. (Sen. Tr. at 8).

## 2.    Sentencing Hearing

The sentencing hearing was held on March 6, 2015. The government requested a 144-month sentence, which was an upward departure from the guidelines. It argued that Mackenzie had lived a life of crime and would not otherwise be adequately deterred. (*See* Sen. Tr. at 9). It also noted that the crimes in this case took place over a decade, and that the victim was a church. (*Id.* at 10). And it argued that the crime was a sophisticated white-collar offense whose success relied in large part upon Mackenzie's reputation for violence. (*Id.*).

The government also described Mackenzie's long-standing history of criminal activity,

much of which came from his autobiography. (*Id.* at 11-12).[2] For example, the government mentioned how Mackenzie poured scalding hot coffee on a victim and then threatened him with a beating if he testified against him. (*Id.* at 12). That case was apparently dismissed. (*Id.*). The government also described how Mackenzie swindled hundreds of thousands of dollars from an unsuspecting elderly woman and received no jail time. (*Id.*). It also mentioned that he threatened to chain his ex-wife's ankles to a cinder block and throw her off a bridge if she testified against him and how that case was also dismissed. (*Id.* at 13).

### B.  Procedural Background

Mackenzie was sentenced to a 144-month term of imprisonment followed by a three-year term of supervised release. (*Id.* at 24). The guideline range was 97 to 121 months, and therefore the sentence constituted an upward departure from the guideline range. (PSR at 49). The Court justified the departure by virtue of defendant's criminal history and the nature of the offense. (Judgment at 12). Specifically, the Court observed,

> Defendant is a career criminal with a lengthy history of fraud and violence. His criminal history category does not begin to capture the true nature of his criminal history. His criminal conduct in this case was elaborate and calculating and took place over many years. The victim was a church, and indirectly victimized the elderly members of the church. He continued to engage (or attempt to engage) in criminal and/or manipulative and inappropriate conduct after his detention in this case, including involving his own children in such conduct. There are virtually no mitigating factors to counterbalance the many aggravating factors.

(*Id.*).

On March 12, 2015, Mackenzie appealed his sentence *pro se*, challenging his indictment, his guilty plea, and the application of the U.S.S.G. to the facts of his case. *See* Judgment of the U.S. Court of Appeals for the First Circuit, No. 15-1339 at 1. The First Circuit affirmed the

---

[2] The government included in its arguments excerpts from Mackenzie's autobiography:  Edward J. Mackenzie, Jr. & Phyllis Karas, STREET SOLDIER: MY LIFE AS AN ENFORCER FOR WHITEY BULGER AND THE BOSTON IRISH MOB (Steerforth, 2004).

decision, finding "Mackenzie's autobiographical account of his violent criminal past, his prior frauds, and his disreputable behavior while in custody are all highly relevant to the choice of sentence, and entitled to great weight." *Id.* Mackenzie then petitioned for a writ of certiorari to the Supreme Court, which denied the petition. (Docket No. 139, 140).

On May 15, 2017, Mackenzie filed the present motion to vacate under 28 U.S.C. § 2255, claiming ineffective assistance of counsel and constitutional due process violations on numerous grounds.[3]

## II.    Analysis

Because petitioner appears *pro se*, his pleadings must be construed more leniently than those drafted by an attorney. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, a petitioner's *pro se* status does not excuse him from complying with procedural and substantive requirements of the law. *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).

### A.    28 U.S.C. § 2255

Under 28 U.S.C. § 2255, a petitioner may file a motion to vacate, set aside, or correct a sentence. The relief requested may be granted on the grounds that the "petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). Petitioner bears the burden of establishing that he is entitled to relief under § 2255. *Id.*

#### 1.    Ineffective Assistance of Counsel

Petitioner contends that his counsel rendered ineffective assistance in violation of the Sixth Amendment on four basic grounds: (1) failing to fully investigate and object to the

---

[3] On June 15, 2017, Mackenzie filed a Motion for Leave to Supplement his § 2255 petition, which was granted.

government's use of intercepted jail communications; (2) failing to object to "double-counting" and sentencing enhancements; (3) failing to object to enhancements for charges not present in the indictment; and (4) failing to hold the government to its discovery obligations. Within these four broad grounds for relief are various sub-claims, which will be addressed in turn.

