

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EDWARD MACKENZIE )
            Petitioner, )
v. )          CRIMINAL NO. 13-cr-10149-FDS
)
UNITED STATES OF AMERICA )   October 11, 2019
            Respondent. )

**MOTION FOR COMPASSIONATE RELEASE PURSUANT TO §3582(c)(1)A**

Petitioner Edward Mackenzie hereby moves this Court, *pro se*, for compassionate release

pursuant to 18 U.S.C. §3582(c)(1)(A) based on the circumstances outlined below, or in the

alternative, release him to Home Confinement pursuant to the Family Reunification Program under

the First Step Act.

I.      **PRELIMINARY STATEMENT**

Abraham Lincoln once said, "I have always found that mercy bears richer fruits than strict

justice."

Petitioner is over the age of 60 and clearly meets all seven criteria of the First Step Act of

2018 (FSA) and the amended Elderly and Family Reunification for Certain Nonviolent Offenders

Pilot Program (hereinafter "Family Reunification Program").   Under the Family Reunification

Program, the Attorney General has the power to release any and all qualifying offenders directly

to Home Confinement.   Additionally, Congress has amended the rules for compassionate release

pursuant to §3582(c)(1)(A) so that the Courts have the power to review "extraordinary and

compelling" circumstances other than an inmate's terminal illness, and an inmate can seek

recourse to the courts after thirty days if the Warden of the prison has not responded to the inmate's

letter.   See attached as Exhibit One, Petitioner's letter to the Warden dated August 26, 2019 to

2

which there has been no response.  Therefore, this Court clearly has jurisdiction to adjudicate Petitioner's motion and grant the relief Petitioner seeks.

Petitioner clearly satisfies all seven criteria of the Family Reunification Program, and having Petitioner on Home Confinement would clearly save the American taxpayers money, which is what the FSA is all about.  Petitioner has seven children and four grandchildren and can live with his first wife and their grandchildren.  Two daughters of a different mother are living in a trailer park because their mother died and their father and previous provider is in prison.  There is no justifiable reason to keep Petitioner in prison and away from his family as he was grossly over-sentenced for the crime alleged (see Dkt. No. 170 requesting a Mitigating Role Adjustment pursuant to Sentencing Guidelines Amendment (SGA) 794 and resentencing), and the only other person to have done any time in this case is the former President of the Church on the Hill: Tom Kennedy, who was sentenced to only a year and a day instead of the twelve years (144 months) that Petitioner received.  This huge disparity in sentences supports compassionate release in and of itself. *See, e.g., United States v. Diaco*, 448 F.Supp. 978 (D.N.J. Feb. 8, 1978).

Petitioner has had a spotless record while incarcerated, and has shown that he is not a danger to society, nor is he likely to recidivate and this Court clearly has the power under §3582(c)(1)(A) to send Petitioner home to Hanover, Massachusetts to his first wife, daughters, and grandchildren.

## II.   LEGAL STANDARD

The First Step Act of 2018, which focuses on promoting rehabilitation and combating recidivism, amended the Elderly and Family Reunification for Certain Nonviolent Offenders Pilot Program ("Family Reunification Program") and 18 U.S.C. §3582(c)(1)(A). Pub. L. No. 226-391, §603, 132 Stat. 5194, 5238-40 (2018). Under the Family Reunification Program, the BOP has discretion to release eligible elderly offenders from Bureau facilities to home confinement. *Id.* at §60541(g)(1)(A)-(B).

In a section titled "Increasing the Use and Transparency of Compassionate Release," the First Step Act amended §3582(c)(1)(A) to allow courts to modify sentences not only upon motion of the Director of the BOP but also upon "motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." §603(b), 132 Stat. at 5239 (codified at 18 U.S.C. §3582(c)(1)(A) ). A court may now modify a defendant's sentence if it finds on either the BOP's or the defendant's motion that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* at 3582(c)(1)(A). *See United States v. Cantu,* 2019 WL 2498923 at *1 (S.D. Tex. June 17, 2019).

**III.  THIS COURT HAS AUTHORITY TO RESENTENCE PETITIONER TO TIME SERVED UNDER SECTION 3582(c)(1)(A) FOR THE EXTRAORDINARY AND COMPELLING REASONS PRESENTED HERE**

With the changes made to the compassionate release statute by the First Step Act, courts need not await a motion from the Director of BOP to resentence prisoners to time served under 18 U.S.C. §3582(c)(1)(A) for "extraordinary and compelling reasons," and the reasons that can justify resentencing need not involve only medical, elderly, or family circumstances.

