# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR THE IMMEDIATE TERMINATION OF PETITIONER'S SUPERVISED RELEASE PURSUANT TO THE FIRST STEP ACT, 18 U.S.C. §3583(e)(1) AND THE COURT'S INHERENT POWER UNDER 28 U.S.C. §2243

## PRELIMINARY STATEMENT

When my Probation Officer, Justin Albergaria, suggested that I should make a Motion to Your Honor to terminate my Supervised Release early based on my credits under the First Step Act, I reached out to a young man (non-felon) who once worked for an old friend of mine that I used to walk the track with at FMC Devens. I mention that for two reasons. First, Your Honor knows that I did not go to law school and I was the product of one of the toughest neighborhoods in Boston. There is no way that I could write this Motion on my own without legal help from someone. Second, the reason that I can truly tell Your Honor that I am a changed man is because on these walks around the track with my friend who I have not seen or talked with since he left FMC Devens, this person taught me about Zen Buddhism, he quoted Confucius, Plato, and Aristotle – and when I worked in the kitchen at Devens he would sneak in on Sunday mornings to watch Joel Olsteen. A certain group of Hispanic inmates ran the kitchen at Devens – so Your Honor would probably chuckle at two white guys sitting with a dozen Latinos sipping coffee and watching Joel Olsteen. My friend invited me to his Bible Study Class several times – and his talks were life-changing for me – but I have not seen or talked with him since he left Devens.

Most of my postings on Facebook or other Social Media have a religious and philosophical discussion which I learned from him. Because of my Martial Arts background, he encouraged me to coach disadvantaged youths which I now do at the YMCA in Brockton. When I came home, I reached out to my Chinese Kung Fu instructor who I have known for over 30 years. He is a great man of wisdom and Zen philosophy. We have been talking since I came home in 2020. I have

2

learned a lot from him. I am teaching local youth at the YMCA, taking my 10-year-old grandson at least 3 days a week to his jujitsu class. I enjoy talking to youth in high schools and colleges. I've been asked many times to talk to AA "Alcoholics Anonymous" and NA "Narcotics Anonymous" meetings as a guest speaker. I look forward to this, even though I never really had a problem with alcohol and narcotics. While I was incarcerated, my daughter Devin had a baby boy named Elijah Mackenzie on March 17, 2017 (St. Patrick's Day). Coming from South Boston where the St. Patty's Day parade is held, we all thought that was a good omen. I thought my daughter had overcome her addiction problem, and was 3 semesters into college when on March 17, 2020 on her child's birthday, Devin was found on her bathroom floor dead from a fentanyl overdose. It broke my heart as I was in FMC Devens Camp when it happened. So you see, drugs hit me very deeply and close to home. I came home shortly after my daughter's death in August of 2020. Her child is in good hands. My life as it stands now is totally dedicated to my grandchildren, and I look forward to babysitting and teaching them as much as possible. I have a great relationship with all my children, five daughters, two sons and five grandchildren. While incarcerated I took as many courses and programs as they had to offer. I never got into trouble with anyone. I was part of a program to go to local high schools and colleges when I was at FMC Devens camp, but then I got released due to COVID.

    I mention all of this only to assure Your Honor that I am not the man I was. As the song says – "I was blind, but now I see". I need to get off Supervised Release so I can get a job to help support my extended family – and I appreciate Probation and Your Honor helping me with my Restitution, but the purpose of Supervised Release is not to punish but to "rehabilitate" and help me get back into Society. When I look back on my Past, I realize I made mistakes. The words I write now are not because I am a "teacher" or a "preacher", but because I am a dedicated "Student

of Life" and I want to share that knowledge with other people – especially young people that are suffering from depression like no generation before.

With Your Honor's help I know I can be a valuable citizen in my return to Society. I intend to make Your Honor proud of me – not disappointed that you let me out early from Supervised Release based on the First Step Act. I have a good home, good family, and a great fiancé whom I intend to marry once Your Honor grants my Petition to terminate my period of Supervised Release early – for which I will be forever grateful and I will not let you down.

I. LEGAL STANDARD

The Judicial Conference on Criminal Law has elaborated on 18 U.S.C. § 3583(e)(1)'s statutory criteria and recommended that probation officers as well as the Court evaluate nine factors when deciding whether to approve early termination of Supervised Release.

