## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **EDWARD J. MACKENZIE** | ) | |
| *Petitioner* | ) | **Crim No. 13-CR-10149 FDS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | **April 15, 2024** |
| *Respondent* | ) | |

## REPLY IN SUPPORT OF PETITIONER'S MOTION FOR IMMEDIATE TERMINATION OF SUPERVISED RELEASE

Respectfully, the Government's Opposition to Petitioner's Motion for Immediate Termination of Supervised Release is not just inappropriate and unprofessional and in violation of a prosecutor's duties under *Berger*, it is wrong on the law and clearly wrong about all of the ramifications of the First Step Act. It also ignores the Supreme Court's clear directives in *Concepcion*, *Pepper*, *Missouri v. Frye*, and *Lafler v. Cooper*, that a Court should consider the Defendant's rehabilitation and should sentence – or in this case "resentence" – the Defendant as he is now, not the way he was when he committed the crime. For an attorney for the Government to engage in defamation of the Petitioner is beyond the pale and is sanctionable even if the Petitioner chooses to forgive him – this Court should not.

Even murderers and real fraudsters like Roy William Harris are entitled to relief under § 3583(e) after serving one year. This Court has written that it has both the power

1

under the First Step Act (FSA) to reduce a sentence or to eliminate Supervised Release altogether. Unlike the Government's position – Probation or Supervised Release is meant to get Petitioner back into Society. Supervised Release is not meant to be extra punishment – it is meant to be about successful re-entry into Society and rehabilitation is one of the goals of the Probation Officer.

The true irony of this case is that this prosecutor works for the same government that gave Kevin (Two) Weeks only five years in prison despite knowing he was complicit in a dozen murders for Whitey Bulger and planned on killing Howie Carr. Petitioner Mackenzie actually helped the poor and homeless at the Church on the Hill. But the famous writer Phyllis Karas helped write Petitioner's book, *Street Soldier*, and Kevin Weeks's book, *Brutal*, and she stated in several interviews that Petitioner Mackenzie was a much "nicer" person and a "better" man than Weeks. Kevin Weeks hated Petitioner-Mackenzie but this is what Kevin Weeks said about himself in *Brutal*:

> "I grew up in the Old Colony housing project in South Boston and became partners with James "Whitey" Bulger, who I always called Jimmy. Jimmy and I, we were unstoppable. We took what we wanted. And we made people disappear—permanently. We made millions. And if someone ratted us out, we killed him. We were not nice guys. I found out that Jimmy had been an FBI informant in 1999, and my life was never the same. When the feds finally got me, I was faced with something Jimmy would have killed me for—cooperating with the authorities. I pled guilty to twenty-nine counts, including five murders. I went away for five and a half years. I was brutally honest on the witness stand, and this book is brutally honest, too; the brutal truth that was never before told. How could it? Only three people could tell the true story. With one on the run and one in jail for life, it falls on me."

Significantly – not only is Kevin Weeks out of prison and off Supervised Release – the famously corrupt FBI Agent John Connolly is not only out of prison – he is still collecting his FBI pension, which is almost as outrageous as the Government's Opposition

to Petitioner Mackenzie's request for immediate termination of his Supervised Release pursuant to the First Step Act.

## I.  THIS COURT SHOULD HELP PETITIONER'S FUTURE NOT RECONSIDER HIS PAST

As the Supreme Court has made clear in several famous cases, it is the duty of the Court to sentence (or resentence the Defendant as was the case here and in *Pepper*) based on the way he is now, not the way he was when he committed the crime:

> When a defendant appears for sentencing, **the sentencing court considers the defendant on that day, not on the date of his offense or the date of his conviction.** *Pepper v. United States*, 562 U.S. 476, 492, (2011). Similarly, when a defendant's sentence is set aside on appeal, the district court at resentencing can (and in many cases, must) consider the defendant's conduct and changes in the Federal Sentencing Guidelines since the original sentencing. The discretion federal judges hold at initial sentencings also characterizes sentencing modification hearings.
>
> Relying on *Williams* and *Koon*, the Court in *Pepper* found it "clear that when a defendant's sentence has been set aside on appeal and his case remanded for resentencing, a district court may consider evidence of a defendant's rehabilitation since his prior sentencing." 562 U.S., at 490. *Pepper* reached that conclusion in light of the "federal sentencing framework" that allows sentencing judges to consider the "'fullest information possible concerning the defendant's life and characteristics.' **Accordingly, federal courts resentencing individuals whose sentences were vacated on appeal regularly consider evidence of rehabilitation developed after the initial sentencing. See,** *e.g., United States v. Rodriguez*, **2020 WL 2521551, \*5 (SDNY, May 18, 2020) (considering the movant's "exemplary conduct during a lengthy period of incarceration");** *United States v. Raifsnider*, **2020 WL 1503527, \*3 (D Kan., Mar. 30, 2020) (considering that the movant "has completed his GED, taken hundreds of hours of programming offered by the Bureau of Prisons, and is taking college classes").**
>
> *Concepcion v. United States,* 597 U.S. 481,486, 492–93, (2022).

In fact, this is what this Court said about *Pepper* in *United States v. Rosado*:

In *Pepper v. United States,* the Supreme Court found that evidence of post-sentencing rehabilitation is "highly relevant" to § 3553(a) sentencing factors, including the "history and characteristics of the defendant" and the "need for the sentence imposed," and may "critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary.'" *Pepper*, 562 U.S. 476, 491 (2011). While *Pepper* addressed plenary resentencing after a conviction was vacated on appeal rather than resentencing under § 3582(c), the reasoning of the opinion has been extended to First Step Act cases. *See, e.g., United States v. Shaw*, 2020 WL 2029258, at *6 (7th Cir. Apr. 28, 2020) (citing *Pepper* and holding that district courts evaluating First Step Act petitions may consider post-sentencing conduct, which is relevant to 3553(a) sentencing factors); *United States v. Chambers*, 956 F.3d 667, at *6 (4th Cir. Apr. 23, 2020) (resentencing court may consider post-sentencing conduct); *United States v. Allen,* 956 F.3d 355, 358 (6th Cir. Apr. 14, 2020) ("Although *Pepper* dealt with plenary resentencing procedure, whereas the First Step Act § 404 in contrast only granted courts the power to modify sentences, such a distinction does not logically prevent courts from considering post-sentencing conduct in assessing the § 3553(a) factors during a § 3582(c)(1)(B) sentence-modification proceeding.") (citation omitted); *United States v. Williams*, 943 F.3d 841, 844 (8th Cir. 2019) (district court may consider post-sentencing rehabilitation, but need not adjust a sentence based on evidence of rehabilitation). *See also United States v. Khut*, 2019 WL 4345294 (D. Mass. Sep. 12, 2019) (resentencing defendant to time served and noting his spotless prison disciplinary record during sixteen years of imprisonment); *United States v. Abdullah*, 410 F. Supp. 3d 346, 351 (D.R.I. Oct. 10, 2019) (reducing defendant's sentence after considering, among other factors, defendant's limited disciplinary record, completion of classes, and positive work history while incarcerated); *United States v. Young*, 2019 WL 6724332, at *2 (S.D.N.Y. Dec. 11, 2019) (resentencing defendant to time served, in part based on his expressions of genuine remorse and good conduct while incarcerated).

*United States v. Rosado*, No. CR 05-40011-FDS, 2020 WL 2490024, at *6 (D. Mass. May 14, 2020).

Even if Petitioner did not have 20 Months of Credits under the FSA (the Government missed the updated filing in the Federal Register in January 2022) and even if Judge Gorton never wrote the opinion in *Macfarlane* (Petitioner-Mackenzie is arguably a "better" person than Macfarlane as well as Kevin Weeks), this Court understands that it

4

has the power of the pen under 28 U.S.C. § 2243 and 18 U.S.C. § 3583 to order the termination of Petitioner's term of Supervised Release next week. But this Court also knows it has the power to "resentence" Petitioner under the FSA, and that power goes to reducing a period of Supervised Release as well. As the learned Judge Robert N. Chatigny opined in *Page*:

> Under § 3583(e), a court may:
>
> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release ... if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice;
>
> "Returning to the First Step Act, I conclude that it authorizes a reduction in a term of supervised release. The First Step Act constitutes an authorization to "impose a reduced sentence." A sentence is comprised of at least two parts: the term of imprisonment and the term of supervised release."
>
> *UNITED STATES v. ANTHONY PAGE*, No. 3:08-CR-168 (RNC), 2020 WL 1698671, at *5-6 (D. Conn. Apr. 8, 2020).