In order to establish a claim of ineffective assistance of counsel, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *United States v. De La Cruz*, 514 F.3d 121, 140 (1st Cir. 2008) (internal citations omitted). The Constitution does not guarantee to any defendant a perfect defense or a successful defense. *See Moreno-Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012). Rather, "the performance standard is that of reasonably effective assistance under the circumstances then obtaining." *United States v. Natanel*, 938 F.2d 302, 309-10 (1st Cir. 1991) (citing *Strickland*, 466 U.S. at 687-88).

There are two elements to an ineffective assistance of counsel claim: (1) deficient performance by counsel and (2) resulting prejudice. *Peralta v. United States*, 597 F.3d 74, 79 (1st Cir. 2010) (citing *Strickland*, 466 U.S. at 687). An insufficient showing on either prong will defeat an ineffective assistance of counsel claim. *See e.g. Malone v. Clarke*, 536 F.3d 54, 64 (1st Cir. 2008). "There is no doubt that the cited two-part test also applies to representation outside of the trial setting, which would include sentencing and appeal." *Feliciano-Rivera v. United States*, 115 F. Supp. 3d 243, 249 (D.P.R. 2015) (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Bonneau v. United States*, 961 F.2d 17, 20-22 (1st Cir. 1992)).

To show deficient performance, a petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. Counsel's performance is to be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). That evaluation must be highly deferential. *Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

To show resulting prejudice, a petitioner must show that, but for counsel's error, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is 'one sufficient to undermine confidence in the outcome.'" *Dugas v. Coplan*, 506 F.3d 1, 9 (1st Cir. 2007) (citations omitted). "An error by counsel, even if professionally unreasonable, does not warrant setting aside judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

There is no reason for a court deciding an ineffective assistance claim to address both components of the inquiry if the petitioner makes an insufficient showing on one. *Id.* at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* In addition, "when, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's [criminal proceedings], the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

### a.      Ground 1—Intercepted Communications

Petitioner first contends that his attorney rendered ineffective assistance because he

allegedly failed to investigate and object to the government's use of his intercepted communications during the sentencing phase. Specifically, petitioner contends that while detained at the Wyatt facility, employees intercepted his calls and letters to friends, family, and acquaintances. He further contends that Wyatt is a private facility and was never granted the authority to intercept his communications without a warrant. He alleges that the use of his calls and letters by the government was therefore unlawful and his attorney's failure to investigate and object to the interceptions amounted to prejudicial error.

### (1)    **Failure to Investigate**

Petitioner alleges that his counsel failed to investigate the use of the intercepted letters and telephone calls. However, petitioner never actually describes which communications were at issue or what he thinks further investigation would have revealed. (*See* Pet'r Aff. at ¶¶ 1, 6, 43). Nor does he proffer an explanation as to how an adequate investigation would have revealed new information that would have a reasonable probability of affecting the sentence. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). Because petitioner failed to even sketch out an argument, the failure to investigate argument will be rejected.

### (2)    **Failure to Object**

Petitioner next alleges that his attorney's failure to object to the government's use of the intercepted jail communications amounted to objectively unreasonable conduct resulting in prejudice. For the reasons set forth below, that argument is without merit.

First, petitioner's attorney did, in fact, object to the government's use of the intercepted communications. (*See* Sen. Tr. at 6). Specifically, counsel objected to the inclusion of those

conversations in the record because they were "partial snippets of conversations" and that they could "very easily be taken out of context, misconstrued, and lead to improper conclusions." (*Id.*).

Petitioner essentially argues that the government's use of the communications was unlawful because the government failed to secure a warrant beforehand. A complaint that counsel failed to object in the specific manner that the client desired does not defeat the strong presumption that counsel's conduct "falls within the wide range of reasonable professional assistance," and that the way counsel objected "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. Counsel is given tremendous deference concerning trial strategy. *Id.* ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").

There is no reason to believe that counsel here acted in a way that deprived petitioner of a fair trial. *See id.* at 686 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."). Moreover, there is no reason to believe that an objection would have been sustained. *See Felton v. Lincoln*, 429 F. Supp. 2d 226, 243 (D. Mass. 2006) ("It is equally well established that prison officials may inspect an inmate's [communications], and impose restrictions in furtherance of 'one or more of the substantial governmental interests of security, order, and rehabilitation.'" (quoting *Stow v. Grimaldi*, 993 F.2d 1002, 1004 (1st Cir. 1993)). Petitioner has therefore failed to show that his counsel's decision was objectively unreasonable. *See Strickland*, 466 U.S. at 698-99.