**A. When Congress originally enacted §3582(c)(1)(A) in 1984, it intended for district courts to reduce sentences for prisoners on the basis of extraordinary and compelling reasons not limited to medical, family, or elderly circumstances**

Congress first enacted the modern form of the compassionate release statute contained in §3582(c)(1)(A) as part of the Comprehensive Crime Control Act of 1984. Section 3582(c)(1)(A) states that a district court can modify even a final "term of imprisonment" in four situations, the broadest of which is directly relevant here. A sentencing court can reduce a sentence if and whenever "extraordinary and compelling reasons warrant such a reduction." §3582(c)(1)(A). In 1984, Congress conditioned the reduction of sentences on the BOP Director filing an initial motion in the sentencing court; absent such a motion, sentencing courts had no authority to modify a prisoner's sentence for extraordinary and compelling reasons. *Id.*

While Congress never defined what constitutes an "extraordinary and compelling reason" for resentencing under §3582(c)(1)(A), the legislative history gives an indication of how Congress thought the statute should be employed by federal courts. One of Congress's initial goals in passing the Comprehensive Crime Control Act was to abolish the federal parole system and create a "completely restructured guidelines sentencing system." S. Rep No. 98-225, at 52, 53 n.74 (1983). Yet, recognizing that parole historically played a key role in responding to changed circumstances,

the Senate Committee stressed how some individual cases may still warrant **a second look** at

resentencing:

> The Committee believes that there may be unusual cases in which an eventual reduction in
> the length of a term of imprisonment is justified by changed circumstances. These would
> include cases of severe illness, cases in which **other extraordinary and compelling
> circumstances justify a reduction of an unusually long sentence,** and some cases in
> which the sentencing guidelines for the offense of which the defender was convicted have
> been later amended to provide a shorter term of imprisonment. *Id.* at 55-56 (emphasis
> added).

Rather than having the Parole Commission review every federal sentence focused only on an

offender's rehabilitation, Congress decided that §3582(c)(1)(A) could and would enable courts to

decide, in individual cases, if "there is a justification for reducing a term of imprisonment." *Id.* at

56.

Congress intended for the situations listed in §3582(c)(1)(A) to act as "safety valves for

modification of sentences," *id.* at 121, that enabled sentence reductions when justified by various

factors that previously could have been addressed through the (now abolished) parole system. This

particular safety valve would "assure the availability of specific review and reduction to a term of

imprisonment for 'extraordinary and compelling reasons' and [would allow courts] to respond to

changes in the guidelines." *Id.* Noting that this approach would keep "the sentencing power in the

judiciary where it belongs," rather than with a federal parole board, the statute permitted "later

review of sentences in particularly *compelling situations*." *Id.* (emphasis added).   Congress thus

intended to give federal sentencing courts an equitable power that would be employed on an

individualized basis to correct fundamentally unfair sentences. And there is no indication that

Congress limited the safety valve of §3582(c)(1)(A) to medical or elderly release; if extraordinary

and compelling circumstances were present, they could be used to "justify a reduction of an

unusually long sentence." S. Rep No. 98-225, at 55–56.

The Sentencing Commission also clarified that the extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. §1B1.13, application note 2. In other words, even if an "extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court, [that fact] does not preclude consideration for a [sentence] reduction." *Id*. Consistent with the text and legislative history of §3582(c)(1)(A), the Sentencing Commission concluded that reasons beyond medical, age, and family circumstances could qualify as "extraordinary or compelling reasons" for resentencing, and that the extraordinary or compelling reasons need not be based on changed circumstances occurring after the initial sentencing of the defendant.