Those factors are:

1) Stable community reintegration (e.g., residence, family, employment);

2) Progressive strides toward supervision objectives and in compliance with all conditions of supervision;

3) No aggravated role in the offense of conviction, particularly large drug or fraud offenses;

4) No history of violence;

5) No recent arrests or convictions;

6) No recent evidence of alcohol or drug abuse;

7) No recent psychiatric episodes;

8) No identifiable risk to the safety of any identifiable victim; and

9) No identifiable risk to public safety based on the Risk Prediction Index.

4

*See e.g. United States v. Filocomo*, No. 02CR30731S16 (NGG), 2022 WL 118735, at *1 (E.D.N.Y. Jan. 12, 2022). Ronald Filocomo was the head of a notorious crime family and allegedly killed a number of people – but was released early.

## II. THE FIRST STEP ACT

Enacted on December 21, 2018, the First Step Act (hereinafter "FSA") was the result of a bipartisan legislative effort to overhaul the criminal justice system and provide Earned Time Credits for the reduction in sentences for nonviolent elderly offenders as well as other drug-based crimes that receive extraordinarily long sentences. Congress aimed to enhance public safety by improving the effectiveness and efficiency of the federal prison system with a new Risk and Needs Assessment Program known as PATTERN, and everyone would receive a PATTERN Score so that they could be assessed for whether they receive 10 or 15 days a month off for those determined to be low risk, nonviolent offenders. See 18 U.S.C. §3632(d)(4)(A):

> The Act also makes clear that "[T]ime credits earned under this paragraph by prisoners that actively participate in recidivism or activities **shall be applied to time in prerelease custody or supervised release.** The Director of the Bureau of Prisons shall transfer eligible prisoners as determined under §3624(g) into prelease custody or supervised release." *Id.* Furthermore, under the federal sentencing statutes: "[I]f the Sentencing Court included as part of the prisoner's sentence a requirement that the prisoner be placed on a term of Supervised Release after imprisonment...the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date...based on the application of earned time credits under §3532." See §3521(g)(3).

Petitioner's sentence included three (3) years of Supervised Release, and therefore under application of the FSA, the Earned Time Credits Petitioner earned should be used to reduce his remaining period of Supervised Release. Additionally, §3632(d)(6) provides: "In addition, the incentives described in this Subsection shall be in addition to any other rewards or incentives for which a prisoner may be eligible." This Court can remedy that by ordering Petitioner's

5

immediate release pursuant to §3582(c)(1)(B) based on a change in the statutes or the Court's inherent authority to issue Writs pursuant to 28 U.S.C. §2243. *See, e.g., Levine v. Apker*, 455 F.3d 71 (2d Cir. 2006), stating that the District Court has the right pursuant to §2243 to reduce a prisoner's term of Supervised Release.

Under the Definitions for the First Step Act, a "prison job" qualifies an Inmate for Earned Time Credits as a "productive activity" under the Act. See § 3635(3)(C)(xi). Therefore, Petitioner, as a Nonviolent Elderly Offender, was entitled to have one-third taken off his sentence and because he had a "prison job" in the Kitchen at Devens, Petitioner is clearly entitled to 15 days off for 42 months, or roughly 21 months with only 17 months left to serve.

Therefore, Petitioner respectfully suggests that under the First Step Act as well as the CARES Act and credits that should be granted under Judge Gorton's formulation under *U.S. v. Macfarlane*, Petitioner is entitled to immediate release from Federal custody with the issuance of an order pursuant to 28 U.S.C. § 2243, 28 U.S.C § 3583, and/or the First Step Act.

### III. EARNED TIME CREDITS UNDER THE FIRST STEP ACT

The First Step Act ("FSA"), which was enacted in December 2018, provided that all prisoners would receive 10 days, and those in a Camp or lower security facility with less of a chance of recidivism would receive an additional 5 days for a total of 15 days per month to be taken off their sentence or the period of Supervised Release. Once again, the BOP has established that there is no difference between being at a Camp, a Halfway House, or on Home Confinement, so Petitioner is undoubtedly entitled at least 21 months of Earned Time Credits. *See, e.g.*, PS5321.08, written by BOP Director Kathleen Hawk Sawyer over 20 years ago:"A CCC [Halfway House] meets the definition of a penal or correctional facility pursuant to 18

U.S.C. §3621(b)." Perhaps the best description that Home Confinement is still "imprisonment" under the BOP's custody is Judge Ponsor's decision in *Iacoboni v. United States*, 251 F.Supp.2d 1015 (D. Mass. 2003):