## II.   PETITIONER SHOULD BE RELEASED IN THE INTERESTS OF JUSTICE

Petitioner-Mackenzie is even more deserving of immediate release than the Bonanno crime family associate and killer, Ronald "Monkey Man" Filocomo, made famous by the film "Donnie Brasco". Petitioner used the criteria leading to Filicomo's termination of Supervised Release to show that he more than meets the requirements of § 3583(e) even without FSA Credits or *Macfarlane* calculations. But based on the Government's inappropriate defamation in its Opposition, Petitioner-Mackenzie offers the Court's decision in the case of a real fraudster – Roy William Harris – who really and truly defrauded banks of millions and was ordered to pay restitution of over $100,000,000 which

remains unpaid to this day – but this is what the Court had to say about the "interests of justice" in ordering Harris immediately released:

> The question posed by 18 U.S.C. § 3583(e)(1) is whether, in these circumstances, an early termination of Harris's supervised release would be "in the interest of justice." In approaching that question, I have first, as the statute commands, carefully considered the sentencing purposes set forth in § 3553(a). The magnitude of fraud and Harris's role as its architect count against him, but other sentencing purposes working in his favor tip the balance. Harris's offenses were serious but his term of imprisonment was lengthy, in accordance with the guidelines, and just. There is no need for further general deterrence. There is no need to protect the public from Harris. The desirability of Harris's continued rehabilitation through enhanced professional opportunity trumps whatever minimal restitution might be obtained by continued supervision.
>
> There are two possible resolutions to this case. The Court can terminate Harris's supervised release, do away with crippling obstacles to his professional advancement, and make straight his path to rehabilitation and redemption. Or the Court can require Harris to serve his full term of supervised release, leave him blocked and at risk in his employment, and confer no benefit of any significance upon the victimized banks. Which resolution is "in the interest of justice?" The question is not close. **Justice requires the termination of Harris's supervised release.**
>
> For the foregoing reasons, the petition of Defendant Harris to terminate his supervised release is GRANTED. His term of supervised release is TERMINATED, effective upon Defendant submitting to a DNA test at the United States Probation Office in Bridgeport, Connecticut on March 18, 2010.
>
> It is SO ORDERED.
>
> *United States v. Harris*, 689 F. Supp. 2d 692, 695–96 (S.D.N.Y. 2010).

### III.    THE PETITIONER AND NOT THE GOVERNMENT SHOULD BE FORGIVEN

While the Government in its Opposition unnecessarily and inappropriately defames Petitioner and mocks him for his transition to South Boston's first "Zen-Catholic", Petitioner-Mackenzie's transition is real and he has paid his penance. Just as the Apostle Paul had a "transition" on the road to Damascus from killing Christians to saving Christians, so too is the Redemption of Petitioner-Mackenzie complete. He is a

Grandfather, Coach, and Babysitter now and he has thousands of followers on his Instagram account. He is no longer a "Gangster" or a "Street Soldier" and he has paid his debt to Society and his penance has been paid in Spades.

Dozens of people could testify to Your Honor that Petitioner-Mackenzie's Redemption is real. His next book will be "Confessions of a Street Soldier", based on the writings of Saint Augustine. As a true Zen-Catholic, Petitioner-Mackenzie forgives the Government prosecutor who wrote the Opposition Brief callously mentioning his deceased daughter for no good reason at all – but this Court should not be so forgiving.

In Buddhism, forgiveness is not about turning the other cheek or letting someone continue getting away with behavior that is mean or heartless. Real forgiveness is about letting go. Buddhism teaches us that by becoming aware we are able to forgive and get on with our life. This awareness allows us to let go of holding on to resentment and the hurt. It is a way we can keep the energy of life draining away from us. As stated in the *Dhammapada*:

> "If one abuses you, there is a temptation to answer back, or to be revenged. One should be on guard against this natural reaction. It is like spitting against the wind, it harms no one but oneself. …
> Misfortune always dogs the steps of one who gives way to the desire for revenge."