Petitioner also fails to demonstrate any reasonable probability that his sentence would have changed had his attorney objected in the manner requested. There is ample evidence in the record that the intercepted communications were merely cumulative. The Court specifically recounted its justification for the sentence, stating the "defendant is a career criminal with a lengthy history of fraud and violence . . . . His criminal conduct in this case was elaborate and calculating and took place over many years . . . ." (Judgment at 12). The Court then described the victim's vulnerability and how there were virtually no mitigating factors and a panoply of aggravating factors. (*Id.*). Although the Court did refer to the petitioner's conduct while in detention as a justification for the sentence, it is pure speculation to say there was a reasonable probability that the sentence would have been different had it not considered the intercepted communications. *See Strickland*, 466 U.S. at 699-700 (finding lack of prejudice where sentencing profile would have been barely altered in the face of overwhelming aggravating circumstances and virtually no mitigating circumstances). Petitioner has therefore failed to establish prejudice.

In summary, petitioner has failed to establish that counsel's handling of his intercepted communications constituted ineffective assistance.

> **b.**   **Ground 2—Failure to Object to Alleged "Double Counting," Alleged Manipulation of a Previously Dismissed Larceny Charge, and Alleged Conflict of Interest**

Petitioner next contends that his counsel provided ineffective assistance by (1) failing to object to the alleged "double counting" of certain guideline enhancements, (2) failing to object to the government's use of a previously dismissed larceny charge when requesting an upward departure from the guidelines, and (3) failing to attempt to terminate the representation because counsel had been the Chief Trial Counsel of Suffolk County when petitioner was convicted of a

prior state charge, creating a conflict of interest in this case.  For the following reasons, those claims also fail.

### (1)    Alleged "Double-Counting"

First, petitioner contends that his attorney failed to object to the alleged "double-counting" of several sentencing guideline enhancements.  In essence, petitioner contends that it was improper to use the same underlying conduct to justify multiple enhancements and that his attorney's failure to object to that "double counting" amounted to prejudicial error.  That contention fails, among other reasons, because petitioner's counsel did in fact object to what petitioner considered to be duplicative enhancements.  (Sen. Tr. 5).  Specifically, petitioner's counsel objected that "the multiple enhancements all encompass the same behavior by Mr. Mackenzie," and that he "consider[ed] it to be piling on."  (*Id.*).  The Court overruled the objection, noting that there is often substantial overlap within guideline calculations and that there was an arguable overlap here where there is "a sophisticated means enhancement and an abuse of [a] position of trust."  (*Id.* at 6).  Because petitioner's counsel raised the objection, that claim is without merit.

### (2)    Previously Dismissed Larceny Charge

Petitioner next contends that his counsel failed to object to the inclusion of a one-point enhancement for a dismissed larceny charge from 1993.  That claim also fails because petitioner cannot establish that his attorney's failure to object resulted in prejudice.

On January 26, 1993, petitioner appeared at the South Boston District Court for arraignment and was charged with larceny of property over $250.  (PSR at ¶ 125).  On October 8, 1993, sufficient facts were found as to the charge of larceny, and a continuance without a finding was entered along with restitution in the amount of $12,400.  (*Id.*).  On November 3,

1993, the case was dismissed. (*Id.*).

The sentencing guidelines require a court to count certain prior offenses when calculating a defendant's criminal history category. *See* U.S.S.G. §§ 4A1.1, 4A1.2; *United States v. Dubovsky*, 279 F.3d 5, 7 (1st Cir. 2002); *United States v. Morillo*, 178 F.3d 18, 20 (1st Cir. 1999). Generally speaking, diversionary dispositions, including deferred prosecutions, are not counted for criminal history purposes. *See* U.S.S.G. § 4A1.2(f); *Dubovsky*, 279 F.3d at 7*; Morillo*, 178 F.3d at 20. However, "[a] diversionary disposition resulting from a finding or admission of guilt, or a plea of *nolo contendere*, in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered." U.S.S.G. § 4A1.2(f).