**B. Through the First Step Act, Congress changed the process for compassionate release based on criticism of BOP's inadequate use of its authority, returning to the federal judiciary the authority to act on its own to reduce sentences for "extraordinary and compelling reasons."**

Prior to Congress passing the First Step Act, the process for compassionate release under § 3582(c)(1)(A) was as follows: the U.S. Sentencing Commission set the criteria for resentencing relief under §3582(c)(1)(A), and the only way a sentencing court could reduce a sentence was if the BOP Director initiated and filed a motion in the sentencing court. See PL 98-473 (HJRes 648), PL 98-473, 98 Stat 1837 (Oct. 12, 1984). If such a motion was filed, the sentencing court could then decide where "the reduction was justified by 'extraordinary and compelling reasons' and was consistent with applicable policy statements issued by the Sentencing Commission." *Id*. So even if a federal prisoner qualified under the Sentencing Commission's definition of extraordinary and compelling reasons, without the BOP Director's filing a motion, the sentencing court had no authority to reduce the sentence, and the prisoner was unable to secure a sentence

reduction. This process meant that, practically, the BOP Director both initiated the process and set the criteria for whatever federal prisoner's circumstances the Director decided to move upon.[1]

Leaving the BOP Director with ultimate authority for triggering and setting the criteria for sentence reductions under §3582(c)(1)(A) created several problems. The Office of the Inspector General found that the BOP failed: to provide adequate guidance to staff on the criteria for compassionate release, to set time lines for reviewing compassionate release requests, to create formal procedures for informing prisoners about compassionate release, and to generate a system for tracking compassionate release requests. See *FBOP Compassionate Release Program*, at i–iv. As a result of these problems, the OIG concluded that "BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." *Id.*; see generally Stephen R. Sady & Lynn Deffebach, *Second Look Resentencing Under 18 U.S.C. §3582(c) as an Example of Bureau of Prisons Policies That Result in Overincarceration*, 21 FED. SENT. RPTR. 167 (Feb. 2009). Congress heard those complaints. In late 2018, Congress passed the First Step Act, part of which transformed the process for compassionate release under §3582(c)(1)(A). See P.L. 115-391, 132 Stat. 5194, at §603 (Dec. 21, 2018). Section 603 of the First Step Act changed the process by which §3582(c)(1)(A) compassionate release occurs: instead of depending upon the BOP Director to determine an extraordinary circumstance and then move for release, a court can now resentence "upon motion

---

[1] The Department of Justice has recognized that, prior to the passage of the First Step Act, BOP (and not the Commission) functionally had final say on what constituted an "extraordinary and compelling reason" for a sentence reduction, because only BOP could bring a motion under the terms of §3582(c)(1)(A). See Dep't of Justice, Letter to U.S. Sentencing Commission Chairman Hinojosa (July 14, 2007) (noting that because Congress gave BOP the power to control which particular cases will be brought to a court's attention, "it would be senseless [for the Commission] to issue policy statements allowing the court to grant such motions on a broader basis than the responsible agency will seek them").

of the defendant," if the defendant has fully exhausted all administrative remedies, "or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." §3582(c)(1)(A).

Once the defendant who has properly exhausted files a motion, a court may, after considering the §3553(a) factors, resentence a defendant, if the court finds that extraordinary and compelling reasons warrant a reduction. *Id.* Any reduction of a sentence that a court orders must also be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The effect of these new changes is to allow federal judges the ability to move on a prisoner's compassionate release application even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. Congress made these changes in an effort to expand the use of compassionate release sentence reductions under §3582(c)(1)(A). Congress labeled these changes, "*Increasing* the Use and Transparency of Compassionate Release." 164 Cong. Rec. H10346, H10358 (2018) (emphasis added). Senator Cardin noted in the record that the First Step Act made several reforms to the federal prison system, including that "[t]he bill *expands compassionate release* under the Second Chance Act and expedites compassionate release applications." 164 Cong. R. 199, at S7774 (Dec. 18, 2018) (emphasis added). In the House, Representative Nadler noted that First Step included "a number of very positive changes, such as . . . *improving application of compassionate release*, and providing other measures to improve the welfare of Federal inmates."164 Cong. Rec. H10346-04, 164 Cong. Rec. H10346-04, H10362 (Dec. 20, 2018) (emphasis added).

Federal judges now have the power to order reductions of sentences even in the face of BOP resistance or delay in the processing of applications. The legislative history leading up to the enactment of the First Step Act establishes that Congress intended the judiciary not only to take

on the role that BOP once held under the pre- First Step Act compassionate release statute as the essential adjudicator of compassionate release requests, but also to grant sentence reductions on the full array of grounds reasonably encompassed by the "extraordinary and compelling" standard set forth in the applicable statute.