> Indeed, the notion of "imprisonment" clearly encompasses conditions of confinement substantially less restrictive than community confinement. For example, §3624(c) authorizes the BOP to "assure that a prisoner serving a *term of imprisonment"* is given the opportunity to serve as much as six months of the final portion *"of the term"* in home confinement. *Id.* (emphasis supplied). In other words, Congress has recognized that an offender may serve a portion of a "term of imprisonment" while living at home, full time. As the Supreme Court recognized in *Koray*, the critical litmus is whether offenders "always remain subject to the control of the Bureau." *Reno v. Koray, 515* U.S. 50, 63 (1995). Offenders imprisoned in community confinement are subject to BOP control. They are, as Chief Justice Rehnquist noted, "subject to BOP's disciplinary procedures; they are subject to summary reassignment to any other penal or correctional facility within the system, and, being in the legal custody of BOP, the Bureau has full discretion to control many conditions of their confinement." *Id.* BOP control is the touchstone of "imprisonment," and the BOP exercises complete control over all offenders placed in community corrections. They are imprisoned. Finally, the argument that the BOP, in exercising its Congressionally-bestowed discretion to designate as the "place of the prisoner's imprisonment...any available penal or correctional facility," §3621(b), is, in effect, failing to "imprison" the offender when it designates him or her to a community corrections facility simply ignores §3551, which can only be read to include community confinement as a form of imprisonment, the last category of the three "authorized sentences." Thus, as a matter of law, and a matter of common sense, the argument that community confinement is not a form of imprisonment will not wash. *Id.* at 1029.

Therefore, Petitioner should be qualified for an additional 21 months of Earned Time Credits to eliminate his remaining time of Supervised Release pursuant to the First Step Act.

## IV. JUDGE GORTON'S CALCULATION IN MACFARLANE

In *United States v. Macfarlane*, 438 F.Supp.3d 125 (D.Mass. Apr. 14, 2020), Judge Gorton recognized the traditional standard that if a prisoner who was assigned to a Camp but experienced a lockdown like Petitioner did during COVID, then each week served in the lockdown was equal to a month off the inmate's sentence.

Petitioner was locked down for COVID from March of 2020 until his release to Home Confinement. So, under the District Court's decision in *Macfarlane*, he should have at least an additional 30 months taken off of his Supervised Release based on the ratio of one week in lockdown being equal to one month off an inmate's sentence when he should have been at a Camp. *See Macfarlane* at 127 ("**...the Court determines that Macfarlane's two-week confinement in solitary quarantine in a higher security facility *is the equivalent* of two months in the Camp to which he was originally assigned.**").

As the Second Circuit stated in *United States v. Ray*, 578 F.3d 184 (2d Cir. 2009): "[T]he Due Process Clause always protects defendants against fundamentally unfair treatment by the government in criminal proceedings." Id. at 199, *citing Doggett v. United States*, 505 U.S. 647, 666 (1992). In trying to craft a remedy for the Due Process violation in Ray, the Second Circuit eliminated the need for Ms. Ray **to serve any of her custodial sentence or serve her time in a Halfway House** and stated the following:

> "The appropriate remedy for a proven due process violation often depends on the stage at which the violation is found and the relief sought." After a due process violation has occurred, courts endeavor to fashion relief that counteracts the prejudice caused by the violation. The Sixth Circuit has stated that 'suspension of the remainder of the sentence' is the appropriate remedy for a due process violation arising from a delayed resentencing. The violation of Ray's due process right has prejudiced her insofar as a delayed custodial sentence threatens to undermine her successful rehabilitation. To remedy that harm, the appropriate relief is to release her from any requirement that she submit to a custodial sentence. Accordingly, we conclude that the appropriate remedy in this case is the vacatur of Ray's sentence insofar as it imposes a six-month term of residence in a halfway house. *See Ray* at 202-03.

## CONCLUSION

Petitioner respectfully suggests that he deserves the same Due Process considerations as the defendants in *Ray* and *Macfarlane,* and asks only for the Court to recognize and apply the Earned Time Credits of the First Step Act and Judge Gorton's calculation of time credits under *Macfarlane* to resentence Petitioner and to immediately terminate his remaining period of Supervised Release as was done by the Second Circuit in *Ray*.

Respectfully submitted,

/ s / Edward J. Mackenzie
Edward J. Mackenzie
Petitioner, *pro se*
65 Backlund Drive
Brockton MA., 02302