Your Honor should not be so forgiving to the Government, however, because their filing was beneath the dignity of an officer of the Court and in many respects shows disrespect to Your Honor and the Court itself. Not only does the Government's Opposition disrespect the many famous quotes in the Moakley Courthouse, it is also at odds with

Justice Sutherland's famous admonition from *Berger* that is front and center on the DC Circuit's website:

> "As the principal prosecutor for all criminal offenses in this jurisdiction, and as the principal litigator for the United States in the nation's capital, this Office offers extensive litigation experience before over 100 judges in the federal and local courts and unique opportunities for important public service. This significant responsibility of the public prosecutor was aptly described by Justice Sutherland in Berger v. United States, 295 U.S. 78, 88 (1935):
>
>> *The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor -- indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.*"

The purpose of this Motion is for Your Honor to issue an Order terminating Petitioner-Mackenzie's period of Supervised Release next week if not sooner, because Petitioner deserves it and because of his earned credits under the FSA. The Government's Opposition totally misconstrues the FSA and proves that no one is keeping score of inmate credits under the FSA or the CARES Act or Judge Gorton's calculation in *Macfarlane*. This Court has the power under 28 U.S.C. § 3583(e) to release Petitioner immediately, so why should the Government defame Petitioner and misstate provisions of the FSA more than two years after the DOJ clarified the FSA?

While Petitioner is more concerned about his freedom as recommended by his Probation Officer, Your Honor should consider doing what Judge Alison Nathan did in *Nejad* which was to sanction all of the prosecutors for what was an accidental oversight

8

concerning one piece of *Brady* evidence. The Defendant in *Nejad* had his conviction vacated, but this is what Judge Nathan had to say in her Opinion in *Nejad*:

> "Almost a century ago, the Supreme Court defined the singular role federal prosecutors play in our system of justice:
>
>> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done .... He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."
>
> *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

> "The Government in this case has failed to live up to these ideals. The Court has recounted these breaches of trust, proposed some systemic solutions, urged referral to the Office of Professional Responsibility for admitted prosecutorial failures apparent in the existing record, and ordered further fact-finding. The cost of such Government misconduct is high. With each misstep, the public faith in the criminal-justice system further erodes. With each document wrongfully withheld, an innocent person faces the chance of wrongful conviction. And with each unforced Government error, the likelihood grows that a reviewing court will be forced to reverse a conviction or even dismiss an indictment, resulting in wasted resources, delayed justice, and individuals guilty of crimes potentially going unpunished. The Court thus issues this Opinion with hopes that in future prosecutions, the United States Attorney for the Southern District of New York will use only "legitimate means to bring about a just" result. *Id.* Nothing less is expected of the revered Office of the United States Attorney for the Southern District of New York. That Office has a well- and hard-earned reputation for outstanding lawyers, fierce independence, and the highest of ethical standards. The daily work of the prosecutors in that Office is critically important to the safety of our community and the rule of law. Those who stand up in court every day on behalf of that Office get the benefit of that reputation—but they also have the responsibility to maintain it. **The Court hereby ORDERS that the Acting United States Attorney ensure that all current AUSAs and SAUSAs read this Opinion. Within one week of the date of this Opinion, the Acting United States Attorney shall file a declaration affirming that this has occurred.** The Court FURTHER ORDERS that each of the trial team AUSAs, supervising Unit Chiefs, and the SAUSA submit the declarations described in Section III no later than October 16, 2020.

*United States v. Nejad*, 487 F. Supp. 3d 206, 207-26 (S.D.N.Y 2020).

## CONCLUSION

For the reasons above, Petitioner respectfully requests that Your Honor immediately terminate his period of Supervised Release and order his release from Federal Custody. Petitioner thanks Your Honor for all of Your Honor's help in Petitioner's case and in the interests of Justice.

Respectfully Submitted,

/ s / Edward J. Mackenzie
Edward J. Mackenzie
Petitioner, *pro se*
65 Backlund Drive
Brockton MA., 02302