When a Massachusetts court enters a continuance without a finding, that disposition is considered a prior offense for the purposes for § 4A1.1. *See Dubovsky*, 279 F.3d at 7 (citing *Morillo*, 178 F.3d at 20). The rule "reflects a policy that defendants who receive the benefit of a rehabilitative sentence and continue to commit crimes should not be treated with further leniency." U.S.S.G. § 4A1.2 comment n.9; *Morillo*, 178 F.3d at 20.

Petitioner's 1993 larceny charge resulted in a continuance without a finding. Thus, the one-point sentencing enhancement was appropriate. *See id.; Morillo*, 178 F.3d at 20.

Furthermore, petitioner again fails to demonstrate a reasonable probability that the outcome of the sentencing decision would have changed had counsel objected to the one-point enhancement for the 1993 larceny charge. *See Jackson v. United States*, 2015 WL 9703718, at *4 (N.D. Tex. Nov. 24, 2015) (counsel not ineffective for failing to raise a frivolous objection) (citing *United States v. Preston,* 209 F.3d 783, 785 (5th Cir. 2000) (same)). Because it is clear that the one-point enhancement was properly included in the PSR, the objection would have been overruled had it been raised. *See* U.S.S.G. § 4A1.2(f); *Dubovsky*, 279 F.3d at 7. There is no

reasonable probability that his sentence would have changed had counsel objected. *See Strickland*, 466 U.S. at 694-95.

### (3)    Alleged Conflict of Interest

Petitioner next contends that his Sixth Amendment rights were violated because his attorney had been Chief Trial Counsel for Suffolk County when he was convicted of a prior state crime. In fact, petitioner alleges that "counsel was the actual DA who prosecuted [him] for his prior convictions." (Pet'r Mem. at ¶ 2). For the following reasons, there was no constitutional violation.

A defendant's Sixth Amendment right to effective assistance of counsel includes the right to be represented by conflict-free counsel, and a claim of actual conflict of interest is cognizable under a § 2255 motion. *See Reyes-Vejerano v. United States*, 276 F.3d 94, 97 (1st Cir. 2002); *see also Cuyler v. Sullivan*, 466 U.S. 335, 348-50 (1980). "A defendant . . . must demonstrate in his § 2255 petition that an actual conflict of interest adversely affected the adequacy of his representation." *Reyes-Vejerano*, 276 F.3d at 97 (citing *Cuyler*, 466 U.S. at 348); *see LoCascio v. United States*, 395 F.3d 51, 56 (2d Cir. 2005).

To prove the existence of an actual conflict, a defendant must show that (1) the attorney could have pursued a plausible alternative defense strategy and (2) the alternative strategy was inherently in conflict with or not pursued due to the attorney's other loyalties or interests. *Reyes-Vejerano*, 276 F.3d at 97 (quoting *Familia-Consoro v. United States*, 160 F.3d 761, 764 (1st Cir. 1998)). To show that a conflict adversely affected his counsel's performance, petitioner must establish an "actual lapse in representation" that resulted from the conflict. *LoCascio*, 395 F.3d at 56 (quoting *Cuyler*, 446 U.S. at 349). "But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim

of ineffective assistance."  *Cuyler*, 446 U.S. at 350.

Petitioner neither identifies an alternative plausible defense strategy nor describes how such an alternative strategy was inherently in conflict with or not pursued due to his attorney's other loyalties or interests.  He merely contends—in various formulations—that he is entitled to relief under § 2255 because "counsel was the actual DA who prosecuted [him] for his prior convictions which he now stands to refute against him . . . ."  (Pet'r Mem. at ¶ 2; *see* Pet'r Mem. at ¶¶ 44, 63).  At best, petitioner makes a generalized assertion that there was an inherent conflict in this case because his counsel was once adverse to him.  He makes no attempt to identify any prejudice at all, much less any plausible alternative tactics counsel might have employed. Moreover, petitioner never identifies what other competing interests his counsel may have had. He has therefore failed to establish a plausible claim of conflict.  *See Cuyler* 466 U.S. at 349 (stating that the mere possibility of conflict is insufficient to impugn a criminal conviction).[4]

### c.     Failure to Object to Enhancements Not in the Indictment

Petitioner next contends that he received ineffective assistance because counsel "fail[ed] to object to enhancements for charges not presented in [the] indictment that were not sentencing factors but core elements of a crime and were not found proved beyond a reasonable doubt." (Pet'r Mem. ¶ 66).  It is difficult to understand the nature of this claim, because petitioner does not expound on that vague assertion.[5]  To the extent that petitioner is making a claim based on

---

[4] Although petitioner, through his various other claims of ineffective assistance, has purported to identify alternative strategies that were not pursued, those strategies were not plausible.  Even if they were plausible, nowhere does petitioner contend that the alternatives were not taken *because of* counsel's awareness of a conflict. *See Reyes-Vejerano*, 276 F.3d at 99 ("[T]he defendant must show some causal relationship between the lawyer's awareness of the investigation and the alleged deficiency in representation").