With the First Step Act, Congress decided that federal judges are no longer constrained or controlled by how the BOP Director sets its criteria for what constitutes extraordinary and compelling reasons for a sentence reduction. Consequently, those sections of the application notes requiring a BOP determination or motion are not binding on courts. *See Stinson v. United States*, 508 U.S. 36, 38 (1993) ("We decide that commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). Put differently, now that the First Step Act has recast the procedural requirements for a sentence reduction, even if a court finds there exists an extraordinary and compelling reason for a sentence reduction without the BOP Director's initial determination, then the sentence reduction is not inconsistent "with the applicable policy statements issued by the Sentencing Commission." §3582(c)(1)(A).

## IV.   PETITIONER HAS EXTRAORDINARY AND COMPELLING REASONS WHY HIS SENTENCE SHOULD BE REDUCED TO TIME SERVED

Very little guidance exists on what constitutes extraordinary and compelling reasons warranting a sentence reduction under U.S.S.G §1B1.13 cmt. n.1(D)-only the BOP was previously empowered to seek such relief, and it rarely did so, *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The statute "does [not] define—or place any limits on—what 'extraordinary and compelling reasons' might warrant such a reduction." *Crowe v. United States*, 430 F. App'x 484, 485 (6th Cir. 2011). Black's Law Dictionary, however, defines "extraordinary" as "[b]eyond what is usual, customary, regular, or common," Extraordinary, Black's Law Dictionary (10th ed. 2014), and extrapolating from its definition of "compelling need," a compelling reason is one "so great that irreparable harm or injustice would result if [the relief] is not [granted]," *see* Compelling Need, Black's Law Dictionary (10th ed. 2014).   Petitioner has properly exhausted his claim for a reduction of sentence under the compassionate release provision, and he presents this Court with extraordinary and compelling reasons for reducing his sentence to time served.

### A. Petitioner properly exhausted his request for a reduction of sentence under the compassionate release statute

Under the newly amended §3582(c)(1)(A), Petitioner has standing to bring this motion because more than 30 days elapsed between his reduction-in-sentence request to the warden and a response. The Court may thus:

> reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that-(i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. §3582(c)(1)(A). *Cantu* at *3.

11

Although Congress empowered the Commission to issue policy statements regarding the appropriate use of the sentence-modification provisions under §3582(c)(1)(A), §994(a)(2)(C), Congress may override the Commission's policy statements by statute. *See United States v. Colon*, 707 F.3d 1255, 1261 (11th Cir. 2013) ("Congress can override any guideline or policy statement by statute."); *United States v. Berberena*, 694 F.3d 514, 524-25 (3d Cir. 2012) ("Congress can ... pass a law overruling the Commission's [policy] determination at any time." (*quoting United States v. Horn*, 679 F.3d 397, 405-06 (6th Cir. 2012) (*quoting Mistretta v. United States*, 488 U.S. 361, 394 (1989)); *United States v. Anderson*, 686 F.3d 585, 591 (8th Cir. 2012) ("Congress ... can modify or override the Commission's policy statements."); *United States v. Fox*, 631 F.3d 1128, 1131 (9th Cir. 2011). ("Congress of course can override both Guidelines and policy statements by statute."). *See Cantu* at *3.

Petitioner filed a request for a reduction of sentence under the compassionate release statute with the Warden FMC Devens on August 26, 2019, and has not received a response now over 30 days later. See Exhibit One. Therefore, Petitioner may request that this Court reduce his sentence pursuant to §3582(c)(1)(A) (courts can reduce a sentence "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies). Congress has specifically used Sec 3582 as a congressional act of lenity. *See, e.g., Dillon v. United States*, 560 U.S. 817, 828 (2010) ("§3582(c)(2) represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines.").

### B. Petitioner is deserving of having his sentence reduced to time served

Petitioner is the "Bill Buckner" of the First Circuit. Despite being one of the best baseball players of all time and the National League Batting champion in 1980 with the Chicago Cubs (before he joined the Red Sox), Bill Buckner is remembered today as the first baseman for the Red

Sox that let a simple ground ball go through his legs so that the Mets could tie the game and go on to win the World Series of 1986. This is clearly unfair to Buckner's legacy, because he had more career hits than the venerable Ted Williams, the legendary Joe DiMaggio, and everyone's favorite Yankee Mickey Mantle; whose Rookie Card still sells for more than $20,000. Buckner was also only six hits shy of Lou Gehrig, but it is doubtful that anyone will call "Lewy Body Dementia" the "Bill Buckner disease", despite the fact that it took Buckner's life at the relatively young age of 69 this past May.