[5] Petitioner contends that "based on wrongly deemed 'sentencing factors' point manipulations [sic] [his] sentence enhancements are not sentencing factors but core 'elements of a crime' and must be first presented in [the] indictment . . . ."  (Pet'r Mem. ¶ 48(3)).

*Apprendi v. New Jersey*, 530 U.S. 466 (2000), the claim fails.  To the extent petitioner claims that his counsel failed to object to the government discussing, during sentencing, prior actions—which were undisputedly committed by the petitioner—for which he was never convicted, his claim still fails.[6]

Petitioner contends that this Court's upward departure from the sentencing guidelines entailed improper fact-finding.  In support of his argument, petitioner relies on *Apprendi*, which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Id.* at 490; *see Alleyne v. United States*, 133 S. Ct. 2151, 2168 (2013).  In *Apprendi*, the Supreme Court held that any fact that increases the penalty for a crime beyond the statutory maximum amounts to an "element" that must be proved beyond a reasonable doubt, as opposed to a "sentencing factor" which is used to fine-tune sentences within statutorily imposed ranges.  *Apprendi*, 530 U.S. at 490 (finding New Jersey's sentencing enhancement that resulted in a sentence exceeding the statutory maximum impermissibly turned a second-degree offense into a first-degree offense).

The facts of this case do not fall within the scope of *Apprendi*.  Petitioner was sentenced to a 144-month term of imprisonment, a 23-month upward variance from the 97-121 month guideline range.  The maximum penalty for each of the counts to which petitioner pleaded guilty

---

[6] Even if petitioner contends that his attorney should have objected to the inclusion in the PSR of prior charges as to which he was not found guilty, his claim still fails.  In the PSR, probation included all of petitioner's criminal history.  (PSR ¶¶ 119-159).  His record reflects a series of dismissals and convictions.  (*Id.*).  Pursuant to 18 U.S.C. § 3553(a), all prior criminal history is relevant in sentencing; thus an objection would not have succeeded.  Counsel's decision not to pursue "futile tactics" will not be considered deficient performance.  *Vieux v. Pepe*, 184 F.3d 59, 64 (1st Cir. 1999); *see also Acha v. United States*, 910 F.2d 28, 32 (1st Cir. 1990) (stating that failure to raise meritless claims is not deficient performance).  Because it is not unreasonable to refrain from making a baseless objection, petitioner's claim fails.  *See Smoak v. United States*, 12 F. Supp. 3d 254, 273 (D. Mass. 2014) (finding failure to object claim frivolous, noting, "[t]here can be no objection absent any wrongdoing").  Moreover, petitioner's attorney did object to the inclusion of at least one prior offense, but it was overruled by the Court.  (Sen. Tr. 7).

was 20 years.  (PSR at 49).  This was not a case where the Court imposed a sentence beyond the statutory maximum, or where petitioner was exposed to a higher maximum based on improper fact-finding.

      **d.**      **Ground 4— Alleged Failure to Hold Government to Discovery Obligations**

Petitioner next contends that his counsel failed to hold the government to its "automatic obligation to hand over all core exculpatory [and] impeachment material evidence [sic] over to the accused . . . within 14 days of . . . arraignment."  (Pet'r Mem. ¶ 83).  He appears to be grounding his argument on both a claim for ineffective assistance of counsel and violation of his Fifth Amendment Due Process rights under *Brady v. Maryland*, 373 U.S. 83, 88 (1963).  Either way, petitioner does not explain how the alleged attorney's or the government's failure adversely prejudiced him.