The point of this is that if a great baseball player like Bill Buckner can be branded for life with one mistake, by a single error made over 30 years ago, this Court must endeavor in the interests of justice not to do the same thing to Petitioner because of a mistake that he made in associating with the infamous Whitey Bulger over 30 years ago. As pointed out in Petitioner's Motion to be Resentenced (Dkt. 170), Bulger's right-hand man, Kevin Weeks, calls Petitioner a liar trying to sell books and that he was never involved with Bulger's Gang. Similarly, Phyllis Karas calls Petitioner a lively affable person who is loose with the truth, but a very nice person to be around.

On the other hand, Ms. Karas suggests in her interview that Kevin Weeks actually killed several people but only served five years of a ten year sentence; so it is absurd for Petitioner to have received a 12 year sentence. This sentence is literally 12 times greater than the real fraudster Tom Kennedy who only received a year and a day, and double the time Kevin Weeks served, and yet Petitioner killed no one and certainly did not steal any money from the alleged "RICO Enterprise" fka the Church on the Hill. For a RICO conspiracy, it is extraordinary that no one else was indicted from the Church and that Agent Krista Korr in her Search Warrant Affidavit clearly identified that it was Tom Kennedy that engineered the Space Propulsion fraud and the Sovereign

13

Bank scandal. That in itself is "extraordinary and compelling". Hopwood, Shon R., *Second Looks & Second Chances* (June 16, 2019). Cardozo Law Review. Available at SSRN: https://ssrn.com/abstract=3404899, describing *United States v. Diaco*, 457 F. Supp. 371 (D.N.J. 1978), where the sentencing judge lowered a sentence from 60 months to time served because other conspirators all received sentences of 3-6 months. *Second Looks & Second Chances* at 115-16, *citing Diaco* at 375.

Instead of receiving justice and being sentenced on the basis of a minor crime and the man he was in 2015, Petitioner was castigated, defamed, and characterized as if he was still a criminal from the 1980's and, even worse, had a number of false allegations made at his sentencing that were clearly beyond the pale and unconstitutional. In the First Circuit, this is reversible Plain Error. *See, e.g., United States v. Marrero-Perez*, 914 F.3d 20 (1st Cir. 2019):

> This circuit has several times warned over a three-year period against reliance on arrests as a proxy for criminal culpability or the likelihood of recidivism. *United States v. Rondón-García*, 886 F.3d 14, 25-26 (1st Cir. 2018); *United States v. Delgado-Sánchez*, 849 F.3d 1, 13 (1st Cir. 2017); *United States v. Cortés-Medina*, 819 F.3d 566, 570 (1st Cir. 2016). In sum, to equate arrest with guilt is by now both error and obviously so.... It is enough to warrant a remand that the reliance on such arrests-now an obvious error-"set the wrong framework for the sentencing proceedings," *Molina-Martinez v. United States*, 136 S.Ct. 1338, 1345 (2016). [Petitioner] is not in turn required to show that this obvious error in fact influenced the length of the sentence, a showing that in most cases will be nearly impossible for a defendant to make given the kitchen-sink approach to sentencing pronouncements adopted by many judges." *Marrero-Perez* at 23-24, *citing Molina-Martinez* at 1347.

The Supreme Court has made two things absolutely clear when it comes to sentencing a defendant. First, "...what the Due Process Clause does require is that a defendant not be sentenced on the basis of "materially untrue" assumptions or "misinformation," and that he have an opportunity to respond to material allegations that he disputes, in order that the court not sentence him in reliance on misinformation." *See United States v. Gonzalez-Castillo*, 562 F.3d 80, 84 (1st Cir. 2009) *citing Townsend v. Burke*, 334 U.S. 736, 740-41 (1948). *See, e.g., United States v.*

*Delacruz*, 862 F.3d 163, 175 (2d Cir. 2017). Second, each and every defendant is to be sentenced as he stands now before the court on the day of sentencing.  Whatever or whoever the defendant was 30 years ago or even 5 years ago should not be discussed by the court, much less be the basis for sentencing. *See United States v. Lopez-Pastrana*, 889 F.3d 13 (1st Cir. 2018), *citing Pepper v. United States*, 562 U.S. 476, 492 (2011), *quoting United States v. Bryson,* 229 F.3d 425, 426 (2d Cir. 2000) ("a court's duty is always to sentence the defendant as he stands before the court on the day of sentencing.").