Under *Brady,* "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."  373 U.S. at 87.  To demonstrate that exculpatory evidence is material, appellants must show "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *DeCologero v. United States*, 802 F.3d 155, 161 (1st Cir. 2015) (citing *Kyles v. Whitley,* 514 U.S. 419, 433 (1995)).  A reasonable probability is one sufficient to undermine confidence in the outcome.  *Dugas*, 506 F.3d at 9.  The prejudice standard under a *Brady* claim is the same as a claim for ineffective assistance of counsel, and both claims can be addressed at the same time.  *See DeCologero*, 802 F.3d at 161-62 (discussing the prejudice standard under a *Brady* claim, noting, "[A]ppellants must show 'a reasonable probability that . . . the result of the proceeding would have been different.'" (citations omitted)).

In broad strokes, petitioner contends that the government failed to hand over various

documents.[7]  Nowhere, however, does Mackenzie explain what he found or expects to find in the alleged withheld information, or whether such information was or would be exculpatory or how it would be otherwise useful.  Again, petitioner cannot force the Court to concoct arguments on his behalf.  *See Zannino*, 895 F.2d at 17.  Because he fails to explain what exculpatory or impeachment information was or might be hidden within the allegedly withheld documentation, petitioner has not met the "reasonable probability" requirement.  *See DeCologero*, 802 F.3d at 161 (denying relief where petitioner failed to demonstrate that withheld reports would have led to discovery of admissible exculpatory evidence).

### 2.        Alleged Misapplication of Sentencing Guidelines

Petitioner next contends his sentence should be overturned because there was a change in the sentencing guidelines following his sentencing but pending his appeal.  Specifically, he contends that while his sentence was pending appeal, amendments 791 and 792 to the sentencing guidelines were promulgated, and those amendments should be applied retroactively to lower the guideline range for his fraud charges by two points.

The Supreme Court has made clear that the plain error standard is not applicable to section 2255 motions.  *See United States v. Frady*, 456 U.S. 152, 166 (1982).  The Supreme Court has found the proper standard of review for section 2255 motions to be the "cause and actual prejudice" standard enunciated in *Davis v. United States*, 411 U.S. 233 (1973) and confirmed and extended in *Francis v. Henderson*, 425 U.S. 536 (1976) and *Wainwright v. Sykes*, 433 U.S. 72 (1977).  *Frady*, 456 U.S. at 167 ("Under [the cause and actual prejudice standard], to obtain collateral relief based on . . . errors to which no contemporaneous objection was made, a

---

[7] "[T]he Dep't of Justice's component's [sic] FBI's FD 302 [and] FD 209's with in-serts [sic], DEA 6's [and] DEA 7's, ATF reports, Massachusetts State Police investigative reports [and] Boston Police's Organized Crime Investigative Unit, FBI's [and] U.S. Attorney's Office's [sic] Bulger Strike Force Unit[,] among other things."  (Pet'r Mem. at ¶ 85).

convicted defendant must show both (1) 'cause' excusing his . . . procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains.").

"As a general rule, a sentencing court should use the version of the guidelines in effect at the time of the disposition hearing," absent *ex post facto* concerns. *United States* v. *Mehanna*, 735 F.3d 32, 67 (1st Cir. 2013) (*citing United States v. Harotunian*, 920 F.2d 1040, 1041-42 (1st Cir. 1990)). However, the guidelines provide that "[i]n a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual . . . the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2)." U.S.S.G. § 1B1.10(a) (2017). A motion to reduce a sentence by a defendant who was sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered applies only to guideline amendments that operate retroactively, as listed in the policy statement. *United States v. Pardue*, 36 F.3d 429, 430 (5th Cir. 1994).

Amendments 791 and 792 were not given retroactive application under the § 1B1.10 policy statement. *See* U.S.S.G. § 1B1.10(d). Petitioner was therefore not entitled to a review of his sentence under § 3582. *See United States v. Torres-Aquino*, 334 F.3d 939 (10th Cir. 2003) (denying § 1B1.10 relief where underlying amendment was not enumerated as retroactively applicable); *Fox v. United States*, 2017 WL 2543889, at *2 (D. Me. June 12, 2017) ("Because Amendment 791 is not listed in U.S.S.G. § 1B1.10(d), sentencing reductions under Amendment 791 are not authorized. In other words, Amendment 791 is not retroactive to a sentence imposed before the November 1, 2015, effective date of the amendment."); *United States v. Swan*, 2016 WL 471296 (D. Me. Feb. 8, 2016).