But nowhere was there any discussion that during the time period from 2004-2013, Petitioner did not receive so much as a traffic ticket and was the one responsible for exclusively carrying out ALL of the Church's truly charitable programs for veterans, the Homeless, and even little orphans like he once was. Those are the true facts that should have been discussed at Petitioner's sentencing in 2015, and certainly should be the facts that lead this Court to reduce Petitioner's sentence to time served.

## V.     THE COURT SHOULD EXERCISE ITS DISCRETION AND RESENTENCE PETITIONER TO TIME SERVED

Compassionate release is appropriate where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. §3142(g)." *Cantu* at *3. That statute provides:

> **(g) Factors to be considered.** - The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning-
>
> **(1)** the nature and circumstances of the offense charged;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person. *Cantu* at *6.

Petitioner's offense was not a violent one. In fact he did not do anything that he thought was criminal. He always did what was approved by the Board of the Church, and he was a Member of the Church so he could not "steal from himself" and he was the only one carrying out the charitable business of the Church while others enjoyed its tax-free wealth and not Petitioner. In prison, he has had a spotless, incident free, and exemplary record. He has served his time without any violent or aggressive incidents on his BOP file. His exemplary record started while he was at Wyatt, see letter from Susan Devonis, the Unit Manager of the Wyatt Detention Center attached as Exhibit Two, and a letter from Wyatt's Warden, Brian Murphy, attached as Exhibit Three. Attached as Exhibit Four is Petitioner's Programming Record from Ft. Dix showing numerous classes and courses from May 4, 2015 to June 20, 2019, with not a single incident report or infraction; literally a spotless prison record.

Even at FMC Devens, Petitioner has qualified for the elite Community Outreach Program which means that Petitioner has "Community Custody" to go out to speak at High Schools and Colleges to give some guidance and insights of his experience to young people in Massachusetts

and New England.  See letter from Captain Coons of FMC Devens attached as Exhibit Five.  The

Outreach Program was the number one program cited by the BOP and the Attorney General in his

press release describing the implementation of the First Step Act.  The Community Outreach

Program is a select program with only 6-7 inmates participating, and Community Custody means

that Petitioner is already qualified to serve out the rest of his sentence on Home Confinement.

Weighing the applicable §3553(a) factors likewise support Petitioner's request for

compassionate release. Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.** - The court shall impose a sentence
> sufficient, but not greater than necessary, to comply with the purposes set forth in
> paragraph (2) of this subsection. The court, in determining the particular sentence to be
> imposed, shall consider –
>
> **(1)** the nature and circumstances of the offense and the history and characteristics of the
> defendant;
> **(2)** the need for the sentence imposed—
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar
> records who have been found guilty of similar conduct; and

"[T]he Court liberally construes the Defendant's requests to be made under the relevant

and legally permitted avenues for post-sentencing relief." *Perez-Asencio*, 2019 WL 626175, at *1

n.2 ; *Curry*, 2019 WL 508067, at *1-2 (explaining that the Court could liberally construe a request

for relief under the Family Reunification Program and thus "entertain a request for a modification

of a term of imprisonment under [§3582(c)(1)(A)]").  Moreover, Petitioner has "a loving and

caring family," and the conditions of supervised release would require him to stay in the home of

his first wife and their four grandchildren in Hanover, Massachusetts. Nothing in the record

indicates that Petitioner poses any threat to the community. Thus, pursuant to §3142(g) and

§3553(a), the Court should find that Petitioner's remarkable record of rehabilitation adds to the

determination that he presents extraordinary and compelling reasons in support of a sentencing

reduction to time served.

17

## CONCLUSION

For the reasons discussed above, Petitioner prays that this Court would find him worthy of

its mercy and grace by granting this Motion for Compassionate Release, or to release him to Home

Confinement to be served with his wife, children, and grandchildren in Hanover Massachusetts for

the remainder of his sentence.


Respectfully Submitted,

/s/ Edward Mackenzie_____
Edward Mackenzie
Incarcerated Inmate
Petitioner, *pro se*
Reg. #17938-038
FMC Devens
Satellite Camp
P.O. Box 879
Ayer, MA 01432