Nonetheless, petitioner contends that the court should apply Amendments 791 and 792

retroactively on the ground that the amendments were clarifications rather than substantive changes. "The general rule is that revisionary amendments to the guidelines—that is, amendments which change the law in a substantive way—cannot be applied retroactively by a sentencing court to a defendant's disadvantage." *David v. United States*, 134 F.3d 470, 476 (1st Cir. 1998) (citing *United States v. Rostoff,* 53 F.3d 398, 406 (1st Cir. 1995)). "By contrast, clarifying amendments—that is, amendments which do not change the law, but which merely elucidate its intended meaning—can be freely used by sentencing (or sentence-reviewing) courts as interpretive aids, prospectively or retrospectively." *David*, 134 F.3d at 476 (citing *Isabel v. United States,* 980 F.2d 60, 62 (1st Cir. 1992)). To determine whether a guideline amendment is revisionary or clarifying, this Court must "accord substantial respect" to the Sentencing Commission's view. *David*, 134 F.3d at 476 (citing *Isabel,* 980 F.2d at 62).

It is evident that the Commission intended the adjustment for inflation under Amendment 791 to be a substantive change, not a clarification. First, the Commission remarked that failing to account for inflation would result in increased penalties for offenders over time where the nominal loss amount remained constant.[8] Amendment 791 was a substantive change to maintain a consistent level of culpability going forward. *See Fox*, 2017 WL 2543889, at *1 n.2; U.S.S.G. § 2B1.1 (comments). Likewise, a correction for inflation does not change, demystify, or elucidate the intended meaning of the statute.

It is also evident that the Commission intended Amendment 792 to be a substantive change. The Commission explained that Amendment 792 was designed to "better account for harm to victims, individual culpability, and the offender's intent." Amendments to the

---

[8] "Due to inflationary changes, there has been a gradual decrease in the value of the dollar over time. As a result, monetary losses in current offenses reflect, to some degree, a lower degree of harm and culpability than did equivalent amounts when the monetary tables were established or last substantively amended." Amendments to the Sentencing Guidelines, at 12.

Sentencing Guidelines, at 24 (available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20150430_RF_Amendments.pdf).  The Commission was not elucidating the meaning of the guidelines.  Rather, the Commission recalibrated it following a multi-year study of the guidelines and extensive data collection and analysis relating to economic offenses and offenders.  *See id*; *cf. United States v. Havener*, 905 F.2d 3, 5 (1st Cir. 1990) (finding amendment "not clarification; it [was] change," where the Commission suggested an amendment was not intended to clarify the guidelines, but rather to "authorize" an acceptance of responsibility reduction in determining the offense level).  In short, petitioner fails to show that he is entitled to a review of his sentence in light of Amendments 791 and 792.

### 3. Alleged Insufficiency of the Indictment

Petitioner next contends that the indictment under which he was charged was "spoiled/tainted" because it failed to identify the "financial institution that was affected by his action," and therefore failed to give fair notice of the charges against him.  (Pet'r Mem. ¶ 48(1)).  To the extent petitioner intends to raise a federal due-process challenge to the validity of the indictment, his claim is without merit, because the indictment clearly complied with the "basic due process requirements [of] notice of the time, place, and essential elements of the crime."  *See Bonilla v. Lee*, 35 F. Supp. 3d 551, 579 (S.D.N.Y. 2014).[9]

Under Rule 7, an indictment must provide "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  The

---

[9] Petitioner further claims his guilty plea was "knowingly, unintelligently, and involuntary based on the spoiled & tainted indictment."  (Pet'r Mem. at ¶ 48(2)).  Because this claim is entirely dependent on the inadequate indictment claim, it also fails.  Furthermore, at his Rule 11 plea hearing on October 21, 2014, petitioner did not disagree with the Government's description of the facts before pleading guilty.  (Plea Tr. at 35).

indictment must be specific enough to notify the defendant of the nature of the accusation against him and to apprise the court of the facts alleged. *See Russell v. United States,* 369 U.S. 749, 765 (1962). Although there is no magic formula, "'[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself,' as long as those words set forth all the elements of the offense without any uncertainty or ambiguity." *United States v. Serino,* 835 F.2d 924, 929 (1st Cir. 1987) (quoting *Hamling v. United States,* 418 U.S. 87, 117 (1974)).

The indictment charged petitioner with fourteen counts: racketeering conspiracy in violation of 18 U.S.C. § 1962(d), racketeering in violation of 18 U.S.C. § 1962(c), conspiring to launder money in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(1)(B)(i), extortion in violation of 18 U.S.C. § 1951, two counts of conspiring to commit mail fraud in violation of 18 U.S.C. § 1349, and eight counts of wire fraud in violation of 18 U.S.C. § 1343.[10]

In each count, the indictment detailed the duration of the crime and where it occurred, and set forth the essential elements from the relevant statute. For example, the racketeering conspiracy portion detailed that the scheme began around September 2002 and "continue[d] through at least in or about December 2012 within the District of Massachusetts and elsewhere." (Indictment at ¶ 7). The indictment further detailed the essential elements of the crime: "defendant . . . did unlawfully and knowingly conspire, confederate and agree to violate [18 U.S.C. § 1962(c)], that is, to conduct and participate . . . in the conduct of the affairs of an enterprise through a pattern of racketeering activity." (*Id.* at ¶ 7). The indictment also developed the facts which gave rise to the charges. (*See id.* at ¶¶ 19-21 (space propulsion wire fraud), 22-24 (college tuition mail fraud), 25-27 (check stealing mail fraud), 28-29 (money laundering conspiracy), 30-39 (various commercial briberies), 40-41 (extortion), 42-44 (boiler replacement

---

[10] Petitioner pleaded guilty to all charges but extortion; that charge was subsequently dropped.

wire fraud), 45-46 (boiler replacement commercial bribery), 47-49 (booster pump wire fraud), 50-51 (booster pump commercial bribery), 52-54 (wire fraud), 55-56 (commercial bribery)).

Petitioner has not cited to any authority that supports his contention that he must have notice of the financial institution that was affected by his actions. The indictment is adequate because it "contains the elements of the offense charged and fairly informs [ ] defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling,* 418 U.S. at 117.[11]

### 4.  Vulnerable Victim and Loss Amount

Finally, petitioner contends that "[t]he District Court failed to identify the specific vulnerable victim and also failed to specifically explain how Mackenzie knew that a specific victim or victims were vulnerable, and did not make any specific factual findings upon which to base the loss amount." (Pet'r Mem. ¶ 48(4)). These claims are likewise without merit.

The "vulnerable victim" claim can be disposed of quickly. In this case, Probation did not make a victim related adjustment pursuant to U.S.S.G. § 3A1.1; thus it was unnecessary to identify a particular vulnerable victim. (*See* PSR at ¶ 100).[12]

Petitioner also incorrectly claims that the Court failed to base the loss amount on factual findings. The Court adopted the PSR without change. (Judgment at 10). The PSR detailed, for

---

[11] Even if the government were required to put petitioner on notice of the "financial institution" he harmed, it did so sufficiently. Paragraph 3 of the indictment sets out that the church, which was the victim of several of his crimes, is an enterprise engaged in interstate and foreign commerce. Paragraph 9 details the goal of his racketeering conspiracy: "[T]o become members of the enterprise and obtain power and influence within the enterprise so that [petitioner] and his co-conspirators could defraud the church of its considerable financial holdings . . . ." Similar descriptions of his crimes continue throughout the indictment. (*See* indictment at ¶¶ 11 ("Shortly after joining the church, Mackenzie . . . devised a plan to . . . defraud the church of its considerable financial holdings), 12 (Mackenzie and Kennedy devised a scheme to gain control of the church . . ."), 14 ("[O]nce in control, Mackenzie and his co-conspirators, in violation of their fiduciary obligations . . . began voting to provide themselves and their associates with substantial financial benefits . . . .").

[12] To the extent a vulnerable victim had to be identified, the Court during sentencing noted "[t]he victim here is a church. Most of the church governance consists of people who are elderly." (Sen. Tr. at 22).

each charge, the pecuniary loss suffered by each of petitioner's victims. The Court did not deviate from these findings and relied on its judgment and methods in coming to a restitution amount.

## III.     Conclusion

Accordingly, for the reasons set forth above, petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2255 is DENIED.

**So Ordered.**


                                                    /s/  F. Dennis Saylor
                                                    F. Dennis Saylor IV
Dated: November 16, 2017                             United States District Judge